**Appendix B to Plaintiffs' Opposition to Motion to Dismiss**

**Factual Developments Since the Filing of the Amended Complaint (May 22, 2024)**

| Source | New Factual Developments |
|---|---|
| Occupational Safety and Health Administration ("OSHA") Complaint of Samuel H. Mohawk, Jr. (the "Mohawk Complaint"), included as Attachment 1 in the United States Senate Permanent Subcommittee on Investigation's memorandum, "Preliminary Information from the Subcommittee's Inquiry into Boeing's Safety and Quality Practices"[1] (June 17, 2024) | • Samuel H. Mohawk, Jr., a Boeing inspector and investigator in Quality Assurance from approximately 2011 to the present, filed a complaint alleging that Boeing retaliated against him after he attempted to report quality issues related to the use of non-conforming parts on Boeing aircraft.<br>• The Mohawk Complaint explains that since 2016, Mohawk worked at the Material Review Segregation Area ("MRSA") at Boeing facilities in Renton. ¶3. At MRSA, Mohawk would "handle[] non-conforming material, scrap parts, emergent issues, and Non-Conformance Reviews (NCRs) for both the commercial and military 737 lines." ¶4. When a part is defective or damaged, it is deemed non-conforming and given an NCR number. "All NCRs should be part of the aircraft build record" which is "the usual starting point for a FAA Designated Airworthiness Representative (DAR) to evaluate the status of an aircraft and determine its eligibility for FAA certification." ¶16.<br>• While at the Renton factory, Mohawk "noticed that most of the highly trained and experienced Quality Inspectors were gone." ¶10. After Boeing was given "the green light to begin production again" following the Crashes, Boeing "started to hire. Unfortunately, many of the new Quality Inspectors had no aviation experience. . . . With reduced training and oversight, Boeing Corporate's push to get the airplanes out the door as quickly as possible was causing quality lapses and failures." ¶13.<br>• "As the production ramped up, Mohawk noticed mistakes" including non-conforming parts removed from airplanes that were not documented, and parts left in boxes "or just thrown into a hangar/storage with no segregation control." ¶14. Mohawk informed Quality Assurance management, but was told to "just pick up the parts." ¶15.<br>• "<u>Mohawk feared that non-conforming parts were being installed on the 737s and that it could lead to a catastrophic event. In Early Spring, 2023, Mohawk brought all this to the attention of his senior managers . . . and explained that the 737 program was out of compliance regarding control of non-conforming parts[.]</u>" ¶17. |

---

[1] Mohawk Complaint, Attachment 1 to U.S. Senate Permanent Subcommittee on Investigations Report (June 17, 2024), https://www.hsgac.senate.gov/wp-content/uploads/2024.06.17-PSI-Majority-Staff-Memorandum.pdf. All emphasis is added unless otherwise noted.

| Source | New Factual Developments |
|---|---|
|  | • "In June 2023, the FAA notified Boeing's Renton plant that it would be conducting an inspection." Boeing "ordered the majority of the parts that were being stored outside to be moved to another location to **intentionally hide improperly stored parts from the FAA**." ¶18 (emphasis in original).<br>• "In August 2023, Mohawk learned of an illegal attempt by his management group to defraud the FAA by misrepresenting and actively concealing the nature and extent of Boeing's Compliance issues." ¶20. The "head of the Material Review Board (MRB) for the 737 MAX program," whose name is redacted, held a meeting with management "wherein [he] stated that he **did not want the FAA to know how many parts were missing**, or that Boeing was having this quality control issue," and ordered "everyone to cancel and delete NCRs," which are "**required to be part of the aircraft build record of the aircraft**[.]" ¶20 (emphasis in original).<br>• "In and around that time, it was discovered that approximately 300-400 non-conforming 737 MAX aircraft parts were lost, and the majority of the records that were once kept of these parts were deleted from Boeing's internal aircraft build record system[.]" ¶21.<br>• Mohawk filed a report detailing his concerns in Boeing's "Speak Up" program. ¶22. His report was referred "to the same management group that Mohawk reported on" and that attempted to conceal these compliance issues in the first place. ¶23. Mohawk's senior manager "made clear that they were to move the parts regardless of compliance." ¶25.<br>• In May 2024, after "again email[ing] management regarding MRSA's lack of staffing, space, and organization, . . . Mohawk was issued a disciplinary [Corrective Action]." Mohawk alleges that this was "retaliatory on its face and was issued in an attempt to silence Mohawk from raising non-compliance issues under the threat of [Corrective Action] and termination." ¶29. Mohawk further alleges that "[a]s of the filing of this Complaint, Boeing continues to lose non-conforming parts and is out of compliance regarding control of non-conforming parts[.]" ¶31. |

