UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| IN RE THE BOEING COMPANY SECURITIES LITIGATION | ) ) ) ) ) ) ) |

Case No. 1:24-cv-151-LMB-LRV

Hon. Leonie M. Brinkema

# DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR
## MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

Richard C. Pepperman II (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
peppermanr@sullcrom.com

Judson O. Littleton (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
Facsimile: (202) 293-6330
littletonj@sullcrom.com

Benjamin L. Hatch
MCGUIREWOODS LLP
888 16th Street N.W.
Suite 500
Black Lives Matter Plaza
Washington, D.C. 20006
Telephone: (757) 640-3727
Facsimile: (757) 640-3947
bhatch@mcguirewoods.com

*Counsel for Defendants The Boeing Company, David L. Calhoun, Dennis A. Muilenburg, Brian J. West, and Gregory D. Smith*

August 5, 2024

**TABLE OF CONTENTS**

*Page*

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................3

I.   Plaintiffs Fail To Show That Any of the Challenged Statements Was Materially
     False or Misleading...................................................................................................3

     A.   Plaintiffs fail to show that general statements about safety and quality are
          actionable .........................................................................................................4

     B.   Plaintiffs fail to show that aspirational statements contained in codes of conduct
          and other policies are actionable......................................................................8

     C.   Plaintiffs fail to show that forward-looking statements about efforts to
          eliminate "traveled work" are actionable.........................................................9

     D.   Plaintiffs fail to show that statements about the FAA's recertification process
          are actionable .................................................................................................10

     E.   Plaintiffs fail to show that statements about Boeing's production rate are
          actionable .......................................................................................................11

     F.   Plaintiffs fail to show that statements about regulatory compliance and risk
          factors are actionable .....................................................................................11

II.  Plaintiffs Fail To Identify Particularized Factual Allegations Supporting a Strong
     Inference of Scienter ...............................................................................................12

     A.   Plaintiffs cannot satisfy the PSLRA's heightened pleading standard by relying
          on Defendants' access to information, their commitments to monitoring safety,
          and unconnected whistleblower allegations ...................................................12

     B.   Plaintiffs' remaining scienter allegations fall well short ...............................17

     C.   Plaintiffs fail to plead corporate scienter ......................................................18

III. Plaintiffs Fail To Plead Loss Causation..................................................................20

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*In re BHP Billiton Ltd. Sec. Litig.*,
276 F. Supp. 3d 65 (S.D.N.Y. 2017)................................................................5, 6, 7

*In re Boeing Co. Aircraft Sec. Litig.*,
2022 WL 3595058 (N.D. Ill. Aug. 23, 2022) ...............................................*passim*

*In re BP p.l.c. Sec. Litig.*,
843 F. Supp. 2d 712 (S.D. Tex. 2012) ..............................................................9, 15

*Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund* v. *Transocean Ltd.*,
866 F. Supp. 2d 223 (S.D.N.Y. 2012)......................................................................9

*City of Monroe Emps. Ret. Sys.* v. *Bridgestone Corp.*,
399 F.3d 651 (6th Cir. 2005) ...............................................................................6, 7

*Coll. Ret. Equities Fund* v. *Boeing Co.*,
2023 WL 6065260 (N.D. Ill. Sept. 18, 2023) .....................................................4, 7

*In re Emergent BioSolutions Inc. Sec. Litig.*,
2023 WL 5671608 (D. Md. Sept. 1, 2023) ............................................................11

*Katyle* v. *Penn Nat'l Gaming, Inc.*,
637 F.3d 462 (4th Cir. 2011) ................................................................................20

*Kiken* v. *Lumber Liquidators Holdings, Inc.*,
155 F. Supp. 3d 593 (E.D. Va. 2015) ......................................................14, 15, 19

*Knurr* v. *Orbital ATK Inc.*,
272 F. Supp. 3d 784 (E.D. Va. 2017) ..............................................................14, 19

*In re Massey Energy Co. Sec. Litig.*,
883 F. Supp. 2d 597 (S.D.W. Va. 2012).............................................................7, 14

*Matrix Capital Mgmt. Fund, LP* v. *BearingPoint, Inc.*,
576 F.3d 172 (4th Cir. 2009) ...............................................................................19

*Ollila* v. *Babcock & Wilson Enters.*,
2018 WL 792069 (W.D.N.C. Feb. 8, 2018) .....................................................13, 14

*Plumbers & Steamfitters Loc. 773 Pension Fund* v. *Canadian Imperial Bank of Commerce*,
694 F. Supp. 2d 287 (S.D.N.Y. 2010)....................................................................12

*Allegheny Cty. Emps.' Ret. Sys.* v. *Energy Transfer LP*,
  532 F. Supp. 3d 189 (E.D. Pa. 2021) ...................................................................7, 11

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund* v. *Hewlett-Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017) .............................................................................8, 9

*Salzman* v. *ImmunityBio, Inc.*,
  2024 WL 3100274 (S.D. Cal. June 20, 2024)..........................................................11

*Singer* v. *Reali*,
  883 F.3d 425 (4th Cir. 2018) ...........................................................10, 11, 12, 20

*Yates* v. *Mun. Mortg. & Equity, LLC*,
  744 F.3d 874 (4th Cir. 2014) ................................................................................13

**Statutes and Rules**

Private Securities Litigation Reform Act of 1995,
  15 U.S.C. § 78u-4 to § 78u-5 .............................................................. *passim*

Fed. R. Civ. P. 9(b) ................................................................................................20

Fed. R. Civ. P. 12(b)(6)...........................................................................................5

