1

                    UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
2                         Alexandria Division

3

OKLAHOMA FIREFIGHTERS PENSION    :    Civil Case
4   AND RETIREMENT SYSTEM,            :    No. 1:24-cv-1200
                                      :
5                    Plaintiff        :
           v.                         :
6                                     :
DAVID L. CALHOUN, et al.,            :
7                                     :
                 Defendants          :
8   ..............................    :    ........................

9   IN RE: BOEING COMPANY            :    Civil Case
SECURITIES LITIGATION            :    No. 1:24-cv-151
10                                    :
                                      :    September 6, 2024
11                                    :    10:40 a.m.
..............................    :    ........................
12
                    TRANSCRIPT OF MOTIONS HEARING
13            BEFORE THE HONORABLE LEONIE M. BRINKEMA
                   UNITED STATES DISTRICT JUDGE
14
    APPEARANCES:
15
    FOR THE PLAINTIFFS IN          MAXWELL RALPH HUFFMAN
16  CASE NO. 1:24-CV-1200:         SCOTT + SCOTT, LLP
                                   600 W. Broadway
17                                 Suite 3300
                                   San Diego, CA  92101
18                                 619-233-4565

19                                 CHARLES WILLIAMS
                                   WILLIAMS & SKILLING, PC
20                                 4801 Radford Avenue
                                   Suite A
21                                 Richmond, VA  23230
                                   804-447-0307

22

23  FOR THE INTERVENOR OHIO        SUSAN REBBECA PODOLSKY
    PUBLIC EMPLOYEES               LAW OFFICES OF SUSAN R. PODOLSKY
24  RETIREMENT SYSTEM AND          1800 Diagnal Road
    STATE TEACHERS RETIREMENT      Suite 600
25  SYSTEM OF OHIO:                Alexandria, VA  22314
                                   571-366-1702

```
 1

 2    FOR THE INTERVENOR OHIO        JAVIER BLEICHMAN
      PUBLIC EMPLOYEES               BLEICHMAR FONTI & AULD, LLP
 3    RETIREMENT SYSTEM AND          300 Park Avenue
      STATE TEACHERS RETIREMENT      Suite 1301
 4    SYSTEM OF OHIO:                New York, NY  10022
                                     212-789-1340
 5
                                     DERRICK FARRELL
 6                                   BLEICHMAR FONTI & AULT, LLP
                                     3411 Silverside Road
 7                                   Baynard Building
                                     Suite 104
 8                                   Wilmington, DE  19810
                                     302-499-2122
 9
      FOR THE INTERESTED PARTY       CRAIG CRANDALL REILLY
10    STATE OF RHODE ISLAND          LAW OFFICE OF CRAIG C. REILLY
      OFFICE OF THE GENERAL          209 Madison Street
11    TREASURER ON BEHALF OF         Suite 501
      THE EMPLOYEES' RETIREMENT      Alexandria, VA  22314
12    SYSTEM OF RHODE ISLAND:        703-549-5354

13

14    FOR THE PLAINTIFFS IN         CHRISTOPHER CHAD JOHNSON
      CASE NO. 1:24-CV-00151:       BRENT MITCHELL
15                                  JONATHAN ZWEIG
                                    ROBBINS GELLER RUDMAN & DOWD, LLP
16                                  420 Lexington Avenue
                                    Suite 1832
17                                  New York, NY  10170
                                    212-432-5100
18
                                    STEVEN JEFFREY TOLL
19                                  COHEN MILSTEIN SELLERS & TOLL
                                    1100 New York Avenue, NW
20                                  Suite 500, West Tower
                                    Washington, DC  20005-3965
21

22                                  CAROL CECILLIA VILLEGAS
                                    LABATON KELLER SUCHAROW, LLP
23                                  140 Broadway
                                    New York, NY  10005
24                                  212-907-0700

25
```

```
 1    FOR THE DEFENDANTS:            BENJAMIN LUCAS HATCH
                                     MCGUIRE WOODS, LLP
 2                                   101 W. Main Street
                                     Suite 9000
 3                                   Norfolk, VA  23510
                                     757-640-3947
 4
                                     RICHARD CARL PEPPERMAN, II
 5                                   SULLIVAN & CROMWELL, LLP
                                     125 Broad Street
 6                                   Room 2740
                                     New York, NY  10004
 7                                   212-558-4000

 8                                   JUDSON OWEN LITTLETON
                                     SULLIVAN & CROMWELL, LLP
 9                                   1700 New York Avenue, NW
                                     Suite 700
10                                   Washington, DC  20006
                                     202-956-6982
11

12    OFFICIAL COURT REPORTER:       REBECCA STONESTREET, RPR, CRR
                                     U.S. District Court, 9th Floor
13                                   401 Courthouse Square
                                     Alexandria, Virginia  22314
14                                   (240) 426-7767

15                          ( Pages 1 - 42)

16

17

18          COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

19

20

21

22

23

24

25
```

*Rebecca Stonestreet, RPR, CRR, Official Court Reporter*

4

**P R O C E E D I N G S**

COURTROOM CLERK:  Civil Action Numbers 1:24-cv-1200, Oklahoma Firefighters Pension and Retirement System versus Calhoun, et al., and 1:24-cv-151, In Re: Boeing Company Securities Litigation.

THE COURT:  I'm not sure we're going to have enough room for everybody, so only the lawyers who are going to speak really need to be in the well.  But it makes sense to have these two cases somewhat at the same time.

COURTROOM CLERK:  Will counsel please note their appearance for the record, first for the plaintiffs.

MS. PODOLSKY:  Susan Podolsky for the proposed intervenors, the two Ohio retirement systems.  I have with me Derrick Farrell and Javier Bleichmar of the Bleichmar Fonti firm, who are assisting me today.

Do you want me first at this table?

THE COURT:  Yeah, I'm going to hear the Oklahoma case first.  All right?  But I thought as many of you who can fit who are going to be talking should be in the well.

MS. PODOLSKY:  We can vacate --

THE COURT:  We're going to hear you-all first.

MS. PODOLSKY:  Thank you, Your Honor.

THE COURT:  So who is here for Boeing after the Oklahoma case?

MR. HUFFMAN:  Good morning, Your Honor.

1    Maxwell Huffman on behalf of Oklahoma.

2            THE COURT:  Okay.  Mr. Reilly?

3            MR. REILLY:  Good morning, Your Honor.  In the

4    shareholder case, 151, Craig Reilly, liaison counsel for the

5    plaintiff class.  With me is lead plaintiff counsel from the

6    Robbins Geller firm, Chad Johnson, Jonathan Zweig, and

7    Brent Mitchell.  And with the Court's permission, Mr. Johnson

8    will address the Court.

9            THE COURT:  All right.  That's fine.

10           MR. TOLL:  Good morning, Your Honor.  Good to see you

11   again.  Steven Toll, co-liaison counsel, also for the

12   plaintiffs.  And with me is lead counsel Carol Villegas.

13           THE COURT:  Very good.  Actually, if a couple of you

14   want to sit in the jury box, that's fine.  You're the last case.

15           All right.  So I want to hear first on this motion to

16   intervene, which is -- oh, I'm sorry.

17           MR. HATCH:  Good morning, Your Honor.  Ben Hatch,

18   McGuireWoods, on behalf of the defendants in both of the matters

19   that you called.  And with me is Mr. Rick Pepperman and

20   Mr. Jud Littleton of the Sullivan & Cromwell firm, also for the

21   defendants.

22           THE COURT:  Very good.

23           So the motion to intervene is fascinating.

24           MS. PODOLSKY:  I hope that's a compliment, Your Honor.

25           THE COURT:  I'm not sure, Ms. Podolsky.  All right.  I

1    finally understand it.  I didn't understand it when I first saw

2    it, because traditionally when one intervenes, one joins the

3    lawsuit.

4          My understanding is if you-all come in and you join the

5    lawsuit as a party, it deflects or defeats the whole point

6    you're trying to make by asking for a stay, correct, because you

7    want to be able to continue the Delaware Chancery 220

8    proceeding?

9          MS. PODOLSKY:  We do want to continue the 220

10   proceeding, that's correct.

11          THE COURT:  Yes.

12          MS. PODOLSKY:  And we're moving to intervene for the

13   limited purpose of asking for a stay.

14          THE COURT:  Right.

15          MS. PODOLSKY:  I don't think they're at odds, the two.

16          THE COURT:  No, but -- well, the point is, I'm

17   perfectly willing to let you intervene --

18          MS. PODOLSKY:  Yes, ma'am.

19          THE COURT:  -- but I'm not going to grant the stay.

20   And I don't think that's really what you want, is it?  Because

21   if I let you intervene, then you become a party in this case.

22   Would you not then become a -- and you are.  I mean, you

23   represent a pension fund that invested in Boeing.  Right?

24          MS. PODOLSKY:  Two retirement systems that invested,

25   yes, ma'am.

1          THE COURT:  Right.  Two retirement systems.  And you're

2    bringing a shareholder case.  Right?  Because you're claiming

3    that the officers who you've named as defendants, or the

4    officers who are defendants in the litigation, in the

5    Oklahoma -- I'm calling it the Oklahoma case.  Our first case is

6    the Rhode Island case.  There are too many states named in this

7    thing.

8          But it's a derivative class action case, or a

9    derivative shareholder case that you're trying to get to be part

10    of, and ultimately, if there is a judgment against Boeing for

11    misconduct, your clients may very well get some benefit from it.

12    Right?  Yes or no?

13          MS. PODOLSKY:  In the derivative case?

14          THE COURT:  Well, in the derivative case.  You're

15    looking for damages ultimately, aren't you?

16          MS. PODOLSKY:  But in a derivative case, the damages go

17    to the company.

18          THE COURT:  Yeah, I know.

19          MS. PODOLSKY:  Right.  So it's not -- it's different

20    from Mr. Reilly's case in that the damages don't go to the

21    shareholders.

22          And if I could back up for a moment and make sure I

23    have explained properly so that the Court understands.  The 220

24    action in the Delaware Court of Chancery is not a -- it's not a

25    merits derivative --

1          THE COURT:  It's for evidence.  You're trying to get

2     evidence.  I understand.  And your concern is that if you don't

3     get this additional evidence, then if a motion to dismiss is

4     filed in the Oklahoma case, and if that motion were granted,

5     that there might be some precedential effect of that decision.

6          MS. PODOLSKY:  That's correct.  There's a motion to

7     dismiss due on Monday that Boeing -- under the current schedule,

8     Boeing would file.  Boeing would -- presumably, my best guess,

9     Boeing would file the motion and challenge demand futility as a

10    threshold issue; in other words, that the shareholders -- it is

11    futile for the shareholders to make a demand on the Board, for

12    the Board to pursue the claim that the company has, because

13    there's a substantial likelihood of liability on behalf of the

14    majority of the Board so therefore the shareholders take over

15    the derivative claim.

16          And so the question is whether it's futile or not

17    futile to make that demand.  And there's an entire legal

18    analysis that goes to that question, and it is a threshold

19    question.

20          So I would expect Boeing to make a motion to dismiss

21    the plenary action on that ground, and an adverse -- and that

22    would be based on the current complaint, the one that's filed by

23    Scott & Scott in Oklahoma Fire.  An adverse decision there in

24    which the Court grants the motion to dismiss does potentially

25    have preclusive effect on anyone else who wants to bring a

1    plenary action at all.  Because the Court could essentially say

2    demand is futile, and since that's a threshold requirement, it

3    has possible -- there's a good possibility that it has

4    preclusive effect all around.

5         THE COURT:  But that's all hypothetical.

6         MS. PODOLSKY:  Not -- no, no.  No, no, it isn't.  It

7    isn't.  It is because it hasn't happened; it's not because it

8    has happened in other cases.  And there's a case that we cite

9    and that goes back and forth, California State Teachers that

10   involves Walmart.  It goes up and down and in and out of the

11   Eight Circuit and in and out of the Delaware Supreme Court, and

12   the ruling there is that the judgment on futility by a court has

13   preclusive effect everywhere else.

14        Now, I mean, are there arguments that go back and

15   forth?  Sure.  But the problem, as Chancellor Bouchard

16   identified in the first Delaware -- I mean, the first Boeing

17   case, excuse me, *Boeing 1*.  We've attached the transcript.  The

18   same thing happened there, the same set of circumstances and the

19   same scenario.

20        And just to point out that these cases are often

21   brought in Delaware because it is the premier court in dealing

22   with these sorts of actions.  That's where the derivative cases

23   usually are brought, and that is where a 220 action is brought.

24   And Chancellor Bouchard said, why would we impose the risk of

25   that happening?  Why take the risk?  I don't want to take the

1    risk, realizing full well that there is a very real risk.  And

2    he was citing -- he was going back to that Walmart case that I

3    was just discussing.

4         So there is a very real risk.  It's not hypothetical

5    and it's not speculative at all.  And the prejudice that comes

6    from the risk is substantial.  It's done.  The whole thing is

7    over.  And so if that's correct - and, of course, I say that it

8    is - then what you are measuring is a very real risk of

9    preclusive effect completely.  You're going up and down on a

10   complaint that's been filed -- and with no disrespect to

11   Oklahoma Fire or Scott & Scott at all, but that complaint is

12   based on an incomplete record, a record with 77 internal -- yes,

13   77 internal documents and a lot of public allegations.

