UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| IN RE THE BOEING COMPANY SECURITIES LITIGATION | ) ) ) ) ) ) ) | Case No. 1:24-cv-151-LMB-LRV  Hon. Leonie M. Brinkema |

## DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Richard C. Pepperman II (*pro hac vice*)
Jason P. Barnes (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
peppermanr@sullcrom.com
barnesjas@sullcrom.com

Judson O. Littleton (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
Facsimile: (202) 293-6330
littletonj@sullcrom.com

Benjamin L. Hatch
MCGUIREWOODS LLP
888 16th Street N.W.
Suite 500
Black Lives Matter Plaza
Washington, D.C. 20006
Telephone: (757) 640-3727
Facsimile: (757) 640-3947
bhatch@mcguirewoods.com

*Counsel for Defendants The Boeing
Company, David L. Calhoun, Dennis A.
Muilenburg, Brian J. West, and Gregory D.
Smith*

March 3, 2025

**TABLE OF CONTENTS**

*Page*

ARGUMENT ..................................................................................................................................1

I.       Plaintiffs Have Not Made the Evidentiary Showing Required by *Comcast* ........................1

II.      To the Extent Any Class Is Certified, Plaintiffs Have Not Satisfied Their
         Evidentiary Burden for Their Massive Proposed Class .........................................................7

         A.       Plaintiffs Should Not Be Permitted to Expand the Class to Include Options ..........7

         B.       The Class Period Should Not Begin Before January 7, 2021 .................................8

         C.       The Class Period Should End by January 8, 2024 ..................................................9

CONCLUSION.............................................................................................................................10

**TABLE OF AUTHORITIES**

*Page(s)*

**Cases**

*In re Allstate Corp. Sec. Litig.*,
   966 F.3d 595 (7th Cir. 2020) ...................................................................................................3

*In re Apache Corp. Sec. Litig.*,
   2024 WL 532315 (S.D. Tex. Feb. 9, 2024) ...........................................................................10

*In re BP p.l.c. Sec. Litig.*,
   2013 WL 6388408 (S.D. Tex. Dec. 6, 2013)........................................................................5, 6

*In re BP p.l.c. Sec. Litig.*,
   2014 WL 2112823 (S.D. Tex. May 20, 2014) .........................................................................6

*Comcast Corp.* v. *Behrend*,
   569 U.S. 27 (2013)............................................................................................................ *passim*

*Couch* v. *Jabe*,
   679 F.3d 197 (4th Cir. 2012) ...................................................................................................9

*Dura Pharms., Inc.* v. *Broudo*,
   544 U.S. 336 (2005)..................................................................................................................7

*EQT Prod. Co.* v. *Adair*,
   764 F.3d 347 (4th Cir. 2014) .................................................................................................10

*Erica P. John Fund, Inc.* v. *Halliburton Co.*,
   563 U.S. 804 (2011)..................................................................................................................3

*Gunnells* v. *Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003) ...................................................................................................8

*Henderson* v. *Corelogic Nat'l Background Data, LLC*,
   2016 WL 4611571 (E.D. Va. Sept. 2, 2016)...........................................................................8

*IBEW* v. *Deutsche Bank AG*,
   2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013)..........................................................................8

*IBEW* v. *Deloitte & Touche LLP*,
   348 F.R.D. 35 (D.S.C. 2024) ...............................................................................................1, 2

*Lienhart* v. *Dryvit Sys., Inc.*,
   255 F.3d 138 (4th Cir. 2001) ...................................................................................................1

*Ludlow* v. *BP, PLC*,
    800 F.3d 674 (5th Cir. 2015) ...................................................................................................6

*Piotrowski* v. *Wells Fargo Bank, NA*,
    2015 WL 4602591 (D. Md. July 29, 2015)............................................................................8

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013) .......................................................................................3, 4, 7

*Seeks* v. *Boeing Co.*,
    2024 WL 4367846 (N.D. Ill. Sept. 30, 2024) ........................................................................9

*Singer* v. *Reali*,
    883 F.3d 425 (4th Cir. 2018) ...................................................................................................6

*Stafford* v. *Bojangles' Rest., Inc.*,
    123 F.4th 671 (4th Cir. 2024) .................................................................................................9

*Thorn* v. *Jefferson-Pilot Life Ins. Co.*,
    445 F.3d 311 (4th Cir. 2006) ...................................................................................................8