| Source | New Factual Developments |
|---|---|
| Defendant Calhoun Testifies before the United States Senate's Permanent Subcommittee on Investigations[2] (June 18, 2024) | • In response to the question, "You accept that Boeing was responsible for those crashes and 346 deaths?" Defendant Calhoun responded: "I accept that MCAS and Boeing are responsible for those crashes. Yes, Sir." (29:23-29:27).<br>• In response to a question about whistleblower testimony concerning retaliation at Boeing, Defendant Calhoun testified: "Senator, I'm going to start by [] assuring you that I listened to the whistleblowers that appeared at your hearing [on April 17, 2024]. Something went wrong and I know the sincerity of their remarks." (32:11-32:26).<br>• As to the Crashes, Calhoun testified: "Senator Blumenthal, we are responsible. We are responsible. The Department of Justice and the Boeing team and all the investigations and all the judgments that were ultimately taken. I'm not here to second guess them." (1:16:19-1:16:34). |
| OSHA Complaint of Richard Cuevas (the "Cuevas Complaint") included as an attachment to a June 25, 2024 letter from Cuevas's counsel to the Federal Aviation Administration[3] (June 25, 2024) | • Richard Cuevas, a mechanic who has worked in the airline industry for more than 40 years, filed a complaint with OSHA claiming that Boeing is liable for retaliation against him after he filed an ethics complaint while working as a contractor for Spirit AeroSystems, which manufactures fuselages for Boeing aircraft.<br>• The Cuevas Complaint explains: "In October 2023, Mr. Cuevas filed an ethics complaint with Boeing after he observed that Spirit had made changes to fastener hole dimensions in the forward pressure bulkhead on 787 aircraft without notifying Boeing. Because of the unauthorized change, the fasteners did not properly fit into the holes, seriously undermining the integrity of the aircraft." ¶2.<br>• "Mr. Cuevas believes, based on his decades of experience, that the fastener hole dimensions, along with other engineering issues he observed, violate both Boeing's internal engineering and quality standards and Federal Aviation Administration ('FAA') requirements and that these issues may significantly decrease the lifecycle of these airplanes." ¶3.<br>• Cuevas was "worried that the lack of an interference fit in the pressure bulkhead could lead to disastrous consequences," and that others at Spirit who had reported the issue had been "retaliated against" by Cuevas' supervisor at Spirit, Michael Shellhammer. ¶15. Cuevas reported his concerns to |

---

[2]   Video available at: "WATCH Live: Boeing's CEO testifies on safety problems in Senate hearing" PBS NEWSHOUR (June 18, 2024), https://www.youtube.com/watch?v=FmxFiVyJcSM&t=316s.