## INTRODUCTION

As Plaintiffs' Opposition makes clear, their case is a transparent effort to manufacture securities-fraud claims out of a high-profile accident earlier this year. Because the January 2024 Alaska Airlines accident that led to the filing of this action occurred five years after two tragic accidents also involving Boeing's 737 MAX in 2018 and 2019, Plaintiffs scoured the Internet for every safety- or culture-related statement they could find over that half-decade period, and filed this lawsuit speculating that all those statements must have been knowingly false. Defendants' opening brief showed that none of the challenged statements were materially false or misleading and that Plaintiffs fail to plead that any Defendant knew of information contradicting those statements. Plaintiffs are thus left to argue that, because Defendants reiterated Boeing's commitment to safety and quality after the 2018 and 2019 accidents and because safety and quality are obviously important to an airplane manufacturer, the challenged statements *must* be actionable as fraud regardless of what the statements actually said, and Defendants *must* have known their statements were false regardless of the absence of supporting factual allegations, because the Alaska Airlines accident happened.

A plaintiff cannot state a claim for securities fraud based on such speculation, no matter the rhetoric used in articulating the theory of the case or the volume of statements challenged. Despite their claims of fraud, Plaintiffs fail to show that any of the 75 challenged statements was materially false or misleading; they fail to point to any particularized facts raising the required strong (not plausible) inference that Defendants were aware of information contradicting their statements; and they fail to identify a link between any of their 22 alleged corrective disclosures and any of their 75 alleged misstatements that could show that the decline in Boeing's stock price on those 22 days was caused by the revelation of the "truth" supposedly concealed by the statements. For each of these three independent reasons, the Court should dismiss the Complaint

in its entirety with prejudice.

*First*, Plaintiffs fail to show that any challenged statement was materially false or misleading when made. The Complaint's sprawling approach of challenging 176 pages of statements made over nearly five years and bolding and italicizing 70 pages of text (a transparent effort to throw everything at the wall in the hope that something sticks) fails to satisfy the PSLRA's particularity requirement and renders it practically impossible for either the parties or the Court to analyze each statement individually, as is required by the PSLRA. In addition to that fundamental pleading deficiency, the vast majority of the challenged statements are immaterial as matter of law because they are generalized statements about safety and quality, as both federal courts that have examined many of the same statements already have held. None of the arguments in Plaintiffs' Opposition can change the nature of those statements and convert general descriptions of Boeing's commitment to safety made during a time when air travel was at an all-time high into material factual representations on which a reasonable investor would rely. Plaintiffs also fail to establish that the Complaint's allegations adequately plead that any of the other categories of challenged statements about codes of conduct and other policies, Boeing's goal to eliminate traveled work, the FAA's process for recertifying the 737 MAX after the two prior accidents, Boeing's rate of aircraft production, and regulatory compliance and risk factors are false or misleading.

*Second*, Plaintiffs' defense of their scienter allegations is even weaker. Plaintiffs still cannot identify a *single* particularized factual allegation connecting any Defendant to information that contradicted any of the challenged statements. Plaintiffs instead rely on generalized allegations about Boeing's new "reporting structure," unidentified "safety reports," and Defendants' stated commitment to monitoring safety and quality. Based on those allegations, Plaintiffs simply *assume* that Defendants *must* have been aware of alleged safety or quality issues

-2-

that supposedly contradicted their statements. Under the PSLRA's heightened pleading standard, however, such generalized allegations cannot substitute for particularized facts that create a *strong* inference that Defendants were aware of specific information that contradicted their statements and thus spoke with an intent to deceive investors. Plaintiffs' assertion that it is "absurd" to believe that Defendants were not aware of specific complaints by whistleblowers and former employees alleged in the Complaint does not supply the particularized factual allegations the PSLRA requires.

*Third*, Plaintiffs ignore the Fourth Circuit's heightened standard for pleading loss causation and misstate the connection they must plead between their 22 alleged corrective disclosures and their 75 alleged misstatements. Because Plaintiffs do not plead that the decline in Boeing's stock price on their corrective-disclosure dates was caused by the revelation of the "truth" concealed by any of Defendants' alleged misstatements, they fail to plead the essential element of loss causation.

## ARGUMENT

I.    **Plaintiffs Fail To Show That Any of the Challenged Statements Was Materially False or Misleading.**

Like their Complaint, Plaintiffs' Opposition substitutes sweeping assertions, buttressed by only a handful of purported examples, in place of an explanation of why each of the 75 challenged statements was materially false or misleading. This shotgun approach fails to comply with the PSLRA. Rather than address this fundamental pleading defect, Plaintiffs knock down several strawmen. Opp'n 19–20. The issue here is not merely the Complaint's length or the number of statements it challenges. Nor is it the Complaint's use of bold and italics to identify the allegedly false or misleading statements. Plaintiffs fail to comply with the PSLRA's requirements because they bolded and italicized large swaths of the 75 different alleged misstatements and their Complaint barely attempts to explain the reasons why any—let alone each—of these lengthy statements was allegedly false or misleading. Plaintiffs' overuse of bold and italics and boilerplate

-3-

explanations have made it practically impossible for the parties or the Court to analyze individually each challenged statement, which is the whole purpose of the PSLRA's particularity requirement. That is reason alone to dismiss the Complaint. But Plaintiffs' Opposition also fails to demonstrate that any of the challenged statements was materially false or misleading when made.