14        What we're seeking to do is to obtain more internal

15   records that are key both to the allegations that this complaint

16   already has, that are key to the decision on futility, your

17   decision on futility, and that are key to any additional or

18   other legal claims or legal theories that could be developed.

19        So, for example, again, in the first Boeing case, the

20   chancellor stays the derivative action, the plenary action, in

21   order to allow the books and records process to complete, the

22   220 process, stating very clearly that there is a very real risk

23   of preclusive effect and it's better to have a complete and full

24   and robust record.

25        Several firms file a plenary action.  The court there

1    chooses, similar to how this court does it in a securities

2    action or an antitrust action or a consumer action, chooses the

3    best complaint, the best group to present that complaint.  The

4    defendant, Boeing, takes its shot at the very best complaint and

5    the very best set of facts that are available.

6           That's what we seek to do, is to make sure that the

7    very best set of facts and the very best complaint is brought to

8    a court and a motion to dismiss, which could have preclusive

9    effect.

10          THE COURT:  All right.  Now, let me ask you, what's the

11   normal timeframe that it takes for one of these 220 proceedings

12   to go forward?

13          MS. PODOLSKY:  So I'll answer in two or three pieces.

14   I will first tell you that in our case there is a deadline for

15   substantial production by Boeing on October 4th.  So we expect

16   to have substantial production by October 4th, and there is no

17   reason why -- no reason that I'm aware of why that wouldn't

18   occur.  So we would have substantial production of the

19   underlying books and records by October 4th.

20          There is an order that has set a November 26th trial of

21   the books and records, and we have attached at the back end of

22   our exhibits - I think it's J through whatever the last number

23   is - a series of orders from the courts that show, in the ones

24   that we're citing, 13 days, maybe 16 days, maybe 39 days for a

25   decision.  I'm absolutely positive there are some that are more

1    and I'm sure there are some that are less.  But to answer your

2    specific question, it is a very quick process, and the

3    referring, the assigning order from the chancellor recognizes

4    that it's an expedited process, and says that Delaware expects

5    to complete it within 90 days.

6          I will also tell you that here, we have a very good

7    relationship with Boeing.  We have been negotiating the two

8    letters that we sent them, the demand letters.  They have agreed

9    to produce a lot of documents.  So the substantial production

10   deadline applies to what they've already agreed to produce.  The

11   point of the November 26th trial or hearing would be to rule on

12   whatever delta is left over.  So we've asked for documents,

13   they've agreed to produce some; that negotiation will continue.

14   If on November 26th there is still a delta, that's what goes to

15   a hearing.

16          There is a good chance that there isn't a hearing.

17   Right?  We do have a good relationship with Boeing.  If we can

18   resolve it, which would be preferential for everybody, we would

19   do that.  If we could resolve it before November 26th, we would

20   do that, and I would let the Court know, obviously, right away

21   and we could proceed directly.  If we can't resolve it and we

22   have to go on November 26th, it is, I am very sure, a

23   whittled-down delta of documents, a much smaller set of

24   documents.

25          And as to the documents, what I would point out to the

13

1    Court is that what we're seeking really is critical to this

2    process, the process being a plenary derivative action.  What

3    we're seeking are the internal records that obviously have not

4    yet been produced, and they go to a couple of critical

5    categories in this complaint as well as to other legal theories.

6         And in *Boeing 1*, which we cite in our papers, the

7    decision on the motion to dismiss there which was on the grounds

8    of futility, where we started, that chancellor, Chancellor Zurn,

9    is citing the 220 documents in her decision about futility.  So

10   the 220 documents that we're seeking go to the strength of the

11   complaint and go to the strength of the allegations as to

12   futility, as well as the strength of the underlying allegations

13   as to misconduct or egregious conduct or whatever phrase you

14   want to use.

15        So therefore, what we're looking for -- and I can tell

16   you what we have.  Let me start with what we have that our

17   colleagues do not have, are Aerospace Safety Committee

18   materials.  So the complaint that Oklahoma Fire has filed

19   references the Aerospace Safety Committee and the minutes from

20   the committee in 2022, 2023, some -- a bit in 2024.  What we

21   have now are the underlying presentations, so we have the

22   internal documents that go to -- that are the level below the

23   actual minutes for that committee.

24        And it is that committee, the Aerospace Safety

25   Committee, that is in charge of implementing and monitoring the

1    safety systems within Boeing.  So that is -- and it's a board

2    level committee and it's extraordinarily important, because

3    whatever reaches the board -- because one question will be, what

4    did the board know and when did the board know it.  Whatever

5    reaches the board through a formal channel comes through this

6    committee.  And so we've asked for all of the materials that

7    underlie the minutes and that are relevant to the meetings, the

8    monthly meetings that the committee has.

9         We've also asked for the whistleblower complaints.

10   Now, the complaint that you have before you at present

11   references quite a few - I think maybe five or six -

12   whistleblowers, and their opposition brief references five or

13   six whistleblowers.  It might be the opposition and not

14   necessarily the complaint that actually names them.  But the key

15   point here, Your Honor, is that the allegations in the complaint

16   about what the whistleblowers have to say come from public

17   records, testimony before Congress, testimony before an expert

18   panel, interviews with a newspaper, interviews with a television

19   station.

20        What we're asking for are the actual complaints.

21   Because there is what there is in the public record, but there's

22   what's going on internal at Boeing.  Right?  So are these people

23   complaining within Boeing?  They say they are publicly, but are

24   they?  Are they complaining within Boeing?  Are they reporting

25   up to the system?  Is the safety committee hearing something

1  from them?  Are there informal channels or formal channels by

2  which these whistleblower complaints, other whistleblower

3  complaints, other employee safety concerns are being routed up

4  the levels of management and up to the board?

5       The complaint doesn't have that material.  We have

6  asked for that material and we expect to get it.  Boeing has

7  agreed to give us the complaints that are going up through

8  formal channels.  We haven't yet reached agreement - and

9  hopefully we will - on complaints, if there are complaints, that

10  go through informal channels.

11       And so those are critical because it goes to what -- it

12  goes to the two pieces -- the two bases, I would say, that can

13  be used to establish liability on behalf of the Board.  Right?

14  So the Board has a duty to implement a safety system,

15  particularly on something that is mission critical.

16       There's a case called *Marchand* that was about ice

17  cream.  There was no safety system on the safety of the ice

18  cream.  The Court held that that was a mission critical piece,

19  right, because it's all about the ice cream.  If you don't have

20  a food safety system implemented and people get listeria, that's

21  a very serious problem.

22       We have the same thing here.  Right?  This is about

23  plane safety.  If plane safety isn't mission critical to Boeing,

24  then I'm not entirely sure what is.  So there is the reporting

25  system, which is a formal reporting system.  And Boeing has

16

1   implemented a system, but whether it's working and whether it's

2   being properly implemented and whether it's being properly

3   overseen by the Board and by the Board level committee is

4   critical.

5        The red flags that come up through whistleblower

6   complaints or through other channels, employee concerns, and

7   there's a program at Boeing that I understand is called the

8   Speak Up program, that also funnels up, or it should be

9   funneling up.  Right?  So there are these two ways where the

10  safety committee and the Board are supposed to learn about

11  employee concerns about safety.  Those internal records are what

12  we are seeking.  They are not -- they have not yet been

13  produced, so this complaint does not have the benefit of those

14  records.

15       The 2024 Board materials that we're seeking -- I take

16  that back.  We're seeking 2024 Board minutes.  So Boeing does

17  not have, has not formalized, its minutes, the Board monthly

18  minutes, for at least March through the present and maybe

19  February through the present.  I can't honestly remember.

20  Right?  So the Board meets, there are minutes; at the next

21  monthly meeting, the minutes are approved, you have a formal set

22  of Board minutes.  Right?  That's the normal process.

23       For 2024, after this plane crash in January, there are

24  no formal approved Board minutes yet.  They're not there.  We've

25  asked for them, we should be getting them, but at present they

17

```
 1    are not there.

 2              And the reason that I'm bringing all of this to your

 3    attention is because all of this information, this internal

 4    information, is critical to being able to file a robust,

 5    completely factually based record on which you can make -- or

 6    whatever court it is makes a decision on a motion to dismiss.

 7    Because, as I said, it's a threshold issue.  It could have

 8    preclusive effect.  It could be the case where it goes up or

 9    down on one --

10              THE COURT:  But what if the Court were satisfied that

11    the complaints as currently written are sufficient?  Then there

12    is no injury or damage or problem other than what I see as

13    potentially huge inefficiencies in the discovery process for not

14    just this case but the other case as well.  Because I'm hearing

15    huge amounts of overlap, that the same information is going to

16    be relevant in both this case and the other case.

17              MS. PODOLSKY:  And I understand -- when I saw the

18    Court's order, I understood that to be the issue immediately.

19    And I understand that there's an efficiency concern from the

20    Court's perspective, and if we get that far down the road, there

21    should be or there ought to be - and certainly if I were

22    involved, there would be - ways to address the inefficiencies.

23    Right?  There's no question about that.

24              As a threshold matter, I would say that a potential

25    overlap in discovery is not a reason to deny the ability to go
```

1     out and get a complete factual record now.  And I don't think

2     that the Court can make a decision about this complaint yet.

3     And to the extent that the Court sees similar underlying

4     conduct, or misconduct, or however you want to phrase it, I

5     understand that.  But the legal analysis of Mr. Reilly's

6     complaint and the securities complaint, the 10(b), is an

7     entirely different animal from the analysis under a derivative

8     complaint.

9         So if the Court is looking at Mr. Reilly's complaint

10    and is seeing sufficiency, and is thinking that therefore this

11    complaint has to be sufficient also, I would just caution the

12    Court that the 10(b) case is about the false statements and

13    about pleading particularized facts under Rule 9(b) and its

14    progeny.  This case is about -- is different.  It's about demand

15    futility as a threshold issue.  So the motion to dismiss in this

16    case is not about whether the statements were false or not, it's

17    about the futility of the demand.  It's an entirely different

18    legal analysis, and takes into -- and, I mean, it has the

19    same -- there is the same -- not the same.  There is a

20    requirement for particularized facts, for sure.  But the legal

21    analysis is an entirely different animal, entirely different.

22        So, for example, the Court could probably not fairly

23    say, hypothetically:  I'm sustaining Mr. Reilly's complaint, or

24    part of Mr. Reilly's complaint, and therefore, Boeing, I don't

25    want to hear a motion to dismiss from you in the derivative

1    complaint on the 9th because I've now disposed of everything.

2    That's not true.  I don't mean to speak for Boeing, but I'm

3    quite sure Boeing would come up to you and say:  No, no, no,

4    there are grounds upon which we want to move in the derivative

5    case on Monday that really aren't touched by what you're doing

6    today on Mr. Reilly's complaint.

7         They aren't touched at all because the derivative case

8    is such an entirely different animal and the legal analysis is

9    so entirely different that there is a deferent body of law that

10   governs what happens in the derivative case and whether the

11   complaint in the plenary action is or is not sufficient.  It's

12   an entirely different body of law, and I've sadly spent quite a

13   few hours trying to parse through it.

14        So I understand the Court's concern, and I understand

15   the Court's -- I understand the efficiency point.  There's no

16   question about that.

17        THE COURT:  Let me ask you this.  Is there any

18   restriction -- if you obtain documents through this process in

19   Delaware, is it like FTC processes where sometimes the

20   information that's been obtained can't be shared?  In other

21   words, can Mr. Reilly, on behalf of his client, go and say:

22   Well, you've got these documents; we want them now?

23        MS. PODOLSKY:  No, it cannot be shared.

24        THE COURT:  That's what I thought.

25        MS. PODOLSKY:  The answer is, no, it cannot be shared.

```
 1              THE COURT:  That's what I thought.

 2              MS. PODOLSKY:  So again, it is -- I understand there's

 3    a nondisclosure agreement with respect to what Boeing is giving

 4    us now, but discovery might be different.

 5              You're asking about Mr. Reilly's case, though.  Right?

 6              THE COURT:  Yeah.

 7              MS. PODOLSKY:  So, no, I think there is a nondisclosure

 8    agreement that governs what Boeing is giving us now.  We cannot

 9    share it with Mr. Reilly at this moment.

10              And this is why I'm trying to -- what I'm trying to

11    drive home, is that these --

12              THE COURT:  You can't -- I'm sorry, you can't share

13    either with counsel for Oklahoma?

14              MS. PODOLSKY:  So that's an interesting question.

15    Right?  And the answer to that is no, and the reason is that by

16    filing the plenary action, Scott & Scott and Oklahoma Fire have

17    essentially said, we are satisfied --

18              THE COURT:  That we have enough evidence to go forward.

19              MS. PODOLSKY:  Correct.  And so that cuts off the 220

20    process for them.

21              THE COURT:  For them.

22              MS. PODOLSKY:  It doesn't cut it off for -- and there

23    are other groups out there.  Right?  It's not just us and

24    Scott & Scott.  There are other groups who made demands upon

25    Boeing also.
```

1           So that's why I'm saying there are two very different

2     animals.  The underlying facts, the conduct you may have

3     identified as being substantially similar -- and I'm not

4     quibbling with the fact that this is about the planes and safety

5     and safety concerns.  That's true.  But the paths to liability

6     are entirely different, entirely different, and the damages are

7     different and the parties are different.  Right?  Because it's

8     the company that's the damaged party in the derivative action

9     and it's the stockholders in Mr. Reilly's 10(b) case.