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)....................................................................................................3

**Rule**

Fed. R. Civ. P. 23(f)..............................................................................................................1, 2

In their reply, Plaintiffs double-down on the notion that they can satisfy their evidentiary burden under *Comcast Corp.* v. *Behrend*, 569 U.S. 27 (2013), simply by reciting the arithmetical formula that the Supreme Court has adopted for securities cases generally:  "damages are equal to 'artificial inflation per share at the time of purchase minus the artificial inflation per share at the time of sale.'"  ECF No. 129 ("Pls.' Reply") 3.  Although Plaintiffs cite a recent decision from within this Circuit that endorsed that reading of *Comcast* (*id.* at 16 (citing *IBEW* v. *Deloitte & Touche LLP*, 348 F.R.D. 35 (D.S.C. 2024)), they fail to mention that the Fourth Circuit on February 13 granted Rule 23(f) interlocutory review in that very case to decide the evidentiary burden plaintiffs must satisfy under *Comcast*.  *See* No. 24-258 (4th Cir. Feb. 13, 2025).  Because the "weakness of the certification order" is the key consideration under the Fourth Circuit's "sliding scale" test for granting Rule 23(f) review, *Lienhart* v. *Dryvit Sys., Inc.*, 255 F.3d 138, 145 (4th Cir. 2001), the propriety of the *Deloitte* district court's endorsement of the same approach Plaintiffs press here is subject to grave doubt.  This Court should not make the same mistake in applying *Comcast* in this case where Plaintiffs' claims are much more complex and far-reaching, creating complexities for damages that did not exist in *Deloitte*.

## ARGUMENT

### I.    Plaintiffs Have Not Made the Evidentiary Showing Required by *Comcast*.

The parties' dispute boils down to whether Plaintiffs can satisfy their evidentiary burden under *Comcast* merely by repeating the general formula for calculating out-of-pocket damages in securities cases (as Plaintiffs argue) or whether Plaintiffs must propose an actual damages methodology capable of measuring the amount of artificial inflation in Boeing's stock price that is consistent with their liability theory (as Defendants argue).  If *Comcast* has any meaning at all, then Plaintiffs' position cannot be right.

Both sides agree that the "Supreme Court long ago" adopted the out-of-pocket measure of

damages in securities cases, "where damages are equal to 'artificial inflation per share at the time of purchase minus the artificial inflation per share at the time of sale.'" Pls.' Reply 3. But the existence of that standard formula does not mean, as Plaintiffs contend, that all *Comcast* requires of securities plaintiffs at the class-certification stage is that they recite that general *formula* without offering any sort of *methodology* capable of calculating the alleged artificial inflation in the stock price throughout the class period (the key input for measuring damages) in a manner consistent with their liability theory. Because out-of-pocket damages is the measure of damages in all securities litigation, Plaintiffs' assertion that Mr. Coffman will use "the standard Out-of-Pocket Method" (*id.* at 1) is the equivalent of saying: "To calculate damages, I will calculate damages." *See* ECF No. 130-2 ("Stulz Tr.") 48:5-13 (noting that out-of-pocket measure of damages is "not a methodology" because it does not "tell you whether the plaintiff expert has an approach to estimate th[e] artificial inflation that would be consistent with plaintiffs' liability theory"). If that were enough to satisfy *Comcast*, then *Comcast* would do no work in securities litigation.

To be sure, Plaintiffs cite numerous decisions finding that securities plaintiffs met their *Comcast* burden by stating that they will calculate out-of-pocket damages, without requiring them to propose a methodology for measuring per-share inflation. Pls.' Reply 2. The Fourth Circuit, however, recently granted Rule 23(f) interlocutory review to decide this exact question in a case that Plaintiffs highlight on page 1 of their Exhibit A. ECF No. 130-1. In that case, which involved only a two-year class period, the court concluded that the plaintiff satisfied *Comcast* by stating that it will use the "out-of-pocket method" to "calculate[] damages formulaically as the artificial inflation in the share price at the time of purchase minus the artificial inflation in the share price at the time of sale." *Deloitte*, 348 F.R.D. at 46, 52. That ruling prompted the Fourth Circuit to grant Rule 23(f) review to decide what *Comcast* requires.