[3]   Letter to FAA from D. Katz and J. Banks and attached Cuevas Complaint, Katz Banks Kumin, LLP (June 25, 2024), https://katzbanks.com/wp-content/uploads/240625-Ltr-to-Whitaker.pdf.

| Source | New Factual Developments |
|---|---|
| | Boeing ethics official Rishi Jain (¶16), Boeing Regulatory & Quality System Oversight official David Griggs (¶18), Boeing Business Site Regulatory Quality official Edward Carter (*id.*), and Boeing Quality Engineer Monique Warren (¶19). <u>In a December 7, 2023 meeting with Boeing officials, Cuevas reiterated his concerns, and Carter said that "what happened next was above their pay grades."</u> ¶22.<br>• Nearly four months after Cuevas filed his ethics complaint, he was told that the matter was transferred to Boeing Senior Compliance and Ethics Specialist Margaret Voorhees. ¶30.<br>• On March 28, 2024, the "same day" that FAA officials arrived to inspect Boeing for compliance issues, Shellhammer "told [Cuevas] it was his last day working for Spirit." ¶32. Shellhammer "offered no explanation." *Id.* Cuevas "strongly suspected that Shellhammer had fired him because he had continually raised concerns about quality issues[.]" ¶33. |
| Boeing Pleads Guilty to Conspiracy to Defraud the United States in Connection with the Events Leading to the Crashes[4] (July 8, 2024) | • On July 8, 2024, the U.S. Department of Justice informed the U.S. District Court for the Northern District of Texas that the government and Boeing had "reached an agreement in principle on the terms of a proposed plea agreement" in which "Boeing will plead guilty to the most serious readily provable offense, specifically, the offense described in Paragraph 1 of the Deferred Prosecution Agreement. . . and charged in the pending one-count Criminal Information that accompanied the DPA." ECF 206 at 1, ¶1.<br>• Accordingly, "<u>Boeing will plead guilty to the offense charged in the pending one-count Criminal Information, conspiracy to defraud the United States,</u> specifically, the lawful function of the Federal Aviation Administration Aircraft Evaluation Group, in violation of 18 U.S.C. § 371" *Id.* ¶6.a.<br>• The DOJ's filing further explains that "[t]he parties have agreed in principle to the material terms of <u>a plea agreement that would, among other things, hold Boeing accountable for its material misstatements to the Federal Aviation Administration, require Boeing to pay the statutory maximum fine, require Boeing to invest at least $455 million in its compliance and safety programs, impose an independent compliance monitor,</u> and allow the Court to determine the restitution amount for the families in its discretion, consistent with applicable law." *Id.* ¶2. |

---

[4]    *United States v. The Boeing Co.*, No. 4:21-cr-00005-RCO (N.D. Tex. July 8, 2024), ECF 206.

| Source | New Factual Developments |
|---|---|
| Derivative Complaint Claiming Boeing's Board of Directors ("Board"), including Calhoun, Breached Fiduciary Duties to the Company – Includes Redacted Evidence that the Board Ignored Red Flags Related to Safety[5] (July 9, 2024) | <ul><li>On July 9, 2024, a derivative complaint was filed on behalf of The Boeing Company based in part on documents obtained pursuant to a books and records demand under 8 Del. C. §220.</li><li>According to the derivative complaint, the documents obtained pursuant to that demand included "Board, Aerospace Safety Committee, and Final Audit Committee minutes/materials from January 1, 2022, to the present concerning airplane safety, airplane production issues, airplane quality control, airplane supplier oversight, the 737 MAX, and [Alaska Airlines] Flight 1282." ¶10.</li><li>The derivative complaint contains nearly twelve pages of redacted allegations based on these materials (¶¶316-331), and alleges that these materials demonstrate that "the Director Defendants," including Calhoun (¶20), "during their respective tenures on the Board, were aware of red flags and therefore had a fiduciary duty to follow-up and to attempt to remedy the systemic safety violations that the red flags illustrated were occurring," but that they "fail[ed] to address these red flags[.]" ¶332.</li><li>On July 19, 2024, the plaintiff in that action withdrew its motion to seal the unredacted version of the derivative complaint, and it is therefore expected that the redacted allegations will be publicly available imminently. ECF 12-13.</li></ul> |

---

[5]  *Oklahoma Firefighters Pension and Retirement System v. Calhoun et al.*, No. 1:24-cv-01200-PTG-WEF (E.D. Va. July 9, 2024), ECF 1.