### A. Plaintiffs fail to show that general statements about safety and quality are actionable.

Plaintiffs' Opposition implicitly acknowledges the weakness of their argument that general statements about safety and quality can form the basis of a securities-fraud claim. Even though those statements make up roughly 80% of the 75 statements challenged in the Complaint and are the core of Plaintiffs' fraud theory—which is why Defendants addressed them first in their brief— Plaintiffs relegate this category of statements to third in their Opposition. Opp'n 13–18. Even more telling, Plaintiffs bury their response to the two other federal cases involving the Boeing 737 MAX that dismissed securities-fraud claims based on virtually identical statements to a single paragraph at the very end of that subsection. *Id*. at 17–18 (citing *In re Boeing Co. Aircraft Sec. Litig.*, 2022 WL 3595058 (N.D. Ill. Aug. 23, 2022), and *Coll. Ret. Equities Fund* v. *Boeing Co.*, 2023 WL 6065260 (N.D. Ill. Sept. 18, 2023)). Those two cases are directly on point and call for the dismissal of Plaintiffs' claims based on general safety and quality statements.

Contrary to Plaintiffs' assertion, the two prior federal decisions are not merely analogous. Opp'n 17. The courts there properly dismissed securities-fraud claims based on substantively (often literally) identical statements about the importance of safety to Boeing's business. As those courts recognized, statements such as "safety is a core value for everyone at Boeing" are "immaterial as a matter of law" because they are "insufficiently specific to affect a reasonable investor's assessment of the value of Boeing." *In re Boeing*, 2022 WL 3595058, at \*18–19; *see also Coll. Ret. Equities Fund*, 2023 WL 6065260, at \*7 ("Regardless of the falsity of these

-4-

statements, a reasonable investor could not find them material" because they "are the kind of loosely optimistic statements that are unimportant to [the] total mix of information for investors."). By dismissing those claims under Rule 12(b)(6), those two decisions (along with others cited in Defendants' opening brief) refute Plaintiffs' suggestion that the question of materiality cannot be resolved at the motion-to-dismiss stage. Opp'n 7. As those two federal courts held, where the challenged statements on their face are vague and general, they are immaterial as a matter of law and should be dismissed at the pleading stage.

Plaintiffs do not contend that there is any substantive difference between the safety-related statements at issue here and those that were dismissed in the other two cases. In fact, the statements are indistinguishable. Plaintiffs instead offer two reasons why this Court should break from the two other courts that have already considered such statements, but neither is persuasive.

First, Plaintiffs argue that the prior cases involved only a limited number of statements made "during the period between and immediately after the Crashes," whereas this case concerns years of safety-related statements. *Id*. at 17. That purported distinction does not withstand scrutiny. In the earlier-filed class action, whose class period overlaps with Plaintiffs' proposed class period here, the court noted that "Boeing and Muilenburg *repeatedly affirmed* their belief that the Max was a safe airplane," but it nevertheless held that those repeated statements "amount[ed] to nonmaterial puffery and opinion." *In re Boeing*, 2022 WL 3595058, at *7 (emphasis added). Plaintiffs are thus simply wrong that their allegations of repetition or the length of their class period makes any difference to those courts' analysis. Here, as in those other cases, the challenged safety statements are not actionable based on their general language and vague nature. Nor do Plaintiffs support their theory that merely repeating immaterial statements can transform them into material factual representations. Opp'n 16. Plaintiffs' reliance on *In re BHP*

-5-

*Billiton Ltd. Securities Litigation*, 276 F. Supp. 3d 65 (S.D.N.Y. 2017), is misplaced. Although that court observed that certain statements had been frequently repeated, it held that only statements that were "sufficiently specific" could be "potentially actionable" and dismissed claims based on repeated safety statements that were "simply too general and/or aspirational." *Id*. at 80.

Second, Plaintiffs assert that "many of the allegedly omitted facts" in the other two cases, "unlike here, were publicly known," apparently referring to one court's statement that the "two closely related plane crashes" and the later grounding of the 737 MAX were "public knowledge." Opp'n 17 & n.17. But the plaintiffs in that case did not argue that the statements were materially misleading because they omitted references to the two crashes or the FAA's grounding. The court simply referenced those two facts as further support for its conclusion that general statements about the importance of safety would not have altered the "total mix of information" for any reasonable investor. *In re Boeing*, 2022 WL 3595058, at *19. The same is true here. Indeed, the "total mix of information" here is largely the same, particularly given that Plaintiffs' proposed class period overlaps with the class period alleged in *In re Boeing*. As in that case, the widespread public knowledge of the prior accidents and regulatory concerns is further support for the conclusion that the challenged "rosy affirmation[s]" of safety are "immaterial as a matter of law." *Id*.[1]

Plaintiffs have no response to Defendants' argument that the challenged statements are immaterial because they are "too untethered to anything measurable," effectively conceding the point. *City of Monroe Emps. Ret. Sys.* v. *Bridgestone Corp.*, 399 F.3d 651, 671 (6th Cir. 2005).

---

[1] Plaintiffs also argue that the outcome should be different here because "the inference of scienter is much stronger." Opp'n 18. But the court's ruling that the challenged safety statements were immaterial as a matter of law had nothing to do with the strength of the plaintiffs' scienter allegations. *In re Boeing*, 2022 WL 3595058, at *9 n.7 ("Because none of these 'safety statements' are materially false … [a]lleging scienter as to these statements would not salvage them as viable securities fraud claims.").