10          So I understand the overlap, and if it were me and I

11    were going forward with a plenary action, knowing the Court's

12    concern, I would do everything I can to work with Mr. Reilly and

13    his group if you were to sustain that complaint.  And I think

14    any lawyer with any sense would do that.  But I don't think

15    right now the Court can try to push the cases together or

16    consolidate them or try to make them run on the same track or

17    try to make them run together at the moment because of the very

18    strong differences.

19          The other point that I would make with respect to the

20    derivative process is, it's the reverse of what we have when I

21    mentioned earlier in the consumer cases, in the antitrust cases,

22    and the securities cases.  In those cases, file a complaint,

23    other groups come in, the Court decides who the lead plaintiff

24    is; that lead plaintiff goes forward with the complaint, the

25    defendant moves to dismiss.

22

1          In these cases it's a little bit different.  The 220

2    process under Delaware law, and as developed by the judges there

3    who have had decades and decades and decades of experience with

4    derivative cases, the process there is that anyone who is

5    interested goes into the 220 process in order to come forward

6    with the best possible complaint, and at that point anyone who

7    wants to file a plenary action files a plenary action.

8          So we haven't done that.  There has not been an

9    opportunity for that yet.  And if you're thinking that you're

10   going to deny the stay and there has to be -- then there has to

11   be an opportunity for other groups or possible plaintiffs to

12   challenge this complaint.  Otherwise, Oklahoma Fire has

13   leapfrogged the entire process, not only getting the best

14   records and best underlying documents of not filing necessarily

15   the best or the most robust complaint, but they've also

16   leapfrogged over any kind of leadership issue.  Because the

17   Court would have to decide leadership, so then --

18         THE COURT:  All right.  I'm going to jump for a minute.

19   Mr. Hatch, you're representing Boeing?

20         MR. HATCH:  Yes, Your Honor.

21         THE COURT:  Are you the main spokesperson?  Who is

22   going to do most of the talking?

23         MR. HATCH:  Mr. Pepperman, Your Honor.

24         MR. PEPPERMAN:  I am, Your Honor.

25         THE COURT:  Is there going to be an MDL request in

1    this?  I mean, how many cases are there floating out there,

2    either derivative cases or share -- or securities cases?

3            MR. PEPPERMAN:  So in terms of cases in federal court,

4    Your Honor, arising out of the Alaska Airlines accident back in

5    January, there's just the two before Your Honor.

6            There have been a large number of Section 220 demands

7    made by stockholders in pursuit of potential derivative claims,

8    many more than the parties that are before Your Honor.  And

9    there's the one Section 220 action pending in the Delaware Court

10   of Chancery.  But in terms of what is in federal court, in terms

11   of actions that were filed after the Alaska Airlines accident,

12   there are just the two before Your Honor.

13           THE COURT:  All right.  So it's just the one

14   shareholder case, the securities case, and the one derivative

15   case?

16           MR. PEPPERMAN:  Yes, Your Honor.  They're both brought

17   by stockholders.  There's the Section 10(b) case, which is a

18   class action seeking to recover for the decline in the price of

19   the stock, and then there's the derivative action which was

20   as -- was pointed out was actually a lawsuit brought by

21   stockholders on behalf of the company to recover for a breach of

22   fiduciary duty.

23           The only other thing, Your Honor, that I had a response

24   to your questions earlier, obviously on the issue before

25   Your Honor, the motion to intervene, the stay motion, Boeing,

1    the defendants, do not take any position.  We are prepared and

2    planning to make our motion to dismiss the existing derivative

3    complaint.  We are planning on filing that on Monday.

4        And the only other thing that I will say, in terms of

5    documents that are being produced pursuant to the Section 220

6    process, we are also providing copies of those documents to

7    Oklahoma even though it has filed its complaint.  So when

8    documents get produced to other stockholders as part of the

9    Section 220 process, we're providing the same documents to

10   Oklahoma.

11       THE COURT:  All right.  Thank you.

12       MS. PODOLSKY:  So I would -- thank you very much.

13       I would take that and say, there are other 220 demands

14   out there, there are other -- and Boeing wants to file on

15   Monday, just as I said.  So I don't -- all we're asking for is a

16   short period of time, 30 days or 60 days.  We're not asking for

17   anything more than that.  And I'm more than happy to come in and

18   give you reports as we go along, and if you want to cut it off,

19   you want to cut it off.

20       But between now and Monday, there are other complaints

21   that people might want to file.  So if you're intending to deny

22   the stay, I think you have to give everyone who is out there,

23   including us, an opportunity to file in this court.  So we need

24   an opportunity -- we would need an opportunity and everyone else

25   would need an opportunity.  So that would push the Boeing motion

1    to dismiss off until you've gone through the -- you have to

2    go -- you don't have to do anything.

3         THE COURT:  I'm not doing anything in September but

4    Google.  Okay?

5         MS. PODOLSKY:  Understood.  Understood.  So if you give

6    us through September, if you give us past the substantial

7    production deadline and we come back in and we report to you and

8    then you say, okay, fine, everybody -- either I'm satisfied or

9    I'm not, or everybody has to --

10        THE COURT:  Okay.  So as I understand it, Ms. Podolsky,

11   if I grant your motion and I stay the Oklahoma case for, say,

12   30 days, my understanding is, during that timeframe, Oklahoma is

13   getting access to any of the documents that are being produced

14   by Boeing in the Delaware proceeding, which would enable

15   Oklahoma possibly to file an amended complaint with the benefit

16   of that additional information.  Am I correct that you would be

17   able to do that?

18        MR. HUFFMAN:  Yes, Your Honor.  We believe our claims

19   are strong as pled, we believe the key documents are the Board

20   minutes.  We have 49 sets of them.  If we ever needed to

21   replead, though, Your Honor, we would have the benefits of the

22   exact same documents that my colleagues have talked about.

23        THE COURT:  Okay.  All right.

24        MS. PODOLSKY:  So then that makes my case even

25   stronger.  Right?  Give everybody a chance.

1          THE COURT:  Here's what we're going to do.  I am going

2     to grant the motion to intervene, I'm going to stay the Oklahoma

3     case for 30 days.  All right?  Among other things, frankly, as I

4     said, I wouldn't be able to give any attention to whatever gets

5     filed in September anyway.  So as a practical matter -- we move

6     quickly here.  We'll see what happens, what happens.  All right?

7          So that's the answer.  I want a report 30 days from

8     today as to how things are going in terms of the production.

9     And I think that's all I really need.  I don't see any huge

10    disadvantage to Oklahoma in this respect.  The only issue may be

11    ultimately which law firm and which case perhaps becomes the

12    lead case.  That really doesn't address the merits, and so I'm

13    not concerned about that.  All right?

14         MS. PODOLSKY:  A written report in 30 days, and do you

15    want to see us again or will you make your decision at that

16    time?

17         THE COURT:  I think just let me get a written report

18    first, and I'll see whether it's necessary to have you-all come

19    back in for any kind of a hearing.  All right?

20         MS. PODOLSKY:  Yes, ma'am.  We will take responsibility

21    to file it, and if anyone else wants to chime in, they can do

22    that as well.

23         THE COURT:  All right.  Do you folks want to say

24    anything?

25         MR. HUFFMAN:  Question, Your Honor.  Will the stay that

1  you just mentioned affect the motion to dismiss that's due on

2  Monday?

3          THE COURT:  Yeah, there's no sense in filing it.  I've

4  saved you some time and money.  Frankly, you don't want to file

5  it.  It lets the other side know exactly where you see their

6  weaknesses are, because the additional information may or may

7  not lead them to want to do an amendment.  All right?

8          MR. PEPPERMAN:  Correct, Your Honor.  We'll stand down

9  for 30 days.

10          THE COURT:  That's fine.  All right.

11          So this case, then, this issue is resolved.

12          MS. PODOLSKY:  Thank you, ma'am.

13          THE COURT:  So we'll allow a switch of positions.

14          MR. WILLIAMS:  Your Honor, if I may.  Charles Williams.

15  I am the Virginia counsel for Oklahoma.  I did not appear

16  earlier because of the confusion with all the people.  I just

17  wanted to note that.

18          THE COURT:  You're on the record.  Thank you, sir.

19          MR. WILLIAMS:  Thank you.

20          THE COURT:  All right.  So now this is the securities

21  case and this is a motion to dismiss.  I've had a chance to look

22  at the complaint, the very long complaint, and I've had a chance

23  to consider the arguments of counsel.  And I recognize that

24  there are heightened pleading requirements under both Rule 9(b)

25  and the PSLRA for these types of cases, but this is a case where

1    there's an extensive amount of detail that I think adequately

2    hits all the necessary requirements to let the case go forward.

3         And so I'm going to deny the motion to dismiss.  It's

4    that simple.  The complaint speaks for itself.  It records and

5    relates tons of information that supports the claim at this

6    point that there has been material misstatements made to the

7    investing public, that there is definitely a sufficient nexus

8    with the damages, and that it's a strong inference of scienter

9    here.

10        I think it's a real problem for Boeing.  It's a shame,

11   because Boeing was a corporation that had such an outstanding

12   reputation.  I note that Boeing has resolved some of these

13   disputes in the past, and I can see why there would be a huge

14   advantage to try to sit down and work this case out as early as

15   possible.  But if that doesn't happen, we will proceed with

16   litigation.

17        I was concerned about how many other cases, especially

18   securities cases, were around, but the SEC also has an action,

19   does it not?  Or is at least conducting an investigation at this

20   point?

21        MR. JOHNSON:  Chad Johnson on behalf of the lead

22   plaintiffs.

23        The SEC has announced that they are conducting an

24   investigation.  We'll see if they bring a case.  Frankly,

25   Your Honor, whether they do or whether they don't doesn't need

 1    to impact this private litigation.

 2            THE COURT:  Oh, I understand.

 3            MR. JOHNSON:  But yes, that's the answer to your

 4    question.

 5            THE COURT:  But it does sometimes make it more

 6    complicated for settlement purposes.  Because I've had cases

 7    where the SEC wants its portion, and that makes it more

 8    difficult in some respects to get the other side satisfied, so

 9    that becomes an issue down the road.

10            Do you have any sense of the timing as to when the SEC

11    may make a decision?

12            MR. JOHNSON:  No.  They have made no comment about that

13    and we have no further insight, other than what's generally

14    available.

15            THE COURT:  All right.  Yes, sir?

16            MR. PEPPERMAN:  Your Honor, just in terms of the

17    landscape, because the Court raised the question of other

18    securities actions.  There is an overlapping securities class

19    action pending in the Northern District of Illinois.  This was a

20    securities class action that was brought in the aftermaths of

21    the two 737 MAX accidents in 2017 and 2018.

22            The classes in the two cases overlap by about

23    six weeks.  The class period in the other class action ends on

24    December 12th, 2019, and the class period in this action begins

25    on September 30th, 2019.  So you have what's effectively the six

1    weeks between them with overlap.

2            The action pending in Illinois, there was motion

3    practice on a motion to dismiss.  You know, we cited multiple

4    places in our briefs Judge Tharp's ruling on the initial motion

5    to dismiss which substantially reduced the size of the action

6    but allowed part of it to go forward.

7            About a year into fact discovery, the plaintiffs in

8    that action made a motion for leave to amend their complaint and

9    we made a motion to dismiss their amended complaint, and that

10   motion has now been pending by about nine months.  But because a

11   second motion to dismiss was filed, the PSLRA stay of discovery

12   kicked in.  That's been delayed a bit because the judge who had

13   that action in the Northern District of Illinois,

14   Judge Maldonado, went up to the Seventh Circuit during the

15   pendency of the motion and the case has been reassigned.

16           And then there also are pending in Illinois, one in

17   federal court that we cited the decision to Your Honor and

18   several in state courts, individual stockholder actions; again,

19   actions that were filed in the aftermath of the 2017 and 2018

20   737 MAX accidents, not the Alaska Airlines accidents.

21           The securities action, as my colleague said, the SEC

22   hasn't announced an investigation.  There can be no prediction

23   on timing on that.

24           You know, Your Honor came on the bench, it appears,

25   with her mind made up, and I understand that and I respect that.

1    I mean, if I could have just two minutes on the interest of

2    scienter, I would like to raise a couple of points with

3    Your Honor.  But I also don't want to overstay my welcome at the

4    lectern.

5          THE COURT:  That's all right.

6          MR. HATCH:  So, Your Honor, look, I acknowledge the

7    complaint is very long and very detailed.  You know, from our

8    perspective, part of the flaws of the complaint is its length.

9    You know, we said in our papers that the plaintiffs challenge 75

10   different statements, and we did that by counting up the

11   subheadings in their brief.  I think the actual number of

12   statements that they challenge is probably over 200.  We

13   excerpted them in Appendix A to our brief, and you can see, they

14   go on for 70 pages.  You can only imagine what the verdict form

15   would look like in a trial before Your Honor if the jury were

16   asked to rule on all 70 of those case.

17         But, Your Honor, the thing from our perspective that

18   cuts through all of this and that may have gotten lost based on

19   the size of the complaint and the parties' briefing is the issue

20   of scienter.  And as I understand it, Your Honor, the

21   plaintiffs' principal arguments from scienter are based on the

22   positions of the individual defendants and the reporting

23   structure that was implemented after the 2019 accident; the

24   receipt of safety reports, with no allegations about the details

25   of what those reports claimed; the overall importance of safety

1    to an airline manufacturer such as Boeing; and the fact of the

2    allegations attributed to whistleblowers and former employees.