Plaintiffs also argue that they should not be required at class certification to offer a methodology for calculating per-share inflation throughout the class period because that issue "does not implicate any individualized inquiries" and overlaps with the merits issue of "loss causation." Pls.' Reply 5. That is incorrect. Whether Plaintiffs have a classwide methodology for calculating per-share inflation consistent with their theory of liability is "essential to the plaintiffs' claim they can offer common evidence" of classwide damages. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013). Without a classwide damages methodology that fits Plaintiffs' liability theory, "individual damage calculations" will "overwhelm questions common to the class." *Comcast*, 569 U.S. at 34. As the D.C. Circuit put it, "No damages model, no predominance, no class certification." *Rail Freight*, 725 F.3d at 253.

Nor did the Supreme Court hold in *Erica P. John Fund, Inc.* v. *Halliburton Co.*, 563 U.S. 804 (2011), as Plaintiffs suggest, that any inquiry that overlaps with loss causation is off limits at class certification. Pls.' Reply 5. Instead, the Supreme Court held only that securities plaintiffs need not "prove" loss causation "as a precondition for invoking [the] rebuttable presumption of reliance" because proof of loss causation "has nothing to do with whether an investor relied on the misrepresentation in the first place." 563 U.S. at 812-13. By contrast, measurement of "artificial inflation" is the key input for calculating damages in securities cases, *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 260 (2d Cir. 2016), and thus is highly relevant at class certification. Even if evidence relevant to class certification is also relevant to a merits issue like loss causation, "a district court may not use the overlap to refuse to consider the evidence." *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 608 (7th Cir. 2020). That is exactly what Plaintiffs ask this Court to do here.

Plaintiffs' reliance on the out-of-pocket formula for calculating damages does not fail merely because it lacks "detail." Pls.' Reply 5. Compounding the evidentiary deficiencies created

-3-

by the complete lack of any detail, the only specific method that Mr. Coffman identifies for potentially calculating per-share inflation—using an event study to analyze the stock-price declines after the Alaska Airlines accident in 2024 to measure the supposed inflation in Boeing's stock price dating back to the first alleged misstatement in 2019, ECF No. 105-1 ("Coffman Initial Rpt.") ¶ 100; ECF No. 130-6 ("Coffman Rebuttal Rpt.") ¶¶ 41-48—is inconsistent with Plaintiffs' liability theory.  As Dr. Stulz explained, an event-study analysis of stock-price declines after a risk-materializing event like the Alaska Airlines accident cannot be used to measure the inflation resulting from alleged misstatements that supposedly understated the "probability of quality lapses." Stulz Tr. 74:4-77:21; *see also* ECF No. 115-4 ("Stulz Rpt.") ¶¶ 26, 197-221.  Instead, any damages must be calculated based on the difference between "the market's expectation of losses from quality escapes with the misstatements and without the misstatements"—*i.e.*, the undisclosed additional risk of a future accident.  Stulz Tr. 74:9-14.  An event study based on "[t]he stock price drop" after an actual accident occurred in 2024 "doesn't help you answer that question."  *Id.* at 139:4-14.  Thus, Mr. Coffman's approach fails not only because it lacks detail, but also because the only details he provides are "divorced from [Plaintiffs'] theory of liability."  *Rail Freight*, 725 F.3d at 253.

Likewise, Plaintiffs' assertion that Mr. Coffman need not "disaggregate[]" stock-price declines from non-fraud-related causes at class certification misses the point.  Pls.' Reply 9-10. Dr. Stulz's criticism is not that Mr. Coffman fails to control for market or industry factors, because that is something an event study can do.  Plaintiffs' problem is more fundamental:  the "event study" Mr. Coffman proposes cannot measure "the difference between what investors expected in terms of quality escapes versus what they would have expected had they known the truth."  Stulz Tr. 139:4-14; *see also id.* at 141:12-22.