In a footnote (Opp'n 18 n.18), Plaintiffs argue that *Bridgestone* "do[es] not support [Defendants']
position" because *Bridgestone* identified one safety statement that was actionable because it
referenced measurable "objective data." 399 F.3d at 671. But Plaintiffs cannot point to any safety
statement here that similarly references measurable "objective data"; instead, all of the challenged
statements are "untethered to anything measurable" and thus do not "communicate anything that
a reasonable person would deem important to a securities investment decision." *Id.*; *see also*, *e.g.*,
*BHP Billiton*, 276 F. Supp. 3d at 80 (dismissing all safety statements as immaterial except those
that "contain[ed] quite specific representations or guarantees of 'some concrete fact or outcome'").
Indeed, the courts in the two prior decisions involving the 737 MAX rejected claims based on
nearly identical statements for this same reason. *See In re Boeing*, 2022 WL 3595058, at \*19;
*Coll. Ret. Equities Fund*, 2023 WL 6065260, at \*7, 15. Even *In re Massey Energy Co. Securities
Litigation*, 883 F. Supp. 2d 597 (S.D.W. Va. 2012)—Plaintiffs' principal case—recognized that
only statements whose "truth or falsity" can be determined are material. *Id.* at 618. The safety
statements here are too vague and general to provide an objective yardstick to determine their truth.

Finally, Plaintiffs make a point of the fact that the subject of safety is "important" to
Boeing, citing analyst reports that discuss the importance of safety. Opp'n 14–15 & n.12.[2] But,
as Plaintiffs' own case explains, the "materiality of the overall subject" does not satisfy the
requirement that the challenged *statement* must be material. *Allegheny Cty. Emps.' Ret. Sys.* v.
*Energy Transfer LP*, 532 F. Supp. 3d 189, 218 (E.D. Pa. 2021) ("Notwithstanding the materiality

---

[2] Plaintiffs focus on one particular analyst report issued by Bank of America in April 2021, which
noted that "the language in [Boeing's] proxy has shifted" over the last two years. Opp'n 14
(quoting AC ¶ 156). But this analyst was making the same point as the other analysts—*i.e.*, that
the *subject* of safety is important to Boeing—based on the frequency with which the word "safety"
was used in Boeing's proxy in 2019, 2020, and 2021. AC ¶¶ 157, 739. The analyst did not suggest
that any particular safety-related statement, much less any challenged here, was material.

of the overall subject, Plaintiffs have not adequately alleged that all statements regarding safety were materially misleading."). Even a statement about a critically important topic like safety is immaterial if the statement is so general that "a reasonable investor could not find [it] material." *In re Boeing*, 2022 WL 3595058, at \*19. That fundamental problem dooms Plaintiffs' claims based on general statements about safety and quality, roughly 80% of the 75 challenged statements.

### B. Plaintiffs fail to show that aspirational statements contained in codes of conduct and other policies are actionable.

Plaintiffs argue that Boeing's descriptions of its Safety Management System ("SMS") and related efforts to encourage employees to report safety issues after the 2018 and 2019 accidents were materially false and misleading because those policies were not universally followed. But Defendants' descriptions of such policies and procedures amount to "opinions as to what actions are preferable"; they did not "imply[] that all staff, directors, and officers always adhere to [the stated] aspirations." *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund* v. *Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017). As their language makes clear, none of the statements Plaintiffs quote (Opp'n 9) are guarantees of perfect compliance by everyone at the Company with Boeing's SMS, codes of conduct, and other policies.

Notably, Plaintiffs do not contend that these statements were false because the referenced policies and procedures did not exist at Boeing or that Defendants' descriptions of them were inaccurate. Plaintiffs instead argue that the statements are "misleading" because, according to a member of an FAA panel who interviewed and surveyed Boeing employees, employees felt there was a "disconnect" between the stated policies and their own experiences at the Company. Opp'n 9–10. Those general allegations of a "disconnect," however, are insufficient to plead that Boeing's statements about its SMS, codes of conduct, and anti-retaliation policy were materially false or misleading. Statements that accurately describe a company's policies or procedures are

-8-

not materially false or misleading just because some employees do not abide by them.  As the Ninth Circuit explained, allowing fraud claims premised on corporate codes of conduct and similar policies to proceed whenever employees violate them "is simply untenable, as it could turn all corporate wrongdoing into securities fraud." *Hewlett-Packard*, 845 F.3d at 1276.[3]

### C.    Plaintiffs fail to show that forward-looking statements about efforts to eliminate "traveled work" are actionable.

Plaintiffs' arguments related to "traveled work" (Opp'n 11–13) fail to refute Defendants' showing that their statements were forward-looking descriptions of Boeing's ongoing efforts to eliminate traveled work in the future, not representations that traveled work already had been eliminated.  Despite Plaintiffs' selective quotations, taken out of context to make them look like representations of current fact, none of the challenged statements represented that Boeing had "eliminated" traveled work. *See id*. at 11.  Instead, they stated that (i) "we will strive to eliminate it" (AC ¶ 682); (ii) Boeing was putting in "hard work" not to "have traveled work" (*id*. ¶ 690); (iii) Boeing was engaged in "efforts" to "eliminate traveled work" (*id*. ¶ 769); and (iv) Boeing will "get stability" when it has "all the standard work in station" (*id*. ¶ 856).  The 2024 statement by Brian West that Plaintiffs quote does precisely the same thing, referencing Boeing's "resolve" to "get after traveled work" and the improvements that can be made "once you do reduce traveled work," and stating that "starting on March 1 of [2024], we no longer travel work."  Opp'n 12.

Plaintiffs do not allege any facts suggesting that Boeing was not, in fact, working to eliminate traveled work.  Rather, they argue that Boeing's statements were misleading because

---

[3] The two cases Plaintiffs cite are distinguishable.  Opp'n 10.  In one, the plaintiffs alleged that "BP was aware that *substantiated* complaints of retaliation had been submitted to the Company through numerous avenues." *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 730 (S.D. Tex. 2012) (emphasis added).  No such allegations exist here.  The other did not even involve representations about codes of conduct or other policies—the challenged representation related to whether a merger price was "fair." *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund* v. *Transocean Ltd.*, 866 F. Supp. 2d 223, 228, 230 (S.D.N.Y. 2012).