3         And I submit, Your Honor, under settled Fourth Circuit

4    case law, those allegations are insufficient.  In the *Yates*

5    case, the Fourth Circuit held that to plead scienter, you need

6    particularized allegations establishing the defendant's, quote,

7    "actual knowledge," closed quote, of contradictory information.

8    And general allegations about reporting structures or general

9    allegations about safety reports, without any allegations as to

10   the content of those safety reports, are insufficient.

11        THE COURT:  But counsel, you know it's a standard jury

12   instruction that in order to know what a person -- prove what a

13   person knew or intended, we can't look into their minds.

14   Circumstantial evidence is certainly normal, and that's what's

15   done to establish scienter.  And scienter can be proven by, as I

16   said, circumstantial evidence, and the quantum of circumstantial

17   evidence is important in many respects.

18        I think that's probably why the complaint is written as

19   it is, with so much in it.  I mean, you know, I certainly agree

20   with you, it's a long complaint, and I don't like terribly long

21   complaints.  But I suspect and I'm satisfied that it was done

22   that way because, again, safety is so critical to Boeing.  There

23   can't be many industries - maybe pharmaceuticals would be the

24   other ones - where the safety of the product is the paramount,

25   the single most important thing.  It is critical that airplanes

1    and aircraft be safe, and that every reasonable measure be taken

2    to make sure that they are safe.  And especially after Boeing is

3    on notice from those two awful incidents where the planes

4    crashed, that they thereafter are not taking the most scrupulous

5    efforts to ensure that that never happens again, and then it

6    happens again.

7         I mean, I'm satisfied there's enough there at this

8    point -- again, it still is the pleading stage.  And as rigid as

9    9(b) and PSLRA are, they don't require proof of the case in the

10   filing of the complaint.  It just has to be enough evidence to

11   satisfy the judicial officer reviewing it that there's a genuine

12   case; this is not just a fishing expedition, there's real

13   evidence that suggests liability, enough to let the case go

14   forward and, you know, get into the morass of discovery and the

15   expense of discovery.

16        Again, Boeing has settled this type of litigation

17   before.  It might be very wise to try to sit down -- Judge Vaala

18   is our magistrate judge, or with a private mediator or a special

19   master, if you wanted somebody like that appointed by the Court,

20   to try to get this resolved.

21        But I am satisfied that dismissing this complaint would

22   not be appropriate, so I am denying your motion.

23        MR. PEPPERMAN:  Okay.  Thank you, Your Honor.

24        THE COURT:  Yes, sir, did you have anything?  You won.

25   You better be careful.

1    MR. JOHNSON:  Absolutely, Your Honor.  Not to revisit

2    that at all, but I wonder if it would be helpful to address

3    efficiency.  Because there certainly was a lot of talk of that

4    with regard to the derivative cases, which I know Your Honor

5    stayed, and if you're --

6    THE COURT:  I don't need to hear that.  I'm allowing

7    the complaint to go forward.  Now, that means we want to get

8    things started.  Can the defense file their answer within

9    14 days?  I can give you a bit more time, because, again, I'm

10   not going to be doing anything with it in the month of

11   September.

12   MR. PEPPERMAN:  Your Honor, normally I would

13   reflexively say yes to that.  The complaint, however, is

14   over 300 pages.  It's a lengthy complaint.  If the defendants

15   could have 28 days for their answer, it would be greatly

16   appreciated.

17   THE COURT:  That's fine.  I assume there's no objection

18   to that?

19   MR. JOHNSON:  No.

20   THE COURT:  All right.  So answer due within 28 days.

21   I will even be generous and hold off issuing the scheduling

22   order until we get your answer.  Normally I would issue

23   it today.  So you just picked up an extra few weeks for

24   discovery.

25   All right.  I believe that takes care of everything

1  that was on the docket for this case.  We'll recess court until

2  2:00 o'clock.

3         (Off the record at 11:29 a.m.)

4

5

6

7

8

9

10

11

12         **CERTIFICATE OF OFFICIAL COURT REPORTER**

13

14         **I, Rebecca Stonestreet, certify that the foregoing is a**

15  **correct transcript from the record of proceedings in the**

16  **above-entitled matter.**

17

18

19

20  **___//Rebecca Stonestreet//___         __9/9/24_____**

21  **SIGNATURE OF COURT REPORTER                    DATE**

22

23

24

25

## /

**//Rebecca** [1] - 35:20

## 1

**1** [3] - 3:15, 9:17, 13:6
**10(b** [4] - 18:6, 18:12, 21:9, 23:17
**10004** [1] - 3:6
**10005** [1] - 2:23
**10022** [1] - 2:4
**101** [1] - 3:2
**10170** [1] - 2:17
**104** [1] - 2:7
**10:40** [1] - 1:11
**1100** [1] - 2:19
**11:29** [1] - 35:3
**125** [1] - 3:5
**12th** [1] - 29:24
**13** [1] - 11:24
**1301** [1] - 2:3
**14** [1] - 34:9
**140** [1] - 2:23
**151** [1] - 5:4
**16** [1] - 11:24
**1700** [1] - 3:9
**1800** [1] - 1:24
**1832** [1] - 2:16
**19810** [1] - 2:8
**1:24-CV-00151** [1] - 2:14
**1:24-cv-1200** [2] - 1:4, 4:2
**1:24-CV-1200** [1] - 1:16
**1:24-cv-151** [2] - 1:9, 4:4

## 2

**200** [1] - 31:12
**20005-3965** [1] - 2:20
**20006** [1] - 3:10
**2017** [2] - 29:21, 30:19
**2018** [2] - 29:21, 30:19
**2019** [3] - 29:24, 29:25, 31:23
**202-956-6982** [1] - 3:10
**2022** [1] - 13:20
**2023** [1] - 13:20
**2024** [5] - 1:10, 13:20, 16:15, 16:16, 16:23
**209** [1] - 2:10
**212-432-5100** [1] - 2:17
**212-558-4000** [1] - 3:7
**212-789-1340** [1] - 2:4
**212-907-0700** [1] - 2:24

## 220

**220** [16] - 6:7, 6:9, 7:23, 9:23, 10:22, 11:11, 13:9, 13:10, 20:19, 22:1, 22:5, 23:6, 23:9, 24:5, 24:9, 24:13
**22314** [3] - 1:25, 2:11, 3:13
**23230** [1] - 1:21
**23510** [1] - 3:3
**240** [1] - 3:14
**26th** [5] - 11:20, 12:11, 12:14, 12:19, 12:22
**2740** [1] - 3:6
**28** [2] - 34:15, 34:20
**2:00** [1] - 35:2

## 3

**30** [6] - 24:16, 25:12, 26:3, 26:7, 26:14, 27:9
**300** [2] - 2:3, 34:14
**302-499-2122** [1] - 2:8
**30th** [1] - 29:25
**3300** [1] - 1:17
**3411** [1] - 2:6
**39** [1] - 11:24

## 4

**401** [1] - 3:13
**420** [1] - 2:16
**426-7767** [1] - 3:14
**4801** [1] - 1:20
**49** [1] - 25:20
**4th** [3] - 11:15, 11:16, 11:19

## 5

**500** [1] - 2:20
**501** [1] - 2:11
**571-366-1702** [1] - 1:25

## 6

**6** [1] - 1:10
**60** [1] - 24:16
**600** [2] - 1:16, 1:24
**619-233-4565** [1] - 1:18

## 7

**70** [2] - 31:14, 31:16
**700** [1] - 3:9
**703-549-5354** [1] - 2:12
**737** [2] - 29:21, 30:20
**75** [1] - 31:9

## 757

**757-640-3947** [1] - 3:3
**77** [2] - 10:12, 10:13

## 8

**804-447-0307** [1] - 1:21

## 9

**9(b** [3] - 18:13, 27:24, 33:9
**9/9/24** [1] - 35:20
**90** [1] - 12:5
**9000** [1] - 3:2
**92101** [1] - 1:17
**9th** [2] - 3:12, 19:1

## A

**a.m** [2] - 1:11, 35:3
**ability** [1] - 17:25
**able** [4] - 6:7, 17:4, 25:17, 26:4
**above-entitled** [1] - 35:16
**absolutely** [2] - 11:25, 34:1
**access** [1] - 25:13
**accident** [3] - 23:4, 23:11, 31:23
**accidents** [1] - 29:21, 30:20
**acknowledge** [1] - 31:6
**Action** [1] - 4:2
**action** [31] - 7:8, 7:24, 8:21, 9:1, 9:23, 10:20, 10:25, 11:2, 13:2, 19:11, 20:16, 21:8, 21:11, 22:7, 23:9, 23:18, 23:19, 28:18, 29:19, 29:20, 29:23, 29:24, 30:2, 30:5, 30:8, 30:13, 30:21
**actions** [5] - 9:22, 23:11, 29:18, 30:18, 30:19
**actual** [4] - 13:23, 14:20, 31:11, 32:7
**additional** [4] - 8:3, 10:17, 25:16, 27:6
**address** [4] - 5:8, 17:22, 26:12, 34:2
**adequately** [1] - 28:1
**advantage** [1] - 28:14
**adverse** [2] - 8:21, 8:23
**Aerospace** [3] - 13:17, 13:19, 13:24
**affect** [1] - 27:1

## A (cont.)

**aftermath** [1] - 30:19
**aftermaths** [1] - 29:20
**agree** [1] - 32:19
**agreed** [4] - 12:8, 12:10, 12:13, 15:7
**agreement** [3] - 15:8, 20:3, 20:8
**aircraft** [1] - 33:1
**airline** [1] - 32:1
**Airlines** [2] - 23:4, 23:11, 30:20
**airplanes** [1] - 32:25
**al** [2] - 1:6, 4:4
**Alaska** [3] - 23:4, 23:11, 30:20
**Alexandria** [4] - 1:2, 1:25, 2:11, 3:13
**allegations** [12] - 10:13, 10:15, 13:11, 13:12, 14:15, 31:24, 32:2, 32:4, 32:6, 32:8, 32:9
**allow** [2] - 10:21, 27:13
**allowed** [1] - 30:6
**allowing** [1] - 34:6
**amend** [1] - 30:8
**amended** [2] - 25:15, 30:9
**amendment** [1] - 27:7
**amount** [1] - 28:1
**amounts** [1] - 17:15
**analysis** [6] - 8:18, 18:5, 18:7, 18:18, 18:21, 19:8
**AND** [3] - 1:4, 1:24, 2:3
**animal** [3] - 18:7, 18:21, 19:8
**animals** [1] - 21:2
**announced** [2] - 28:23, 30:22
**answer** [10] - 11:13, 12:1, 19:25, 20:15, 26:7, 29:3, 34:8, 34:15, 34:20, 34:22
**antitrust** [2] - 11:2, 21:21
**anyway** [1] - 26:5
**appear** [1] - 27:15
**appearance** [1] - 4:11
**APPEARANCES** [1] - 1:14
**Appendix** [1] - 31:13
**applies** [1] - 12:10
**appointed** [1] - 33:19
**appreciated** [1] - 34:16
**appropriate** [1] - 33:22

## A (cont.)

**approved** [2] - 16:21, 16:24
**arguments** [3] - 9:14, 27:23, 31:21
**arising** [1] - 23:4
**assigning** [1] - 4:13
**assisting** [1] - 4:15
**assume** [1] - 34:17
**attached** [2] - 9:17, 11:21
**attention** [2] - 17:3, 26:4
**attributed** [1] - 32:2
**AULD** [1] - 2:2
**AULT** [1] - 2:6
**available** [2] - 11:5, 29:14
**Avenue** [5] - 1:20, 2:3, 2:16, 2:19, 3:9
**aware** [1] - 11:17
**awful** [1] - 33:3

## B

**based** [5] - 8:22, 10:12, 17:5, 31:18, 31:21
**bases** [1] - 15:12
**Baynard** [1] - 2:7
**become** [2] - 6:21, 6:22
**becomes** [2] - 26:11, 29:9
**BEFORE** [1] - 1:13
**begins** [1] - 29:24
**BEHALF** [1] - 2:11
**behalf** [7] - 5:1, 5:18, 8:13, 15:13, 19:21, 23:21, 28:21
**below** [1] - 13:22
**Ben** [1] - 5:17
**bench** [1] - 30:24
**benefit** [3] - 7:11, 16:13, 25:15
**benefits** [1] - 25:21
**BENJAMIN** [1] - 3:1
**best** [11] - 8:8, 11:3, 11:4, 11:5, 11:7, 22:6, 22:13, 22:14, 22:15
**better** [2] - 10:23, 33:25
**between** [2] - 24:20, 30:1
**bit** [4] - 13:20, 22:1, 30:12, 34:9
**BLEICHMAN** [1] - 2:2
**Bleichman** [2] - 4:14
**BLEICHMAR** [2] - 2:2, 2:6