Nor can Plaintiffs evade their evidentiary burden under *Comcast* by describing their liability theory at the highest level of generality imaginable—namely, that "Defendants' fraud inflated Boeing's stock price, causing injury to investors as the truth was revealed and inflation was removed." Pls.' Reply 3. That generic description would apply in every securities case. Couched in more concrete terms based on the allegations in this case, Plaintiffs are relying on the same liability theory as the plaintiffs in *BP*, who also used Mr. Coffman as their expert at class certification. As in *BP*, Plaintiffs contend that "the repetition of [the] statements" about Boeing's efforts to improve product safety and quality had a "cumulative inflationary effect" that "understated a known risk" of an accident, and that the putative class can recover the "value of the stock price drop from the materialization of that risk" when an accident occurred. *In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408, at *16-17 (S.D. Tex. Dec. 6, 2013) ("*BP I*"). As in *BP*, Mr. Coffman has again failed to propose a damages methodology that fits that liability theory. *Id.*

Plaintiffs nowhere resolve the inconsistency between Mr. Coffman's back-casting approach and their liability theory that Boeing's generic statements about product safety and quality "bec[a]me material to investors" and had an impact on Boeing's stock price through the "repetition" of those statements over time. ECF No. 53 at 1, 7-8, 16. Instead, they try to run away from the liability theory that they advocated "at the motion to dismiss stage" by arguing that they were "not opining on whether or how inflation varied over time." Pls.' Reply 11. This Court should hold Plaintiffs to the theory that they presented to avoid dismissal. As the *BP* court held, Mr. Coffman's approach, which assumes that "inflation remain[ed] constant over the Class Period," does not "track Plaintiffs' theor[y] of liability" that the challenged statements became material due to their repetition over time. *BP I*, 2013 WL 6388408, at *17.

Plaintiffs try to distinguish *BP* by observing that after the court denied the plaintiffs' first

class-certification motion, Mr. Coffman proposed a "*unique* damages methodology" that "sought to recover based on the full price decline following the oil spill (the corrective event at issue in *BP*), not just the portion of that decline due to artificial inflation dissipating from the stock price." Pls.' Reply 8.  According to Plaintiffs, that makes the Fifth Circuit's decision in *Ludlow* v. *BP, PLC*, 800 F.3d 674 (5th Cir. 2015), "irrelevant to the claims here."  Pls.' Reply 8.  But Plaintiffs ignore that Mr. Coffman proposed that alternative approach in *BP* only *after* the district court rejected the same simplistic back-casting approach Mr. Coffman proposes here.  As in *BP*, Plaintiffs' proposal to use an "event study" that calculates damages based on "the stock price drop from the materialization of [the allegedly understated] risk" indisputably "overcompensates investors for their harm." *BP I*, 2013 WL 6388408, at \*16-17.  As the *BP* court explained, "when the corrective event is the materialization of an understated risk, the stock price movement on the date of correction (*i.e.*, on the date that the risk materialized) will not equate to inflation on the date of purchase." *In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, at \*10 (S.D. Tex. May 20, 2014) ("*BP II*").  The *BP* plaintiffs' "conclusory assertion" that they could tailor the "out-of-pocket' measurement" to address this overcompensation problem did not satisfy *Comcast* because, as here, "they have not given the Court any information about how the alternative calculation would be performed." *Id.* at \*12.

Unable to distinguish *BP*, Plaintiffs contend that the Fourth Circuit in *Singer* v. *Reali*, 883 F.3d 425, 446 (4th Cir. 2018), rejected the notion that a "materialization of risk" theory of loss causation differs from the typical "corrective disclosure" theory.  Pls.' Reply 8.  But *Singer* simply acknowledged that those two theories share a common trait:  that plaintiffs "must show 'that the loss'" was caused by the market learning the "truth" concealed by the alleged misstatements, either through a risk-materializing event or a corrective disclosure. *Singer*, 883 F.3d at 446. *Singer* says

-6-

nothing about the implications for calculating damages under those two different theories.

Plaintiffs cannot evade the evidentiary complexities of this case—involving hundreds of alleged misstatements and a changing mix of information over the nearly five-year class period— by simply pointing to Mr. Coffman's assertion that whatever methodology he ultimately decides to use to measure inflation can "easily accommodate[]" those challenges. Coffman Rebuttal Rpt. ¶¶ 41-108; *see* Pls.' Reply 13. Such "unsubstantiated claims" that "cannot be refuted through *a priori* analysis" do not satisfy *Comcast*'s requirement of evidence. *Rail Freight*, 725 F.3d at 254.