Defendants did not "tell the whole truth" about their ongoing efforts. *Id*. at 12 (citing *Singer* v. *Reali*, 883 F.3d 425, 440 (4th Cir. 2018)). But unlike in *Singer*, where the allegedly omitted "whole truth" included illegal conduct and other contradictory information, 883 F.3d at 440, the only allegedly omitted information here is Plaintiffs' vague allegation that, despite Boeing's efforts to eliminate out-of-sequence work, traveled work "as it relates to the fuselage" was, as of 2024, "embedded and normalized in our factory." Opp'n 12; AC ¶ 448. Even accepting that allegation as true, it does not mean that the challenged forward-looking statements about Boeing's plans and ongoing efforts to eliminate traveled work were false or misleading when made.[4]

### D. Plaintiffs fail to show that statements about the FAA's recertification process are actionable.

Plaintiffs devote one short paragraph to defending their claim that statements about the FAA's recertification process were false or misleading. Opp'n 18. In their Opposition, Plaintiffs retreat from their allegation—repeated 51 times in the Complaint—that the statements were misleading because the FAA's process "address[ed] only MCAS." *E.g.*, AC ¶¶ 578, 587, 599, 696, 712. Plaintiffs now argue that, "[w]hether or not MCAS was the *exclusive* focus of the recertification process, Defendants concealed their knowing failure to address other unsafe features" of the 737 MAX. Opp'n 18 (citation omitted). But the FAA, not Defendants, controlled the 20-month process that ultimately led to the FAA's recertification of the 737 MAX, and the Complaint makes clear that the FAA's process was anything but limited. *See* AC ¶ 73 (citing "seven safety issues" identified); *id*. ¶ 74 (recertification "followed a 'comprehensive and methodical safety review process that took 20 months to complete'"); *id*. ¶ 75 (FAA "specified 'design changes that must be made before the aircraft return[ed] to service'").

---

[4] Many of the challenged statements, including those concerning traveled work, are also not actionable because they are protected by the PSLRA's safe-harbor. Defs' Mem. 15. Contrary to Plaintiffs' assertion (Opp'n 12 n.6), Defendants "specif[ied]" each such statement in Appendix B.

**E.      Plaintiffs fail to show that statements about Boeing's production rate are actionable.**

Plaintiffs dedicate one sentence to defending their claim that the statements about Boeing's production rate were materially false or misleading. Opp'n 13. Plaintiffs do not allege that these production-rate statements were inaccurate, and the two cases they cite are inapposite because they involved statements about the company's *capability* to achieve promised rates. *Salzman* v. *ImmunityBio, Inc.*, 2024 WL 3100274, at *8 (S.D. Cal. June 20, 2024) (statements about "manufacturing capabilities"); *In re Emergent BioSolutions Inc. Sec. Litig.*, 2023 WL 5671608, at *17 (D. Md. Sept. 1, 2023) (statements about the "capability to rapidly produce vaccines on a large scale across its four suites"). Plaintiffs cannot predicate a fraud claim on concededly accurate statements about production rates simply by arguing, without supporting factual allegations, that "achieving those rates depended on unsafe practices such as traveled work." Opp'n 13.

**F.      Plaintiffs fail to show that statements about regulatory compliance and risk factors are actionable.**

Plaintiffs devote one paragraph to arguing that Defendants "misled investors concerning Boeing's regulatory compliance" by stating that it was "fully cooperating" with government investigations, "remained subject to compliance" with the DPA, and had a "renewed commitment to full transparency" with regulators. *Id*. at 19. But Plaintiffs do not point to any factual allegations establishing that any particular statement about regulatory compliance was false or misleading when made. Plaintiffs rely heavily on *Energy Transfer*, but in that case, unlike here, the challenged statements affirmatively represented that the company was complying with orders that contained "specific, measurable procedures for Defendants to follow." 532 F. Supp. 3d at 220. Nor can Plaintiffs plead a fraud claim based on Boeing's identification of these investigations as a risk factor in its SEC filings. In *Singer*, the Fourth Circuit addressed the different question of whether a "generic warning of a risk" could satisfy the duty to disclose allegedly omitted facts. 883 F.3d

-11-

at 442.  Here, relying on conclusions reached by an FAA panel and the DOJ in 2024 *after* the

Alaska Airlines accident, Plaintiffs argue that the risk factors themselves were false or misleading.

**II.      Plaintiffs Fail To Identify Particularized Factual Allegations Supporting a Strong Inference of Scienter.**

      **A.      Plaintiffs cannot satisfy the PSLRA's heightened pleading standard by relying on Defendants' access to information, their commitments to monitoring safety, and unconnected whistleblower allegations.**

Plaintiffs attempt to manufacture the required "strong inference" that Defendants acted

with an intent to deceive investors by pointing to Defendants' assumed access to information, their

statements that they were focused on safety after the tragic accidents in 2018 and 2019, and the

claims of various whistleblowers and former employees.  But all of these allegations, whether

considered separately or together, lack the critical element necessary to support a strong inference

of scienter:  a particularized factual allegation linking Defendants to knowledge of specific

information that contradicted their statements.  This is an independent ground for dismissal.