**Board** [15] - 8:11, 8:12, 8:14, 15:13, 15:14, 16:3, 16:10, 16:15, 16:16, 16:17, 16:20, 16:22, 16:24, 25:19
**board** [6] - 14:1, 14:3, 14:4, 14:5, 15:4
**body** [2] - 19:9, 19:12
**Boeing** [44] - 4:4, 4:23, 6:23, 7:10, 8:7, 8:8, 8:9, 8:20, 9:16, 9:17, 10:19, 11:4, 11:15, 12:7, 12:17, 13:6, 14:1, 14:22, 14:23, 14:24, 15:6, 15:23, 15:25, 16:7, 16:16, 18:24, 19:2, 19:3, 20:3, 20:8, 20:25, 22:19, 23:25, 24:14, 24:25, 25:14, 28:10, 28:11, 28:12, 32:1, 32:22, 33:2, 33:16
**BOEING** [1] - 1:9
**books** [3] - 10:21, 11:19, 11:21
**Bouchard** [2] - 9:15, 9:24
**box** [1] - 5:14
**breach** [1] - 23:21
**Brent** [1] - 5:7
**BRENT** [1] - 2:14
**brief** [3] - 14:12, 31:11, 31:13
**briefing** [1] - 31:19
**briefs** [1] - 30:4
**bring** [2] - 8:25, 28:24
**bringing** [2] - 7:2, 17:2
**BRINKEMA** [1] - 1:13
**Broad** [1] - 3:5
**Broadway** [2] - 1:16, 2:23
**brought** [7] - 9:21, 9:23, 11:7, 23:16, 23:20, 29:20
**Building** [1] - 2:7

## C

**CA** [1] - 1:17
**Calhoun** [1] - 4:4
**CALHOUN** [1] - 1:6
**California** [1] - 9:9
**cannot** [3] - 19:23, 19:25, 20:8
**care** [1] - 34:25
**careful** [1] - 33:25
**CARL** [1] - 3:4
**Carol** [1] - 5:12

**CAROL** [1] - 2:22
**Case** [2] - 1:3, 1:9
**case** [58] - 4:17, 4:24, 5:4, 5:14, 6:21, 7:2, 7:5, 7:6, 7:8, 7:9, 7:13, 7:14, 7:16, 7:20, 8:4, 9:8, 9:17, 10:2, 10:19, 11:14, 15:16, 17:8, 17:14, 17:16, 18:12, 18:14, 18:16, 19:5, 19:7, 19:10, 20:5, 21:9, 23:14, 23:15, 23:17, 25:11, 25:24, 26:3, 26:11, 26:12, 27:11, 27:21, 27:25, 28:2, 28:14, 28:24, 30:15, 31:16, 32:4, 32:5, 33:9, 33:12, 33:13, 35:1
**CASE** [2] - 1:16, 2:14
**cases** [21] - 4:9, 9:8, 9:20, 9:22, 21:15, 21:21, 21:22, 22:1, 22:4, 23:1, 23:2, 23:3, 27:25, 28:17, 28:18, 29:6, 29:22, 34:4
**categories** [1] - 13:5
**caution** [1] - 18:11
**CECILLIA** [1] - 2:22
**certainly** [4] - 17:21, 32:14, 32:19, 34:3
**CERTIFICATE** [1] - 35:12
**certify** [1] - 35:14
**CHAD** [1] - 2:14
**Chad** [2] - 5:6, 28:21
**challenge** [4] - 8:9, 22:12, 31:9, 31:12
**chance** [4] - 12:16, 25:25, 27:21, 27:22
**chancellor** [3] - 10:20, 12:3, 13:8
**Chancellor** [3] - 9:15, 9:24, 13:8
**Chancery** [3] - 6:7, 7:24, 23:10
**channel** [1] - 14:5
**channels** [5] - 15:1, 15:8, 15:10, 16:6
**charge** [1] - 13:25
**CHARLES** [1] - 1:19
**Charles** [1] - 27:14
**chime** [1] - 26:21
**chooses** [2] - 11:1, 11:2
**CHRISTOPHER** [1] - 2:14
**Circuit** [4] - 9:11,

30:14, 32:3, 32:5
**circumstances** [1] - 9:18
**circumstantial** [3] - 32:14, 32:16
**cite** [2] - 9:8, 13:6
**cited** [2] - 30:3, 30:17
**citing** [3] - 10:2, 11:24, 13:9
**Civil** [2] - 1:3, 1:9
**civil** [1] - 4:2
**claim** [3] - 8:12, 8:15, 28:5
**claimed** [1] - 31:25
**claiming** [1] - 7:2
**claims** [2] - 10:18, 23:7, 25:18
**class** [8] - 5:5, 7:8, 23:18, 29:18, 29:20, 29:23, 29:24
**classes** [1] - 29:22
**clearly** [1] - 10:22
**CLERK** [2] - 4:2, 4:10
**client** [1] - 19:21
**clients** [1] - 7:11
**closed** [1] - 32:7
**co** [1] - 5:11
**co-liaison** [1] - 5:11
**COHEN** [1] - 2:19
**colleague** [1] - 30:21
**colleagues** [2] - 13:17, 25:22
**comment** [1] - 29:12
**Committee** [3] - 13:17, 13:19, 13:25
**committee** [9] - 13:20, 13:23, 13:24, 14:2, 14:6, 14:8, 14:25, 16:3, 16:10
**COMPANY** [1] - 1:9
**company** [4] - 7:17, 8:12, 21:8, 23:21
**Company** [1] - 4:4
**complaining** [2] - 14:23, 14:24
**complaint** [51] - 8:22, 10:10, 10:11, 10:15, 11:3, 11:4, 11:7, 13:5, 13:11, 13:18, 14:10, 14:14, 14:15, 15:5, 16:13, 18:2, 18:6, 18:8, 18:9, 18:11, 18:23, 18:24, 19:1, 19:6, 19:11, 21:13, 21:22, 21:24, 22:6, 22:12, 22:15, 24:3, 24:7, 25:15, 27:22, 28:4, 30:8, 30:9, 31:7, 31:8, 31:19, 32:18, 32:20,

33:10, 33:21, 34:7, 34:13, 34:14
**complaints** [11] - 14:9, 14:20, 15:2, 15:3, 15:7, 15:9, 16:6, 17:11, 24:20, 32:21
**complete** [4] - 10:21, 10:23, 12:5, 18:1
**completely** [2] - 10:9, 17:5
**complicated** [1] - 29:6
**compliment** [1] - 5:24
**COMPUTERIZED** [1] - 3:17
**concern** [4] - 8:2, 17:19, 19:14, 21:12
**concerned** [2] - 26:13, 28:17
**concerns** [4] - 15:3, 16:6, 16:11, 21:5
**conduct** [3] - 13:13, 18:4, 21:2
**conducting** [2] - 28:19, 28:23
**confusion** [1] - 27:16
**Congress** [1] - 14:17
**consider** [1] - 27:23
**consolidate** [1] - 21:16
**consumer** [2] - 11:2, 21:21
**content** [1] - 32:10
**continue** [3] - 6:7, 6:9, 12:13
**contradictory** [1] - 32:7
**copies** [1] - 24:6
**corporation** [1] - 28:11
**correct** [8] - 6:6, 6:10, 8:6, 10:7, 20:19, 25:16, 27:8, 35:15
**counsel** [9] - 4:10, 5:4, 5:5, 5:11, 5:12, 20:13, 27:15, 27:23, 32:11
**counting** [1] - 31:10
**couple** [3] - 5:13, 13:4, 31:2
**course** [1] - 10:7
**Court** [22] - 3:12, 5:8, 7:23, 7:24, 8:24, 9:1, 9:11, 12:20, 13:1, 15:18, 17:10, 18:2, 18:3, 18:9, 18:12, 18:22, 21:15, 21:23, 22:17, 23:9, 29:17, 33:19
**COURT** [56] - 1:1, 3:12, 4:6, 4:17, 4:21,

4:23, 5:2, 5:9, 5:13, 5:22, 5:25, 6:11, 6:14, 6:16, 6:19, 7:1, 7:14, 7:18, 8:1, 9:5, 11:10, 17:10, 19:17, 19:24, 20:1, 20:6, 20:12, 20:18, 20:21, 22:18, 22:21, 22:25, 23:13, 24:11, 25:3, 25:10, 25:23, 26:1, 26:17, 26:23, 27:3, 27:10, 27:13, 27:18, 27:20, 29:2, 29:5, 29:15, 31:5, 32:11, 33:24, 34:6, 34:17, 34:20, 35:12, 35:21
**court** [11] - 9:12, 9:21, 10:25, 11:1, 11:8, 17:6, 23:3, 23:10, 24:23, 30:17, 35:1
**Court's** [6] - 5:7, 17:18, 17:20, 19:14, 19:15, 21:11
**Courthouse** [1] - 3:13
**COURTROOM** [2] - 4:2, 4:10
**courts** [2] - 11:23, 30:18
**Craig** [1] - 5:4
**CRAIG** [2] - 2:9, 2:10
**CRANDALL** [1] - 2:9
**crash** [1] - 16:23
**crashed** [1] - 33:4
**cream** [3] - 15:17, 15:18, 15:19
**critical** [10] - 13:1, 13:4, 15:11, 15:15, 15:18, 15:23, 16:4, 17:4, 32:22, 32:25
**Cromwell** [1] - 5:20
**CROMWELL** [2] - 3:5, 3:8
**CRR** [1] - 3:12
**current** [2] - 8:7, 8:22
**cut** [3] - 20:22, 24:18, 24:19
**cuts** [2] - 20:19, 31:18

## D

**damage** [1] - 17:12
**damaged** [1] - 21:8
**damages** [5] - 7:15, 7:16, 7:20, 21:6, 28:8
**DATE** [1] - 35:21
**DAVID** [1] - 1:6
**days** [14] - 11:24, 12:5, 24:16, 25:12, 26:3, 26:7, 26:14, 27:9, 34:9, 34:15,

34:20
**DC** [2] - 2:20, 3:10
**DE** [1] - 2:8
**deadline** [3] - 11:14, 12:10, 25:7
**dealing** [1] - 9:21
**decades** [3] - 22:3
**December** [1] - 29:24
**decide** [1] - 22:17
**decides** [1] - 21:23
**decision** [12] - 8:5, 8:23, 10:16, 10:17, 11:25, 13:7, 13:9, 17:6, 18:2, 26:15, 29:11, 30:17
**decline** [1] - 23:18
**defeats** [1] - 6:5
**defendant** [2] - 11:4, 21:25
**defendant's** [1] - 32:6
**Defendants** [1] - 1:7
**defendants** [7] - 5:18, 5:21, 7:3, 7:4, 24:1, 31:22, 34:14
**DEFENDANTS** [1] - 3:1
**defense** [1] - 34:8
**deferent** [1] - 19:9
**definitely** [1] - 28:7
**deflects** [1] - 6:5
**Delaware** [10] - 6:7, 7:24, 9:11, 9:16, 9:21, 12:4, 19:19, 22:2, 23:9, 25:14
**delayed** [1] - 30:12
**delta** [3] - 12:12, 12:14, 12:23
**demand** [7] - 8:9, 8:11, 8:17, 9:2, 12:8, 18:14, 18:17
**demands** [3] - 20:24, 23:6, 24:13
**deny** [4] - 17:25, 22:10, 24:21, 28:3
**denying** [1] - 33:22
**derivative** [24] - 7:8, 7:9, 7:13, 7:14, 7:16, 7:25, 8:15, 9:22, 10:20, 13:2, 18:7, 18:25, 19:4, 19:7, 19:10, 21:8, 21:20, 22:4, 23:2, 23:7, 23:14, 23:19, 24:2, 34:4
**DERRICK** [1] - 2:5
**Derrick** [1] - 4:14
**detail** [1] - 28:1
**detailed** [1] - 31:7
**details** [1] - 31:24
**developed** [2] - 10:18,

22:2
**Diagnal** [1] - 1:24
**Diego** [1] - 1:17
**differences** [1] - 21:18
**different** [17] - 7:19, 18:7, 18:14, 18:17, 18:21, 19:8, 19:9, 19:12, 20:4, 21:1, 21:6, 21:7, 22:1, 31:10
**difficult** [1] - 29:8
**directly** [1] - 12:21
**disadvantage** [1] - 26:10
**discovery** [8] - 17:13, 17:25, 20:4, 30:7, 30:11, 33:14, 33:15, 34:24
**discussing** [1] - 10:3
**dismiss** [19] - 8:3, 8:7, 8:20, 8:24, 11:8, 13:7, 17:6, 18:15, 18:25, 21:25, 24:2, 25:1, 27:1, 27:21, 28:3, 30:3, 30:5, 30:9, 30:11
**dismissing** [1] - 33:21
**disposed** [1] - 19:1
**disputes** [1] - 28:13
**disrespect** [1] - 10:10
**DISTRICT** [3] - 1:1, 1:1, 1:13
**District** [3] - 3:12, 29:19, 30:13
**Division** [1] - 1:2
**docket** [1] - 35:1
**documents** [19] - 10:13, 12:9, 12:12, 12:23, 12:24, 12:25, 13:9, 13:10, 13:22, 19:18, 19:22, 22:14, 24:5, 24:6, 24:8, 24:9, 25:13, 25:19, 25:22
**done** [4] - 10:6, 22:8, 32:15, 32:21
**DOWD** [1] - 2:15
**down** [9] - 9:10, 10:9, 12:23, 17:9, 17:20, 27:8, 28:14, 29:9, 33:17
**drive** [1] - 20:11
**due** [3] - 8:7, 27:1, 34:20
**during** [2] - 25:12, 30:14
**duty** [2] - 15:14, 23:22