Lastly, Plaintiffs' dismissive contention that they need not address any of the issues identified by Dr. Stulz because any methodology that Mr. Coffman eventually proposes will be a "conservative measure[] of inflation" (Pls.' Reply 11) cannot be taken seriously. By "conservative," Mr. Coffman merely means that if he were not constrained by the Supreme Court's holding that plaintiffs can recover only the "economic losses that misrepresentations actually cause," *Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336, 345 (2005), his proposed methodology likely would result in even higher damages. *See* Coffman Rebuttal Rpt. ¶¶ 57-60. But there is nothing conservative about assuming that the declines in Boeing's stock price on 20 different dates over a four-month period in 2024 equal the amount of alleged inflation in Boeing's stock price on each day of a nearly five-year class period dating back to 2019.

## II.    To the Extent Any Class Is Certified, Plaintiffs Have Not Satisfied Their Evidentiary Burden for Their Massive Proposed Class.

Even if the Court is inclined to certify some class here, Plaintiffs' proposed class is overbroad for at least three fundamental reasons.

### A.    Plaintiffs Should Not Be Permitted to Expand the Class to Include Options.

Plaintiffs argue that they are free to use their class-certification motion to expand the already-massive class alleged in the complaint to include purchasers of all call options and sellers

-7-

of all put options on Boeing stock.  Pls.' Reply 17-18.  But none of their cited cases permitted the plaintiffs to use their class-certification motion to *expand* significantly the alleged class definition. *See Gunnells* v. *Healthplan Servs., Inc.*, 348 F.3d 417, 431 (4th Cir. 2003) (*narrowing* class by abandoning "any direct claims against [defendant]"); *Henderson* v. *Corelogic Nat'l Background Data, LLC*, 2016 WL 4611571, at *3 (E.D. Va. Sept. 2, 2016) (*narrowing* class to "subsets of the [previously] proposed nationwide class"); *Piotrowski* v. *Wells Fargo Bank, NA*, 2015 WL 4602591, at *5 (D. Md. July 29, 2015) (tailoring class by "shorten[ing] the class period").

Plaintiffs next try to flip the burden onto Defendants by arguing that Defendants have not proved that "Boeing options did not trade in an efficient market."  Pls.' Reply 20.  But the Fourth Circuit has "stressed in case after case that it is *not the defendant* who bears the burden of showing that the proposed class *does not comply* with Rule 23, but that it *is the plaintiff* who bears the burden of showing that the class *does comply* with Rule 23."  *Thorn* v. *Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006).  Thus, "[t]o defeat the presumption of reliance, defendants do not . . . have to show an inefficient market.  Instead, they must demonstrate that plaintiffs' proffered proof of market efficiency falls short of the mark."  *IBEW* v. *Deutsche Bank AG*, 2013 WL 5815472, at *20 (S.D.N.Y. Oct. 29, 2013).  Dr. Stulz has done exactly that.  *See* Stulz Rpt. ¶¶ 230-66; Ex. 1 (Stultz Sur-Rebuttal Rpt.) ¶¶ 24-26.

## B.    The Class Period Should Not Begin Before January 7, 2021.

Plaintiffs relegate to a footnote (Pls.' Reply 14 n.6) their response to Lead Plaintiff IBT's statement that the only "proper [class] period [should] begin[] after the DPA was announced" on January 7, 2021.  ECF No. 19 at 15.  Plaintiffs dismiss that concession as a "distraction," stating that IBT made that statement before further "factual investigation" and "discovery" without ever saying what IBT supposedly learned that caused it to reconsider its position.  Pls.' Reply 14 n.6.

Plaintiffs further argue that it is inconsequential that the alleged misstatements before

-8-

January 7, 2021, had no impact on Boeing's stock price, as Mr. Coffman's own event study shows, because the complaint "allege[s]" that the statements "maintained" pre-existing inflation in the stock price. *Id.* at 14 (citing AC ¶¶ 365, 569, 1000). For his part, Mr. Coffman provides *zero* evidentiary support for that conclusory allegation, stating only that "[m]y understanding is that Lead Plaintiffs' theory of liability centers on the notion that Defendants' misstatements maintained Boeing's stock price at artificially inflated levels." Coffman Rebuttal Rpt. ¶ 53. But "[u]nsubstantiated allegations" are "not evidence." *Couch* v. *Jabe*, 679 F.3d 197, 202 n.4 (4th Cir. 2012). Only "concrete evidence," rather than "allegations" and "conclusory assertions," can tip the scales under the preponderance-of-the-evidence standard at class certification. *Stafford* v. *Bojangles' Rest., Inc.*, 123 F.4th 671, 680 (4th Cir. 2024). Plaintiffs offer no concrete evidence.