The PSLRA requires that Plaintiffs do more than assert that Defendants *must* have had

access to certain information based on their positions at Boeing and their receipt of unspecified

"safety reports."  Plaintiffs must "specifically identif[y]" the reports Defendants purportedly

received and the "contradictory information" supposedly contained in them that would have put

Defendants on notice that their statements were false or misleading.  *See Plumbers & Steamfitters*

*Loc. 773 Pension Fund* v. *Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 300

(S.D.N.Y. 2010) (citation omitted).  The Complaint is devoid of any such allegation.

Plaintiffs argue that they have "identified" the "manner in which safety reports were

elevated to Boeing's executives" and described the "new reporting structure" installed at Boeing

after 2019.  Opp'n 21.  They contend that this reporting structure sought to ensure that "safety

reports from all levels of the company are reviewed by senior management" and that the Individual

Defendants were "required to receive *all* 'safety and potential safety reports.'"  *Id*.  None of those allegations satisfies the PSLRA's standard for pleading scienter, which requires particularized factual allegations of Defendants' "actual exposure" to contradictory information that creates a strong inference that they knowingly, or with severe recklessness, made false statements.  *Yates* v. *Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 890 (4th Cir. 2014).  For all of the time Plaintiffs spend describing the "reporting structure" and the existence of "safety reports," not once do they allege what specific information Defendants purportedly learned that contradicted their statements.

Plaintiffs never even explain what information the "safety reports" purportedly contained. They instead appear to assume that *everything* that touches on safety, quality control, or non-retaliation *must have* been contained in a report that ultimately reached Boeing's CEO and CFO. But that is the problem.  Plaintiffs ask the Court to assume—and then predicate the required *strong* inference of scienter on the assumption—that specific (but unidentified) information that Plaintiffs believe rendered Defendants' statements false or misleading must have been contained in the safety reports that Defendants received.  Courts have repeatedly held that the PSLRA's pleading requirements cannot be satisfied by such assumptions.  *See* Defs' Mem. 20–21 (citing cases).

Plaintiffs rely on language from *Ollila* v. *Babcock & Wilson Enterprises*, 2018 WL 792069 (W.D.N.C. Feb. 8, 2018), stating that a plaintiff need not present "smoking gun documentation" that a defendant "explicitly knew" of particular issues.  Opp'n 25.  But the allegations in that case illustrate precisely why Plaintiffs' allegations here are deficient.  In *Ollila*, the plaintiffs alleged that the defendants received "monthly reports" that contained details about "project status, delays, and problems within the Renewable segment" that would have directly contradicted the defendants' public statements about the performance of renewables, and the complaint included testimony from confidential witnesses "who helped to prepare" those reports and "provided

-13-

specific details" about what they contained. 2018 WL 792069, at *2–3. The fact that the plaintiffs did not identify which *exact* report(s) contained that information—the "smoking gun"—did not matter because the complaint alleged with particularity the specific information the defendants received contradicting their statements and how that information made its way to the defendants. *Id.* at *3. That is a stark contrast to this case, where Plaintiffs allege only that Defendants received unspecified "safety reports" but say nothing about what information those reports contained.

*Massey* is no different. The defendants there touted the company's safety record by emphasizing that a "key safety measurement rate" (the "NFDL" rate) was decreasing. 883 F. Supp. 2d at 604. In pleading scienter, the plaintiffs alleged with particularity that, among other things, the defendants received reports that contained data directly contradicting the NFDL rates they reported. *Id.* at 620–21. Again, Plaintiffs have not alleged similar facts here, relying instead on speculative assertions that Defendants *must* have seen information contradicting their statements.

Plaintiffs also urge the Court to find a strong inference of scienter because Defendants "affirmed that they were personally involved in monitoring" safety and quality. Opp'n 21. These allegations are insufficient for the same reason that Plaintiffs' allegations about the "reporting structure" and "safety reports" come up short. It is not disputed that the CEO and CFO of Boeing, a leading manufacturer of commercial airplanes, monitor the safety and quality of those airplanes. But Plaintiffs never link any of Defendants' statements about their involvement in monitoring safety and quality to specific information they received that would undercut their statements. "[R]egular monitoring," without particularized allegations of contradictory information Defendants "were privy to," does not supply the required strong inference of scienter. *Knurr* v. *Orbital ATK Inc.*, 272 F. Supp. 3d 784, 801 (E.D. Va. 2017).

Plaintiffs argue that this case is just like *Kiken* v. *Lumber Liquidators Holdings, Inc.*, 155

-14-

F. Supp. 3d 593 (E.D. Va. 2015), where the executives also "represented that they were 'personally involved' in" monitoring the matter at issue. Opp'n 25. But *Kiken* only confirms that Plaintiffs' allegations here are deficient. In *Kiken*, the plaintiffs challenged statements that the company's higher profit margins were driven by new "sourcing initiatives" after it came to light that those "initiatives" involved illegally harvested wood from China. 155 F. Supp. 3d at 598–99. The plaintiffs alleged with particularity that the defendants *personally* drove the decision to bring on those Chinese suppliers, directly oversaw the Chinese operations, and even conducted "line reviews" in China and "toured the illegal operations" at one of the plants. *Id.* at 607–08. Plaintiffs here allege nothing even approaching that kind of specific exposure to contradictory information.