**E**

**early** [1] - 28:14
**EASTERN** [1] - 1:1
**effect** [8] - 8:5, 8:25, 9:4, 9:13, 10:9, 10:23, 11:9, 17:8
**effectively** [1] - 29:25
**efficiency** [3] - 17:19, 19:15, 34:3
**efforts** [1] - 33:5
**egregious** [1] - 13:13
**Eight** [1] - 9:11
**either** [3] - 20:13, 23:2, 25:8
**employee** [3] - 15:3, 16:6, 16:11
**employees** [1] - 32:2
**EMPLOYEES** [2] - 1:23, 2:2
**EMPLOYEES'** [1] - 2:11
**enable** [1] - 25:14
**end** [1] - 11:21
**ends** [1] - 29:23
**ensure** [1] - 33:5
**entire** [2] - 8:17, 22:13
**entirely** [10] - 15:24, 18:7, 18:17, 18:21, 19:8, 19:9, 19:12, 21:6
**entitled** [1] - 35:16
**especially** [2] - 28:17, 33:2
**essentially** [2] - 9:1, 20:17
**establish** [2] - 15:13, 32:15
**establishing** [1] - 32:6
**et** [2] - 1:6, 4:4
**everywhere** [1] - 9:13
**evidence** [9] - 8:1, 8:2, 8:3, 20:18, 32:14, 32:16, 32:17, 33:10, 33:13
**exact** [1] - 25:22
**exactly** [1] - 27:5
**example** [2] - 10:19, 18:22
**excerpted** [1] - 31:13
**excuse** [1] - 9:17
**exhibits** [1] - 11:22
**existing** [1] - 24:2
**expect** [3] - 8:20, 11:15, 15:6
**expects** [1] - 12:4
**expedited** [1] - 12:4
**expedition** [1] - 33:12
**expense** [1] - 33:15
**experience** [1] - 22:3

**expert** [1] - 14:17
**explained** [1] - 7:23
**extensive** [1] - 28:1
**extent** [1] - 18:3
**extra** [1] - 34:23
**extraordinarily** [1] - 14:2

**F**

**fact** [3] - 21:4, 30:7, 32:1
**facts** [5] - 11:5, 11:7, 18:13, 18:20, 21:2
**factual** [1] - 18:1
**factually** [1] - 17:5
**fairly** [1] - 18:22
**false** [2] - 18:12, 18:16
**far** [1] - 17:20
**FARRELL** [1] - 2:5
**Farrell** [1] - 4:14
**fascinating** [1] - 5:23
**February** [1] - 16:19
**federal** [3] - 23:3, 23:10, 30:17
**few** [3] - 14:11, 19:13, 34:23
**fiduciary** [1] - 23:22
**file** [13] - 8:8, 8:9, 10:25, 17:4, 21:22, 22:7, 24:14, 24:21, 24:23, 25:15, 26:21, 27:4, 34:8
**filed** [9] - 8:4, 8:22, 10:10, 13:18, 23:11, 24:7, 26:5, 30:11, 30:19
**files** [1] - 22:7
**filing** [5] - 20:16, 22:14, 24:3, 27:3, 33:10
**finally** [1] - 6:1
**fine** [5] - 5:9, 5:14, 25:8, 27:10, 34:17
**Fire** [5] - 8:23, 10:11, 13:18, 20:16, 22:12
**Firefighters** [1] - 4:3
**FIREFIGHTERS** [1] - 1:3
**firm** [4] - 4:15, 5:6, 5:20, 26:11
**firms** [1] - 10:25
**first** [12] - 4:11, 4:16, 4:18, 4:21, 5:15, 6:1, 7:5, 9:16, 10:19, 11:14, 26:18
**fishing** [1] - 33:12
**fit** [1] - 4:18
**five** [2] - 14:11, 14:12
**flags** [1] - 16:5

**flaws** [1] - 31:8
**floating** [1] - 23:1
**Floor** [1] - 3:12
**folks** [1] - 26:23
**Fonti** [1] - 4:14
**FONTI** [2] - 2:2, 2:6
**food** [1] - 15:20
**FOR** [7] - 1:1, 1:15, 1:23, 2:2, 2:9, 2:14, 3:1
**foregoing** [1] - 35:14
**form** [1] - 31:14
**formal** [6] - 14:5, 15:1, 15:8, 15:25, 16:21, 16:24
**formalized** [1] - 16:17
**former** [1] - 32:2
**forth** [2] - 9:9, 9:15
**forward** [9] - 11:12, 20:18, 21:11, 21:24, 22:5, 28:2, 30:6, 33:14, 34:7
**Fourth** [2] - 32:3, 32:5
**frankly** [3] - 26:3, 27:4, 28:24
**FTC** [1] - 19:19
**full** [2] - 10:1, 10:23
**fund** [1] - 6:23
**funneling** [1] - 16:9
**funnels** [1] - 16:8
**futile** [4] - 8:11, 8:16, 8:17, 9:2
**futility** [9] - 8:9, 9:12, 10:16, 10:17, 13:8, 13:9, 13:12, 18:15, 18:17

**G**

**GELLER** [1] - 2:15
**Geller** [1] - 5:6
**general** [2] - 32:8
**GENERAL** [1] - 2:10
**generally** [1] - 29:13
**generous** [1] - 34:21
**genuine** [1] - 33:11
**Google** [1] - 25:4
**governs** [2] - 19:10, 20:8
**grant** [3] - 6:19, 25:11, 26:2
**granted** [1] - 8:4
**grants** [1] - 8:24
**greatly** [1] - 34:15
**ground** [1] - 8:21
**grounds** [2] - 13:7, 19:4
**group** [2] - 11:3, 21:13
**groups** [4] - 20:23, 20:24, 21:23, 22:11

**guess** [1] - 8:8

**H**

**happy** [1] - 24:17
**Hatch** [2] - 5:17, 22:19
**HATCH** [5] - 3:1, 5:17, 22:20, 22:23, 31:6
**hear** [5] - 4:17, 4:21, 5:15, 18:25, 34:6
**HEARING** [1] - 1:12
**hearing** [6] - 12:11, 12:15, 12:16, 14:25, 17:14, 26:19
**heightened** [1] - 27:24
**held** [2] - 15:18, 32:5
**helpful** [1] - 34:2
**hits** [1] - 28:2
**hold** [1] - 34:21
**home** [1] - 20:11
**honestly** [1] - 16:19
**Honor** [36] - 4:22, 4:25, 5:3, 5:10, 5:17, 5:24, 14:15, 22:20, 22:23, 22:24, 23:4, 23:5, 23:8, 23:12, 23:16, 23:23, 23:25, 25:18, 25:21, 26:25, 27:8, 27:14, 28:25, 29:16, 30:17, 30:24, 31:3, 31:6, 31:15, 31:17, 31:20, 32:3, 33:23, 34:1, 34:4, 34:12
**HONORABLE** [1] - 1:13
**hope** [1] - 5:24
**hopefully** [1] - 15:9
**hours** [1] - 19:13
**Huffman** [1] - 5:1
**HUFFMAN** [4] - 1:15, 4:25, 25:18, 26:25
**huge** [4] - 17:13, 17:15, 26:9, 28:13
**hypothetical** [2] - 9:5, 10:4
**hypothetically** [1] - 18:23

**I**

**ice** [3] - 15:16, 15:17, 15:19
**identified** [2] - 9:16, 21:3
**II** [1] - 3:4
**Illinois** [4] - 29:19, 30:2, 30:13, 30:16
**imagine** [1] - 31:14
**immediately** [1] - 17:18

**impact** [1] - 29:1
**implement** [1] - 15:14
**implemented** [4] - 15:20, 16:1, 16:2, 31:23
**implementing** [1] - 13:25
**importance** [1] - 31:25
**important** [3] - 14:2, 32:17, 32:25
**impose** [1] - 9:24
**IN** [3] - 1:9, 1:15, 2:14
**incidents** [1] - 33:3
**including** [1] - 24:23
**incomplete** [1] - 10:12
**individual** [2] - 30:18, 31:22
**industries** [1] - 32:23
**inefficiencies** [2] - 17:13, 17:22
**inference** [1] - 28:8
**informal** [2] - 15:1, 15:10
**information** [8] - 17:3, 17:4, 17:15, 19:20, 25:16, 27:6, 28:5, 32:7
**initial** [1] - 30:4
**injury** [1] - 17:12
**insight** [1] - 29:13
**instruction** [1] - 32:12
**insufficient** [2] - 32:4, 32:10
**intended** [1] - 32:13
**intending** [1] - 24:21
**interest** [1] - 31:1
**INTERESTED** [1] - 2:9
**interested** [1] - 22:5
**interesting** [1] - 20:14
**internal** [8] - 10:12, 10:13, 10:14, 13:3, 13:22, 14:22, 16:11, 17:3
**intervene** [7] - 5:16, 5:23, 6:12, 6:17, 6:21, 23:25, 26:2
**intervenes** [1] - 6:2
**INTERVENOR** [2] - 1:23, 2:2
**intervenors** [1] - 4:13
**interviews** [2] - 14:18
**invested** [2] - 6:23, 6:24
**investigation** [3] - 28:19, 28:24, 30:22
**investing** [1] - 28:7
**involved** [1] - 17:22
**involves** [1] - 9:10
**Island** [1] - 7:6

**ISLAND** [2] - 2:10, 2:12
**issue** [11] - 8:10, 17:7, 17:18, 18:15, 22:16, 23:24, 26:10, 27:11, 29:9, 31:19, 34:22
**issuing** [1] - 34:21
**itself** [1] - 28:4

**J**

**January** [2] - 16:23, 23:5
**JAVIER** [1] - 2:2
**Javier** [1] - 4:14
**JEFFREY** [1] - 2:18
**Johnson** [3] - 5:6, 5:7, 34:18
**JOHNSON** [6] - 2:14, 28:21, 29:3, 29:12, 34:1, 34:19
**join** [1] - 6:4
**joins** [1] - 6:2
**Jonathan** [1] - 5:6
**JONATHAN** [1] - 2:15
**Jud** [1] - 5:20
**JUDGE** [1] - 1:13
**Judge** [3] - 30:4, 30:14, 33:17
**judge** [2] - 30:12, 33:18
**judges** [1] - 22:2
**judgment** [2] - 7:10, 9:12
**judicial** [1] - 33:11
**JUDSON** [1] - 3:8
**jump** [1] - 22:18
**jury** [3] - 5:14, 31:15, 32:11

**K**

**KELLER** [1] - 2:22
**key** [5] - 10:15, 10:16, 10:17, 14:14, 25:19
**kicked** [1] - 30:12
**kind** [2] - 22:16, 26:19
**knowing** [1] - 21:11
**knowledge** [1] - 32:7

**L**

**LABATON** [1] - 2:22
**landscape** [1] - 29:17
**large** [1] - 23:6
**last** [2] - 5:14, 11:22
**LAW** [2] - 1:23, 2:10
**law** [5] - 19:9, 19:12, 22:2, 26:11, 32:4
**lawsuit** [3] - 6:3, 6:5, 23:20

**lawyer** [1] - 21:14
**lawyers** [1] - 4:7
**lead** [7] - 5:5, 5:12, 21:23, 21:24, 26:12, 27:7, 28:21
**leadership** [2] - 22:16, 22:17
**leapfrogged** [2] - 22:13, 22:16
**learn** [1] - 16:10
**least** [2] - 16:18, 28:19
**leave** [1] - 30:8
**lectern** [1] - 31:4
**left** [1] - 12:12
**legal** [8] - 8:17, 10:18, 13:5, 18:5, 18:18, 18:20, 19:8
**length** [1] - 16:13
**lengthy** [1] - 34:14
**LEONIE** [1] - 1:13
**less** [1] - 12:1
**letters** [1] - 12:8
**level** [3] - 13:22, 14:2, 16:3
**levels** [1] - 15:4
**Lexington** [1] - 2:16
**liability** [4] - 8:13, 15:13, 21:5, 33:13
**liaison** [2] - 5:4, 5:11
**likelihood** [1] - 8:13
**limited** [1] - 6:13
**listeria** [1] - 15:20
**Litigation** [1] - 4:5
**LITIGATION** [1] - 1:9
**litigation** [4] - 7:4, 28:16, 29:1, 33:16
**LITTLETON** [1] - 3:8
**Littleton** [1] - 5:20
**LLP** [8] - 1:16, 2:2, 2:6, 2:15, 2:22, 3:1, 3:5, 3:8
**look** [4] - 27:21, 31:6, 31:15, 32:13
**looking** [3] - 7:15, 13:15, 18:9
**lost** [1] - 31:18
**LUCAS** [1] - 3:1

**M**

**ma'am** [4] - 6:18, 6:25, 26:20, 27:12
**Madison** [1] - 2:10
**magistrate** [1] - 33:18
**main** [1] - 22:21
**Main** [1] - 3:2
**majority** [1] - 8:14
**Maldonado** [1] - 30:14
**management** [1] - 15:4