Plaintiffs also assert that there is no problematic overlap between the proposed class here and the class alleged in the related class action pending against Boeing in the Northern District of Illinois because that other case "concerns misstatements prior to the 2018 and 2019 Crashes, whereas this case alleges misstatements after those Crashes." Pls.' Reply 16. That is incorrect. The alleged misstatements at issue in *Boeing I* were made either *after* the Lion Air accident on October 29, 2018, or *after* the Ethiopian Airlines accident on March 10, 2019. *See Seeks* v. *Boeing Co.*, 2024 WL 4367846, at *1 (N.D. Ill. Sept. 30, 2024). It is indisputable that if this Court were to certify Plaintiffs' proposed class, the two proposed class periods would overlap by more than two months and would include investors that simultaneously assert in this case that they were misled by Boeing's statements beginning in September 2019 while asserting in the other case that the truth was revealed to them between March 2019 and December 2019.

### C.    The Class Period Should End by January 8, 2024.

Plaintiffs contend that courts cannot "inquire into the merits to determine the adequacy of a class period" because it involves a "question of fact." Pls.' Reply 16. Not so. Because the class

definition is plainly an issue for class certification, "courts are required to cut off the class period on the date" of an event that reveals the relevant "truth." *In re Apache Corp. Sec. Litig.*, 2024 WL 532315, at \*8 (S.D. Tex. Feb. 9, 2024).  The Court should not avoid that obligation merely because it requires resolution of a fact question.  "[A] district court must definitively determine that the requirements of Rule 23 have been satisfied, even if that determination requires the court to resolve an important merits issue." *EQT Prod. Co.* v. *Adair*, 764 F.3d 347, 361 (4th Cir. 2014).

Plaintiffs next argue that they can recover damages based on the alleged corrective events after January 8, 2024 (following the Alaska Airlines accident and another airline's report of loose bolts on a 737 MAX 9), because they "allege" that the later corrective events also provided "new information."  Pls.' Reply 17.  But allegations, again, are not evidence.  With two exceptions, Plaintiffs do not seriously dispute that the 18 alleged corrective events after January 8, 2024, reflected only the *consequences* of the Alaska Airlines accident, not the correction of any prior alleged misstatements.  The two exceptions Plaintiffs address are the reports (i) on March 12, 2024, of an FAA audit of Boeing prompted by the Alaska Airlines accident, and (ii) on May 14, 2024, of "DOJ's finding that Boeing had violated the DPA." *Id*.  Like the other alleged corrective events, however, those two developments represented consequences of the Alaska Airlines accident, and Plaintiffs never identify what "new information" was supposedly disclosed by these reports that corrected prior alleged misstatements from years earlier.

## CONCLUSION

The Court should deny Plaintiffs' motion for class certification.

Dated: March 3, 2025

                                        Respectfully submitted,

                                        */s/ Benjamin L. Hatch*
Richard C. Pepperman II (*pro hac vice*)    Benjamin L. Hatch
Jason P. Barnes (*pro hac vice*)            MCGUIREWOODS LLP
SULLIVAN & CROMWELL LLP                      888 16th Street N.W.
125 Broad Street                            Suite 500
New York, New York 10004                    Black Lives Matter Plaza
Telephone: (212) 558-4000                   Washington, D.C. 20006
Facsimile: (212) 558-3588                   Telephone: (757) 640-3727
peppermanr@sullcrom.com                     Facsimile: (757) 640-3947
barnesjas@sullcrom.com                      bhatch@mcguirewoods.com

Judson O. Littleton (*pro hac vice*)        *Counsel for Defendants The Boeing*
SULLIVAN & CROMWELL LLP                      *Company, David L. Calhoun, Dennis A.*
1700 New York Avenue, N.W.                   *Muilenburg, Brian J. West, and Gregory D.*
Suite 700                                    *Smith*
Washington, D.C. 20006
Telephone: (202) 956-7500
Facsimile: (202) 293-6330
littletonj@sullcrom.com

-11-

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 3rd day of March, 2025, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which sends an electronic copy of the foregoing to all

counsel of record in this case.


*/s/ Benjamin L. Hatch*
Benjamin L. Hatch