Plaintiffs also cite *In re BP* (Opp'n 25–26), but that case is likewise distinguishable. Unlike the generic statements at issue here, the plaintiffs in *BP* challenged specific statements by BP's CEO that the company was making progress implementing specific "recommendations" made by a review panel for improving BP's process safety systems. *BP*, 843 F. Supp. 2d at 782. Far from merely pleading that BP's CEO generally "took responsibility for safety efforts" and had said that he was "focused on safety like a laser," Opp'n 25–26 (quoting 843 F. Supp. 2d at 782), the *BP* plaintiffs pled numerous, specific admissions by the CEO that he was *the* "key individual tracking th[e] progress" in implementing the panel's concrete recommendations and that he himself was personally taking on some of those implementation efforts. 843 F. Supp. 2d at 783. Those allegations are a far cry from what Plaintiffs allege here—that the Individual Defendants, merely by committing themselves to monitoring the safety and quality of Boeing's airplanes as any executive would, must have learned some specific information that contradicted their statements.

Plaintiffs again rely heavily on what they call "West's March 2024 admission" (Opp'n 22), but nothing in West's statement suggests that he or any other Defendant had knowledge of specific

-15-

information that contradicted their earlier statements when they were made. West's statement that, "for years, we prioritized the movement of the airplane through the factory over getting it done right," says nothing about whether the Individual Defendants knew anything that undermined their statements—which date back more than four years to September 2019—when made. *Id*. West's statement that the "leadership team got it in the immediate aftermath" of the January 2024 Alaska Airlines accident instead suggests that Defendants' thinking about specific manufacturing issues changed *after* that accident. And Plaintiffs' contention that West admitted that the Boeing "leadership team" controlled Boeing's "prioritization of production rate over safety and quality" is not an accurate description of his statement. *Id*. What West actually said is that "[w]e control how this happens, and it's about our resolve to get ahead and get after traveled work." AC ¶ 225. In the next sentence, West stated that another Individual Defendant, David Calhoun, "is in the factory, personally making sure that we do get control of it." *Id*. When read in its entirety, nothing West said is an "admission" that Defendants were contemporaneously aware of information contradicting their earlier statements.

Plaintiffs point to the allegations of a handful of whistleblowers and former Boeing employees, but still cannot point to a single allegation connecting those allegations to any of the Individual Defendants. Plaintiffs simply copy-and-paste from the Complaint the claims of five individuals, highlighting vague phrases like "Boeing management" and "Boeing managers" and broad assertions that supervisors and managers "all kn[e]w" about various pieces of unfavorable information. Opp'n 22–24. In an attempt to shore up these deficient allegations, Plaintiffs include with their Opposition an appendix listing more snippets of claims from these individuals. Opp'n App. A. Remarkably, even these new excerpts *still* do not mention a single Individual Defendant that supposedly was aware of the information in question. For example, Sam Salehpour asserts

-16-

that he took his concerns to a vice president of engineering, not to any of the Individual Defendants who served as Boeing's CEO and CFO during the relevant time.  Opp'n 23 n.25.

Without any particularized allegations connecting the whistleblowers' claims to any of the Individual Defendants, Plaintiffs resort to asserting that "Defendants' conceit that they may have been unaware of *all* of this is absurd." *Id*. at 24.  Under the PSLRA, such rhetoric is not a substitute for particularized factual allegations.  This assertion also misunderstands Plaintiffs' pleading burden under the PSLRA and is inconsistent with their fraud theory.  It is not Defendants' burden to convince the Court that they were unaware of any particular piece of information; it is Plaintiffs' burden to plead facts showing that they were.  In attempting to plead fraud, Plaintiffs contend that Defendants knew that their statements about Boeing's commitment to safety, quality, and non-retaliation were false because of "pervasive safety and quality deficiencies" and instances of retaliation at the Company.  *Id.*  Having attempted to plead fraud based on that theory, it is not enough, as Plaintiffs seem to suggest, merely to assume that at least one of the smattering of issues and employee concerns alleged in the Complaint *must* have made its way to the desk of one of the Individual Defendants.  Plaintiffs must allege with particularity that the Individual Defendants themselves were aware of "pervasive" issues that rendered their statements about Boeing's commitment to safety, quality, and non-retaliation false.  Thus, even if Plaintiffs had adequately alleged that one whistleblower's allegations were conveyed to one of the Individual Defendants— *e.g.*, Mr. Salehpour's dispute with his superiors or Merle Meyer's claim that he was "unfairly reprimanded" (*id*. at 23)—that would not mean that any of the Individual Defendants was at least severely reckless in speaking about Boeing's commitment to safety, quality, and non-retaliation.

### B.    Plaintiffs' remaining scienter allegations fall short.

Plaintiffs barely defend their "additional scienter allegations." *Id*. at 26–28.  They simply say that those "[o]ther allegations further support a strong inference of Defendants' scienter as part

of a holistic analysis." *Id*. at 26.  Plaintiffs are mistaken.

*First*, while Plaintiffs insist that "investigations of Boeing … further support" an inference of scienter, they never explain why.  *Id*. at 26–27.  Plaintiffs do not attempt to link any particular investigation to any particular statement, let alone explain how the investigations support an inference that Defendants intentionally misled the public when they spoke.

*Second*, Plaintiffs repeat their allegation that "Boeing's refusal to produce documents to the NTSB concerning the Alaska Airlines accident evinces an intent to hide the falsity of the misstatements at issue" stretching back to September 2019.  *Id*. at 27  But Plaintiffs still do not explain what information they think the supposedly withheld documents contained, why Boeing's CEO and CFO would have had anything to do with the scope of Boeing's document production, or why the alleged withholding of these unidentified documents earlier this year suggests that any of the Individual Defendants made the challenged statements with an intent to deceive investors.

*Third*, Plaintiffs argue that they have alleged "suspicious circumstances" surrounding Dennis Muilenburg's resignation, Gregory Smith's retirement, and David Calhoun's announced retirement this year.  *Id*.  But they point to no facts related to these departures that raise anything close to an inference that any of these individuals made a false statement with scienter.