**manufacturer** [1] - 32:1
**March** [1] - 16:18
**Marchand** [1] - 15:16
**master** [1] - 33:19
**material** [3] - 15:5, 15:6, 28:6
**materials** [3] - 13:18, 14:6, 16:15
**matter** [3] - 17:24, 26:5, 35:16
**matters** [1] - 5:18
**MAX** [2] - 29:21, 30:20
**MAXWELL** [1] - 1:15
**Maxwell** [1] - 5:1
**MCGUIRE** [1] - 3:1
**McGuireWoods** [1] - 5:18
**MDL** [1] - 22:25
**mean** [9] - 6:22, 9:14, 9:16, 18:18, 19:2, 23:1, 31:1, 32:19, 33:7
**means** [1] - 34:7
**measure** [1] - 33:1
**measuring** [1] - 10:8
**mediator** [1] - 33:18
**meeting** [1] - 16:21
**meetings** [2] - 14:7, 14:8
**meets** [1] - 16:20
**mentioned** [2] - 21:21, 27:1
**merits** [2] - 7:25, 26:12
**might** [5] - 8:5, 14:13, 20:4, 24:21, 33:17
**MILSTEIN** [1] - 2:19
**mind** [1] - 30:25
**minds** [1] - 32:13
**minute** [1] - 22:18
**minutes** [12] - 13:19, 13:23, 14:7, 16:16, 16:17, 16:18, 16:20, 16:21, 16:22, 16:24, 25:20, 31:1
**misconduct** [3] - 7:11, 13:13, 18:4
**mission** [3] - 15:15, 15:18, 15:23
**misstatements** [1] - 28:6
**MITCHELL** [1] - 2:14
**Mitchell** [1] - 5:7
**moment** [3] - 7:22, 20:9, 21:17
**Monday** [6] - 8:7, 19:5, 24:3, 24:15, 24:20, 27:2
**money** [1] - 27:4

monitoring [1] - 13:25
month [1] - 34:10
monthly [3] - 14:8,
16:17, 16:21
months [1] - 30:10
morass [1] - 33:14
morning [4] - 4:25,
5:3, 5:10, 5:17
most [4] - 22:15,
22:22, 32:25, 33:4
motion [31] - 5:15,
5:23, 8:3, 8:4, 8:6,
8:9, 8:20, 8:24, 11:8,
13:7, 17:6, 18:15,
18:25, 23:25, 24:2,
24:25, 25:11, 26:2,
27:1, 27:21, 28:3,
30:2, 30:3, 30:4,
30:8, 30:9, 30:10,
30:11, 30:15, 33:22
MOTIONS [1] - 1:12
move [2] - 19:4, 26:5
moves [1] - 21:25
moving [1] - 6:12
MR [23] - 4:25, 5:3,
5:10, 5:17, 22:20,
22:23, 22:24, 23:3,
23:16, 25:18, 26:25,
27:8, 27:14, 27:19,
28:21, 29:3, 29:12,
29:16, 31:6, 33:23,
34:1, 34:12, 34:19
MS [29] - 4:12, 4:20,
4:22, 5:24, 6:9, 6:12,
6:15, 6:18, 6:24,
7:13, 7:16, 7:19, 8:6,
9:6, 11:13, 17:17,
19:23, 19:25, 20:2,
20:7, 20:14, 20:19,
20:22, 24:12, 25:5,
25:24, 26:14, 26:20,
27:12
multiple [1] - 30:3

**N**

named [2] - 7:3, 7:6
names [1] - 14:14
necessarily [2] -
14:14, 22:14
necessary [2] - 26:18,
28:2
need [8] - 4:8, 24:23,
24:24, 24:25, 26:9,
28:25, 32:5, 34:6
needed [1] - 25:20
negotiating [1] - 12:7
negotiation [1] - 12:13
never [1] - 33:5
New [6] - 2:4, 2:17,

2:19, 2:23, 3:6, 3:9
newspaper [1] - 14:18
next [1] - 16:20
nexus [1] - 28:7
nine [1] - 30:10
NO [2] - 1:16, 2:14
nondisclosure [2] -
20:3, 20:7
Norfolk [1] - 3:3
normal [3] - 11:11,
16:22, 32:14
normally [2] - 34:12,
34:22
Northern [2] - 29:19,
30:13
note [3] - 4:10, 27:17,
28:12
NOTES [1] - 3:17
notice [1] - 33:3
November [5] - 11:20,
12:11, 12:14, 12:19,
12:22
number [3] - 11:22,
23:6, 31:11
Numbers [1] - 4:2
NW [2] - 2:19, 3:9
NY [4] - 2:4, 2:17,
2:23, 3:6

**O**

o'clock [1] - 35:2
objection [1] - 34:17
obtain [2] - 10:14,
19:18
obtained [1] - 19:20
obviously [3] - 12:20,
13:3, 23:24
occur [1] - 11:18
October [3] - 11:15,
11:16, 11:19
odds [1] - 6:15
OF [13] - 1:1, 1:12,
1:25, 1:23, 2:4, 2:10,
2:10, 2:11, 2:12,
2:10, 3:17, 35:12,
35:21
OFFICE [2] - 2:10,
2:10
officer [1] - 33:11
officers [2] - 7:3, 7:4
OFFICES [1] - 1:23
OFFICIAL [2] - 3:12,
35:12
often [1] - 9:20
OHIO [4] - 1:23, 1:25,
2:2, 2:4
Ohio [1] - 4:13
Oklahoma [21] - 4:3,
4:17, 4:24, 5:1, 7:5,

8:4, 8:23, 10:11,
13:18, 20:13, 20:16,
22:12, 24:7, 24:10,
25:11, 25:12, 25:15,
26:2, 26:10, 27:15
OKLAHOMA [1] - 1:3
ON [1] - 2:11
one [10] - 6:2, 8:22,
11:11, 14:3, 17:9,
23:9, 23:13, 23:14,
30:16
ones [2] - 11:23, 32:24
opportunity [6] - 22:9,
22:11, 24:23, 24:24,
24:25
opposition [2] - 14:12,
14:13
order [7] - 10:21,
11:20, 12:3, 17:18,
22:5, 32:12, 34:22
orders [1] - 11:23
otherwise [2] - 22:12
ought [1] - 17:21
outstanding [1] -
28:11
overall [1] - 31:25
overlap [5] - 17:15,
17:25, 21:10, 29:22,
30:1
overlapping [1] -
29:18
overseen [1] - 16:3
overstay [1] - 31:3
OWEN [1] - 3:8

**P**

pages [3] - 3:15,
31:14, 34:14
panel [1] - 14:18
papers [2] - 13:6, 31:9
paramount [1] - 32:24
Park [1] - 2:3
parse [1] - 19:13
part [5] - 7:9, 18:24,
24:8, 30:6, 31:8
particularized [3] -
18:13, 18:20, 32:6
particularly [1] - 15:15
parties [2] - 21:7, 23:8
parties' [1] - 31:19
PARTY [1] - 2:9
party [3] - 6:5, 6:21,
21:8
past [2] - 25:6, 28:13
paths [1] - 21:5
PC [1] - 1:19
pendency [1] - 30:15
pending [5] - 23:9,
29:19, 30:2, 30:10,

30:16
PENSION [1] - 1:3
pension [1] - 6:23
Pension [1] - 4:3
people [4] - 14:22,
15:20, 24:21, 27:16
PEPPERMAN [8] -
3:4, 22:24, 23:3,
23:16, 27:8, 29:16,
33:23, 34:12
Pepperman [2] - 5:19,
22:23
perfectly [1] - 6:17
perhaps [1] - 26:11
period [3] - 24:16,
29:23, 29:24
permission [1] - 5:7
person [2] - 32:12,
32:13
perspective [3] -
17:20, 31:8, 31:17
pharmaceuticals [1] -
32:23
phrase [2] - 13:13,
18:4
picked [1] - 34:23
piece [1] - 15:18
pieces [2] - 11:13,
15:12
places [1] - 30:4
plaintiff [5] - 1:5, 5:5,
21:23, 21:24
plaintiffs [6] - 4:11,
5:12, 22:11, 28:22,
30:7, 31:9
PLAINTIFFS [2] -
1:15, 2:14
plaintiffs' [1] - 31:21
plane [3] - 15:23,
16:23
planes [2] - 21:4, 33:3
planning [2] - 24:2,
24:3
plead [1] - 32:5
pleading [3] - 18:13,
27:24, 33:8
pled [1] - 25:19
plenary [10] - 8:21,
9:1, 10:20, 10:25,
13:2, 19:11, 20:16,
21:11, 22:7
Podolsky [3] - 4:12,
5:25, 25:10
PODOLSKY [31] -
1:23, 1:23, 4:12,
4:20, 4:22, 5:24, 6:9,
6:12, 6:15, 6:18,
6:24, 7:13, 7:16,
7:19, 8:6, 9:6, 11:13,
17:17, 19:23, 19:25,

20:2, 20:7, 20:14,
20:19, 20:22, 24:12,
25:5, 25:24, 26:14,
26:20, 27:12
point [12] - 6:5, 6:16,
9:20, 12:11, 12:25,
14:15, 19:15, 21:19,
22:6, 28:6, 28:20,
33:8
pointed [1] - 23:20
points [1] - 31:2
portion [1] - 29:7
position [1] - 24:1
positions [2] - 27:13,
31:22
positive [1] - 11:25
possibility [1] - 9:3
possible [4] - 9:3,
22:6, 22:11, 28:15
possibly [1] - 25:15
potential [2] - 17:24,
23:7
potentially [2] - 8:24,
17:13
practical [1] - 26:5
practice [1] - 30:3
precedential [1] - 8:5
preclusive [7] - 8:25,
9:4, 9:13, 10:9,
10:23, 11:8, 17:8
prediction [1] - 30:22
preferential [1] -
12:18
prejudice [1] - 10:5
premier [1] - 9:21
prepared [1] - 24:1
present [5] - 11:3,
14:10, 16:18, 16:19,
16:25
presentations [1] -
13:21
presumably [1] - 8:8
price [2] - 23:18
principal [1] - 31:21
private [2] - 29:1,
33:18
problem [4] - 9:15,
15:21, 17:12, 28:10
proceed [2] - 12:21,
28:15
proceeding [2] - 6:8,
6:10, 25:14
proceedings [2] -
11:11, 35:15
process [17] - 10:21,
10:22, 12:2, 12:4,
13:2, 16:22, 17:13,
19:18, 20:20, 21:20,
22:2, 22:4, 22:5,
22:13, 24:6, 24:9

*Rebecca Stonestreet, RPR, CRR, Official Court Reporter*

**processes** [1] - 19:19
**produce** [3] - 12:9, 12:10, 12:13
**produced** [5] - 13:4, 16:13, 24:5, 24:8, 25:13
**product** [1] - 32:24
**production** [6] - 11:15, 11:16, 11:18, 12:9, 25:7, 26:8
**progeny** [1] - 18:14
**program** [2] - 16:7, 16:8
**proof** [1] - 33:9
**properly** [3] - 7:23, 16:2
**proposed** [1] - 4:12
**prove** [1] - 32:12
**proven** [1] - 32:15
**providing** [2] - 24:6, 24:9
**PSLRA** [3] - 27:25, 30:11, 33:9
**public** [4] - 10:13, 14:16, 14:21, 28:7
**PUBLIC** [2] - 1:23, 2:2
**publicly** [1] - 14:23
**purpose** [1] - 6:13
**purposes** [1] - 29:6
**pursuant** [1] - 24:5
**pursue** [1] - 8:12
**pursuit** [1] - 23:7
**push** [2] - 21:15, 24:25

**Q**

**quantum** [1] - 32:16
**questions** [1] - 23:24
**quibbling** [1] - 21:4
**quick** [1] - 12:2
**quickly** [1] - 26:6
**quite** [3] - 14:11, 19:3, 19:12
**quote** [2] - 32:6, 32:7

**R**

**Radford** [1] - 1:20
**raise** [1] - 31:2
**raised** [1] - 29:17
**RALPH** [1] - 1:15
**Re** [1] - 4:4
**RE** [1] - 1:9
**reached** [1] - 15:8
**reaches** [2] - 14:3, 14:5
**real** [6] - 10:1, 10:4, 10:8, 10:22, 28:10, 33:12
**realizing** [1] - 10:1

**really** [6] - 4:8, 6:20, 13:1, 19:5, 26:9, 26:12
**reason** [5] - 11:17, 17:2, 17:25, 20:15
**reasonable** [1] - 33:1
**reassigned** [1] - 30:15
**REBBECA** [1] - 1:23
**REBECCA** [1] - 3:12
**Rebecca** [1] - 35:14
**receipt** [1] - 31:24
**recess** [1] - 35:1
**recognize** [1] - 27:23
**recognizes** [1] - 12:3
**record** [10] - 4:11, 10:12, 10:24, 14:21, 17:5, 18:1, 27:18, 35:3, 35:15
**records** [10] - 10:15, 10:21, 11:19, 11:21, 13:3, 14:17, 16:11, 16:14, 22:14, 28:4
**recover** [2] - 23:18, 23:21
**red** [1] - 16:5
**reduced** [1] - 30:5
**references** [3] - 13:19, 14:11, 14:12
**referring** [1] - 12:3
**reflexively** [1] - 34:13
**regard** [1] - 34:4
**Reilly** [5] - 5:2, 5:4, 19:21, 20:9, 21:12
**REILLY** [3] - 2:9, 2:10, 5:3
**Reilly's** [8] - 7:20, 18:5, 18:9, 18:23, 18:24, 19:6, 20:5, 21:9
**relates** [1] - 28:5
**relationship** [2] - 12:7, 12:17
**relevant** [2] - 14:7, 17:16
**remember** [1] - 16:19
**replead** [1] - 25:21
**report** [4] - 25:7, 26:7, 26:14, 26:17
**REPORTER** [3] - 3:12, 35:12, 35:21
**reporting** [5] - 14:24, 15:24, 15:25, 31:22, 32:8
**reports** [5] - 24:18, 31:24, 31:25, 32:9, 32:10
**represent** [1] - 6:23
**representing** [1] - 22:19
**reputation** [1] - 28:12