*Fourth*, Plaintiffs still cannot explain how Boeing's incentive compensation program— which determines compensation based on *internal* metrics—would provide any motivation for Defendants to lie to the *public* about safety issues supposedly widely known at Boeing.  Plaintiffs fall back on the conclusory assertion that "this compensation structure gave them further reason to be aware of Boeing's actual safety practices" (*id.* at 28), which is just a variant of their inadequate speculation that Defendants must have known of safety issues that contradicted their statements.

**C.      Plaintiffs fail to plead corporate scienter.**

In a last-ditch effort, Plaintiffs claim that Defendants "do not contest Boeing's scienter."

-18-

*Id.* at 28.  That is incorrect.  As Plaintiffs acknowledge, to plead corporate scienter, they must allege particularized facts sufficient to support "a strong inference of scienter with respect to at least one authorized agent of the corporation" responsible for a challenged corporate statement. *Id.* (quoting *Kiken*, 155 F. Supp. 3d at 606).  Plaintiffs say that such agents here "include, but are not limited to, the Individual Defendants." *Id*.  Defendants' opening brief amply demonstrated that the Complaint fails adequately to plead that the Individual Defendants acted with scienter.

Plaintiffs now attempt to predicate their corporate-scienter allegations on the mental state of some other unidentified "corporate agent" who supposedly must have known about information that rendered Boeing's statements false.  *Id.* at 28–29.  In support, Plaintiffs seize on language from one case stating that "it is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and disseminated the fraud." *Matrix Capital Mgmt. Fund, LP* v. *BearingPoint, Inc.*, 576 F.3d 172, 190 (4th Cir. 2009).  Plaintiffs misunderstand the circumstances imagined by *Matrix*.  Although it may be *possible* to plead corporate scienter without naming a specific individual responsible for the misstatement, a plaintiff can do so only in the rare case when a company makes a statement that is so dramatically false "that the statement must have been 'approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false.'" *Knurr*, 272 F. Supp. 3d at 812 n.44 (quoting *Matrix*, 576 F.3d at 190).  The hypothetical referenced in *Matrix*—General Motors' announcement that "it had sold one million SUVs in 2006, [when] the actual number was zero"—is illustrative.  576 F.3d at 190.  It would defy logic to believe that General Motors could make such a drastically wrong statement without one corporate agent knowing it was false.  That is a far cry from what Plaintiffs allege here.  Because Plaintiffs do not allege that any authorized agent of Boeing knew that any Boeing statements was false, their allegations of corporate scienter fail as a matter of law.

### III.     Plaintiffs Fail To Plead Loss Causation.

In attempting to defend their superficial loss causation allegations, Plaintiffs ignore the Fourth Circuit's requirement that they must plead loss causation with "sufficient specificity" to satisfy Rule 9(b). *Singer*, 883 F.3d at 444–45.  Plaintiffs thus must allege facts showing that each of their 22 alleged corrective disclosures "reveal[ed] some then-undisclosed fact" hidden by "specific misrepresentations alleged in the complaint" and that the disclosure of this concealed fact caused a decline in Boeing's stock price.  *Katyle* v. *Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 472–73, 478 (4th Cir. 2011).  Notwithstanding this requirement, the paragraph of the Complaint alleging "loss causation" (AC ¶ 1000) does not even attempt to connect any of Plaintiffs' 22 alleged corrective disclosures to any of their 75 alleged misstatements.

Plaintiffs try to skirt the Fourth Circuit's pleading standard by arguing that "Plaintiffs 'need not precisely identify the misrepresentation or omission'" so long as the corrective disclosures "'relate[] back' to the misstatements."  Opp'n 29 (quoting *Singer*, 883 F.3d at 446).  That is not what *Singer* holds.  While *corrective disclosures* "need not precisely identify the misrepresentation or omission," the *Complaint* must plead the necessary connection.  *Singer*, 883 F.3d at 446. Plaintiffs then fall back on generalities, broadly arguing that, "as to each corrective disclosure and materialized risk, the Complaint describes the exposure of previously-concealed information and the resulting stock price decline."  Opp'n 29.  Such generalities are insufficient to plead a causal link between any of the 75 alleged misstatements and any of the 22 alleged corrective disclosures.

### CONCLUSION

The Complaint should be dismissed with prejudice, and the Court should deny Plaintiffs' passing request, made in a footnote, for leave to amend.  *Id*. at 30 n.43.  Appendix B to the Opposition sets forth the only "new" facts that Plaintiffs identify that would add to an amended complaint.  None of those allegations would cure the Complaint's three fundamental deficiencies.

-20-

Dated: August 5, 2024

Respectfully submitted,

_/s/ Benjamin L. Hatch_

Richard C. Pepperman II (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
peppermanr@sullcrom.com

Judson O. Littleton (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
Facsimile: (202) 293-6330
littletonj@sullcrom.com

Benjamin L. Hatch
MCGUIREWOODS LLP
888 16th Street N.W.
Suite 500
Black Lives Matter Plaza
Washington, D.C. 20006
T: (757) 640-3727
F: (757) 640-3947
E-mail: bhatch@mcguirewoods.com

*Counsel for Defendants The Boeing Company, David L. Calhoun, Dennis A. Muilenburg, Brian J. West, and Gregory D. Smith*

-21-

**CERTIFICATE OF SERVICE**

I certify that on the 5th day of August, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sends an electronic copy of the foregoing to all counsel of record in this case.

> _/s/ Benjamin L. Hatch_
> Benjamin L. Hatch