**request** [1] - 22:25
**require** [1] - 33:9
**requirement** [2] - 9:2, 18:20
**requirements** [2] - 27:24, 28:2
**resolve** [3] - 12:18, 12:19, 12:21
**resolved** [3] - 27:11, 28:12, 33:20
**respect** [4] - 20:3, 21:19, 26:10, 30:25
**respects** [2] - 29:8, 32:17
**response** [1] - 23:23
**responsibility** [1] - 26:20
**restriction** [1] - 19:18
**RETIREMENT** [6] - 1:4, 1:24, 1:24, 2:3, 2:3, 2:11
**retirement** [3] - 4:13, 6:24, 7:1
**Retirement** [1] - 4:3
**reverse** [1] - 21:20
**reviewing** [1] - 33:11
**revisit** [1] - 34:1
**Rhode** [1] - 7:6
**RHODE** [2] - 2:10, 2:12
**RICHARD** [1] - 3:4
**Richmond** [1] - 1:21
**Rick** [1] - 5:19
**rigid** [1] - 33:8
**risk** [8] - 9:24, 9:25, 10:1, 10:4, 10:6, 10:8, 10:22
**Road** [2] - 1:24, 2:6
**road** [2] - 17:20, 29:9
**ROBBINS** [1] - 2:15
**Robbins** [1] - 5:6
**robust** [3] - 10:24, 17:4, 22:15
**Room** [1] - 3:6
**room** [1] - 4:7
**routed** [1] - 15:3
**RPR** [1] - 3:12
**RUDMAN** [1] - 2:15
**rule** [2] - 12:11, 31:16
**Rule** [2] - 18:13, 27:24
**ruling** [2] - 9:12, 30:4
**run** [2] - 21:16, 21:17

**S**

**sadly** [1] - 19:12
**safe** [2] - 33:1, 33:2
**Safety** [3] - 13:17, 13:19, 13:24
**safety** [19] - 14:1,

14:25, 15:3, 15:14, 15:17, 15:20, 15:23, 16:10, 16:11, 21:4, 21:5, 31:24, 31:25, 32:9, 32:10, 32:22, 32:24
**San** [1] - 1:17
**satisfied** [7] - 17:10, 20:17, 25:8, 29:8, 32:21, 33:7, 33:21
**satisfy** [1] - 33:11
**saved** [1] - 27:4
**saw** [2] - 6:1, 17:17
**scenario** [1] - 9:19
**schedule** [1] - 8:7
**scheduling** [1] - 34:21
**scienter** [7] - 28:8, 31:2, 31:20, 31:21, 32:5, 32:15
**Scott** [8] - 8:23, 10:11, 20:16, 20:24
**SCOTT** [1] - 1:16
**scrupulous** [1] - 33:4
**SEC** [5] - 28:18, 28:23, 29:7, 29:10, 30:21
**second** [1] - 30:11
**Section** [5] - 23:6, 23:9, 23:17, 24:5, 24:9
**SECURITIES** [1] - 1:9
**securities** [11] - 11:1, 18:6, 21:22, 23:2, 23:14, 27:20, 28:18, 29:18, 29:20, 30:21
**Securities** [1] - 4:5
**see** [10] - 5:10, 17:12, 26:6, 26:9, 26:15, 26:18, 27:5, 28:13, 28:24, 31:13
**seeing** [1] - 18:10
**seek** [1] - 11:6
**seeking** [8] - 10:14, 13:1, 13:3, 13:10, 16:12, 16:15, 16:16, 23:18
**sees** [1] - 18:3
**SELLERS** [1] - 2:19
**sense** [4] - 4:8, 21:14, 27:3, 29:10
**sent** [1] - 12:8
**September** [6] - 1:10, 25:3, 25:6, 26:5, 29:25, 34:11
**series** [1] - 11:23
**serious** [1] - 15:21
**set** [6] - 9:18, 11:5, 11:7, 11:20, 12:23, 16:21
**sets** [1] - 25:20
**settled** [2] - 32:3,

33:16
**settlement** [1] - 29:6
**Seventh** [1] - 30:14
**several** [2] - 10:25, 30:18
**shame** [1] - 28:10
**share** [3] - 20:9, 20:12, 23:2
**shared** [3] - 19:20, 19:23, 19:25
**shareholder** [4] - 5:4, 7:2, 7:9, 23:14
**shareholders** [4] - 7:21, 8:10, 8:11, 8:14
**short** [1] - 24:16
**shot** [1] - 11:4
**show** [1] - 11:23
**side** [2] - 27:5, 29:8
**sIGNATURE** [1] - 35:21
**Silverside** [1] - 2:6
**similar** [3] - 11:1, 18:3, 21:3
**simple** [1] - 28:4
**single** [1] - 32:25
**sit** [3] - 5:14, 28:14, 33:17
**six** [4] - 14:11, 14:13, 29:23, 29:25
**size** [2] - 30:5, 31:19
**SKILLING** [1] - 1:19
**smaller** [1] - 12:23
**sometimes** [2] - 19:19, 29:5
**somewhat** [1] - 4:9
**sorry** [2] - 5:16, 20:12
**sorts** [1] - 9:22
**speaks** [1] - 28:4
**special** [1] - 33:18
**specific** [1] - 12:2
**speculative** [1] - 10:5
**spent** [1] - 19:12
**spokesperson** [1] - 22:21
**Square** [1] - 3:13
**stage** [1] - 33:8
**stand** [1] - 27:8
**standard** [1] - 32:11
**start** [1] - 13:16
**started** [2] - 13:8, 34:8
**state** [1] - 30:18
**STATE** [3] - 1:24, 2:3, 2:10
**State** [1] - 9:9
**statements** [4] - 18:12, 18:16, 31:10, 31:12
**states** [1] - 7:6

**STATES** [2] - 1:1, 1:13
**stating** [1] - 10:22
**station** [1] - 14:19
**stay** [10] - 6:6, 6:13, 6:19, 22:10, 23:25, 24:22, 25:11, 26:2, 26:25, 30:11
**stayed** [1] - 34:5
**stays** [1] - 10:20
**STENOGRAPHIC** [1] - 3:17
**STEVEN** [1] - 2:18
**Steven** [1] - 5:11
**still** [2] - 12:14, 33:8
**stock** [1] - 23:19
**stockholder** [1] - 30:18
**stockholders** [5] - 21:9, 23:7, 23:17, 23:21, 24:8
**STONESTREET** [1] - 3:12
**Stonestreet** [2] - 35:14, 35:20
**Street** [3] - 2:10, 3:2, 3:5
**strength** [3] - 13:10, 13:11, 13:12
**strong** [3] - 21:18, 25:19, 28:8
**stronger** [1] - 25:25
**structure** [1] - 31:23
**structures** [1] - 32:8
**subheadings** [1] - 31:11
**submit** [1] - 32:3
**substantial** [7] - 8:13, 10:6, 11:15, 11:16, 11:18, 12:9, 25:6
**substantially** [2] - 21:3, 30:5
**SUCHAROW** [1] - 2:22
**sufficiency** [1] - 18:10
**sufficient** [4] - 17:11, 18:11, 19:11, 28:7
**suggests** [1] - 33:13
**Suite** [10] - 1:17, 1:20, 1:24, 2:3, 2:7, 2:11, 2:16, 2:20, 3:2, 3:9
**Sullivan** [1] - 5:20
**SULLIVAN** [2] - 3:5, 3:8
**supports** [1] - 28:5
**supposed** [1] - 16:10
**Supreme** [1] - 9:11
**Susan** [1] - 4:12
**SUSAN** [2] - 1:23, 1:23
**suspect** [1] - 32:21
**sustain** [1] - 21:13
**sustaining** [1] - 18:23

**switch** [1] - 27:13
**SYSTEM** [6] - 1:4, 1:24, 1:25, 2:3, 2:4, 2:12
**system** [7] - 14:25, 15:14, 15:17, 15:20, 15:25, 16:1
**System** [1] - 4:3
**systems** [4] - 4:13, 6:24, 7:1, 14:1

# T

**table** [1] - 4:16
**Teachers** [1] - 9:9
**TEACHERS** [2] - 1:24, 2:3
**television** [1] - 14:18
**terms** [6] - 23:3, 23:10, 24:4, 26:8, 29:16
**terribly** [1] - 32:20
**testimony** [2] - 14:17
**Tharp's** [1] - 30:4
**THE** [62] - 1:1, 1:13, 1:15, 1:23, 2:2, 2:9, 2:10, 2:11, 2:14, 3:1, 4:6, 4:17, 4:21, 4:23, 5:2, 5:9, 5:13, 5:22, 5:25, 6:11, 6:14, 6:16, 6:19, 7:1, 7:14, 7:18, 8:1, 9:5, 11:10, 17:10, 19:17, 19:24, 20:1, 20:6, 20:12, 20:18, 20:21, 22:18, 22:21, 22:25, 23:13, 24:11, 25:3, 25:10, 25:23, 26:1, 26:17, 26:23, 27:3, 27:10, 27:13, 27:18, 27:20, 29:2, 29:5, 29:15, 31:5, 32:11, 33:24, 34:6, 34:17, 34:20
**theories** [2] - 10:18, 13:5
**thereafter** [1] - 33:4
**therefore** [4] - 8:14, 13:15, 18:10, 18:24
**they've** [3] - 12:10, 12:13, 22:15
**thinking** [2] - 18:10, 22:9
**three** [1] - 11:13
**threshold** [6] - 8:10, 8:18, 9:2, 17:7, 17:24, 18:15
**timeframe** [1] - 11:11, 25:12
**timing** [2] - 29:10, 30:23
**today** [4] - 4:15, 19:6,

26:8, 34:23
**together** [2] - 21:15, 21:17
**TOLL** [3] - 2:18, 2:19, 5:10
**Toll** [1] - 5:11
**tons** [1] - 28:5
**touched** [2] - 19:5, 19:7
**Tower** [1] - 2:20
**track** [1] - 21:16
**traditionally** [1] - 6:2
**TRANSCRIPT** [1] - 1:12
**transcript** [2] - 9:17, 35:15
**TRANSCRIPTION** [1] - 3:17
**TREASURER** [1] - 2:11
**trial** [3] - 11:20, 12:11, 31:15
**true** [2] - 19:2, 21:5
**try** [6] - 21:15, 21:16, 21:17, 28:14, 33:17, 33:20
**trying** [6] - 6:6, 7:9, 8:1, 19:13, 20:10
**two** [17] - 4:9, 4:13, 6:15, 6:24, 7:1, 11:13, 12:7, 15:12, 16:9, 21:1, 23:5, 23:12, 29:21, 29:22, 31:1, 33:3
**type** [1] - 33:16
**types** [1] - 27:25

# U

**U.S** [1] - 3:12
**ultimately** [3] - 7:10, 7:15, 26:11
**under** [6] - 8:7, 18:7, 18:13, 22:2, 27:24, 32:3
**underlie** [1] - 14:7
**underlying** [6] - 11:19, 13:12, 13:21, 18:3, 21:2, 22:14
**understood** [2] - 17:18, 25:5
**UNITED** [2] - 1:1, 1:13
**Up** [1] - 16:8
**up** [16] - 7:22, 9:10, 10:9, 14:25, 15:3, 15:4, 15:7, 16:5, 16:8, 16:9, 17:8, 19:3, 30:14, 30:25, 31:10, 34:23

# V

**VA** [4] - 1:21, 1:25, 2:11, 3:3
**Vaala** [1] - 33:17
**vacate** [1] - 4:20
**verdict** [1] - 31:14
**versus** [1] - 4:7
**Villegas** [1] - 5:12
**VILLEGAS** [1] - 2:22
**VIRGINIA** [1] - 1:1
**Virginia** [2] - 3:13, 27:15

# W

**Walmart** [2] - 9:10, 10:2
**wants** [5] - 8:25, 22:7, 24:14, 26:21, 29:7
**Washington** [2] - 2:20, 3:10
**ways** [2] - 16:9, 17:22
**weaknesses** [1] - 27:6
**weeks** [3] - 29:23, 30:1, 34:23
**welcome** [1] - 31:3
**West** [1] - 2:20
**whistleblower** [4] - 14:9, 15:2, 16:5
**whistleblowers** [4] - 14:12, 14:13, 14:16, 32:2
**whittled** [1] - 12:23
**whittled-down** [1] - 12:23
**whole** [2] - 6:5, 10:6
**Williams** [1] - 27:14
**WILLIAMS** [4] - 1:19, 1:19, 27:14, 27:19
**willing** [1] - 6:17
**Wilmington** [1] - 2:8
**wise** [1] - 33:17
**won** [1] - 33:24
**wonder** [1] - 34:2
**WOODS** [1] - 3:1
**words** [2] - 8:10, 19:21
**written** [4] - 17:11, 26:14, 26:17, 32:18

# Y

**Yates** [1] - 32:4
**year** [1] - 30:7
**York** [6] - 2:4, 2:17, 2:19, 2:23, 3:6, 3:9
**you-all** [3] - 4:21, 6:4, 26:18

# Z

**Zurn** [1] - 13:8
**Zweig** [1] - 5:6
**ZWEIG** [1] - 2:15