UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                        ALEXANDRIA DIVISION

---------------------------x   Civil Action No.:
IN RE THE BOEING COMPANY   :   1:24-cv-151
SECURITIES LITIGATION      :   Friday, March 7, 2025
---------------------------x   Alexandria, Virginia
                               Pages 1-26

        The above-entitled motion for class certification
was heard before the Honorable Leonie M. Brinkema, United
States District Judge.  This proceeding commenced at 10:27
a.m.

                    A P P E A R A N C E S:

FOR THE PLAINTIFFS:   CRAIG REILLY, ESQUIRE
                      LAW OFFICE OF CRAIG C. REILLY
                      209 Madison Street
                      Suite 501
                      Alexandria, Virginia  22314
                      (703) 549-5354

                      JONATHAN ZWEIG, ESQUIRE
                      CHAD JOHNSON, ESQUIRE
                      ROBBINS GELLER RUDMAN & DOWD LLP
                      420 Lexington Avenue
                      Suite 1832
                      New York, New York  10170
                      (212) 432-5100

                      STEVEN TOLL, ESQUIRE
                      COHEN MILSTEIN SELLERS & TOLL PLLC
                      1100 New York Avenue, NW
                      Suite 500
                      Washington, D.C.  20005
                      (202) 408-4600

                      JAKE BISSELL-LINSK, ESQUIRE
                      CHRISTINE FOX, ESQUIRE
                      CAROL VILLEGAS, ESQUIRE
                      LABATON KELLER SUCHAROW LLP
                      140 Broadway
                      New York, New York  10005
                      (212) 907-0700

                                                       1

```
                    A P P E A R A N C E S:

FOR THE DEFENDANTS:    JULIET CLARK, ESQUIRE
                       MCGUIREWOODS LLP
                       Gateway Plaza
                       800 East Canal Street
                       Richmond, Virginia  23219
                       (804) 775-4773

                       RICHARD PEPPERMAN, II, ESQUIRE
                       SULLIVAN & CROMWELL LLP
                       125 Broad Street
                       New York, New York  10004
                       (212) 558-4000

                       JUDSON LITTLETON, ESQUIRE
                       SULLIVAN & CROMWELL LLP
                       1700 New York Avenue, NW
                       Suite 700
                       Washington, D.C.  20006
                       (202) 956-7500

COURT REPORTER:        STEPHANIE M. AUSTIN, RPR, CRR
                       United States District Court
                       401 Courthouse Square
                       Alexandria, Virginia  22314
                       (607) 743-1894
                       S.AustinReporting@gmail.com
```

2

P R O C E E D I N G S

THE DEPUTY CLERK:  In re The Boeing Company Securities Litigation State of Rhode Island Office of the General Treasurer versus The Boeing Company, Case Number 24-cv-151.

Will the parties please note their appearances for the record.

MR. BISSELL-LINSK:  Thank you.  I'm Jake Bissell-Linsk for lead plaintiffs with the law firm Labaton. We are here with our co-counsel, Robbins Geller, including Jonathan Zweig and Chad Johnson.  My partner, Chris Fox, is with me as well.  And we also have Craig Reilly from the Craig Reilly firm, and Steven Toll from Cohen Milstein.

THE COURT:  All right.  Good morning.

MS. VILLEGAS:  And Carol Villegas from Labaton.

MR. BISSELL-LINSK:  Oh, sorry.

MS. VILLEGAS:  It's okay.  No worries.

THE COURT:  We only have six chairs per side.  So, folks, you're going to have to figure out where you're sitting.  All right.

MS. CLARK:  Juliet Clark from McGuireWoods for the Boeing defendants.  And I have Mr. Pepperman and Mr. Littleton from Sullivan & Cromwell here who will handle argument.

MR. PEPPERMAN:  Good morning.

3

MR. LITTLETON:  Good morning.

THE COURT:  Good morning.

All right.  So we have before the Court this morning the proposed motion for class certification, which has been extensively briefed, I think briefed much more than it had to be briefed.  Because there really is no disagreement among the parties in terms of Rule 23(a), that those four requirements are met by the proposed class.  There's numerosity, commonality, typicality and adequacy of representation, and that's not really the issue.  I mean, you're really fighting over some other issues that I've had a chance to look at.

So I'm going to give the plaintiff, since it's your motion first, just a brief argument.  I want you to address the defendants' position that stock options are not part of this case, they were not pled.  This is an amended complaint we're dealing with, and we've started into the discovery process, and there's really not a good reason to allow any amendment to the complaint, so I'm inclined not to be granting that as part of the class.

And then there is an issue about the time frame for the existence of the class, and I think that's what the plaintiff needs to address.  All right.

And, Counsel, again, your name, please.

MR. BISSELL-LINSK:  Thank you, Your Honor.  I'm

4

Jake Bissell-Linsk from Labaton.

THE COURT:  Okay.

MR. BISSELL-LINSK:  So, to first address the options point, Your Honor is certainly correct that options were not included in the amended complaint and are being added to the class certification class definition.  The case law that we cite in the reply brief makes very clear that changing the class definition at class certification is perfectly acceptable, as long as doing so does not prejudice the defendants in any way.

Here, the options claims are identical in substance to the stock claims in terms of the facts at issue.  There are claims that are predicated on the exact same fraud, they have the exact same injury.  All of the core elements of the case will be identical as to the options, meaning defendants are not prejudiced in the sense that all the discovery that has happened to date, all of the case strategy that they've developed, will apply in the same way for those claims.

The reason we included the options now and had not previously done so is that when we got into the stage of conducting the economic analysis when looking at class certification with the assistance of our experts, we determined that the options are similarly situated in this situation.  That Boeing options trade in an efficient

5

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

market, that it would make sense for them to be a part of this common class.  So I don't think that they've raised any arguments as to how it's procedurally improper to be adding the options at this stage.

On the damages issue that they raised, the damages methodology for the options is identical as the damages methodology for the stock, with the small exception that there are adjustments made for the mechanics of options trading, and that an additional step will be necessary to use an options pricing model to convert the inflation of the stock price into inflation in the options prices.

THE COURT:  To your knowledge, though, the client whom you're representing, I mean, the first party that hired you all, are there options trading within that group?

MR. BISSELL-LINSK:  No, Your Honor.  And we also cite case law in our reply brief that explains that that is not an issue as long as the class representatives are representative of the interests of the class as a whole.

Here, as I just explained, the options traders are not different than the stock traders; they have the exact same interest in prosecuting the case.  Defendants have not pointed out any basis to think that the options traders would be somehow worse off when being represented by stock traders.

And I will point out that we cite a number of

6

cases where this exact scenario happened.  So in the *Apple* case that we cite to, options were not included in the amended complaint.  At class certification, after an economic analysis, they determined that it made sense to include options traders, and the Court allowed that.

So this isn't an unusual or abnormal situation, it doesn't prejudice the defendants in any way, and the options traders really are situated just like the stock traders.

THE COURT:  All right.

MR. BISSELL-LINSK:  As to your questions about the time period.  So defendants really have two arguments about the time period.  First, they argued that the class period should start later than it currently does.  I think that argument is especially weak here.  The allegations in our complaint and the discovery that's been produced to date makes perfectly clear that this was a consistent fraud throughout the entire time period that we allege. Defendants alternatively have served three arguments -- maybe two and a half arguments for why the class period should be starting later.

Their main argument, and their only really substantive one, is that there were not statistically significant price increases after misstatements in the early portion of the class period.  That argument goes nowhere because, as defendants acknowledge, price maintenance is an

7

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

accepted theory of price impact.  And in most securities cases, plaintiffs are not arguing you made a misstatement that it self caused the stock price to shoot upwards. They're claiming you made a misstatement, and had you made a correct statement instead of a misstatement, the stock price would have been trading lower.  So the lack of statistically significant price increases is not a basis to exclude that portion of the class.

Here, in particular, they're arguing price maintenance is unavailable.  And I think their theory is it's unavailable because, following the crashes in 2018 and 2019, Boeing's representation was so badly impaired that there was nothing to maintain.  So something special about this case means price maintenance doesn't work.

We point out in our reply brief that that's, first of all, a factual dispute.  Second of all, it's a dispute that doesn't make any sense on the facts, even before getting into much detail, because Boeing repeatedly said Boeing is worth nothing without safety.  Boeing is worth nothing without safety.  And after those crashes, Boeing's stock price had declined some, but it was nowhere near zero.

It's clear that analysts that we cite in the reply brief were believing the fact that Boeing's safety representations were keeping its stock price higher than it would have been had they told the truth, and there's no

8

reason to think that those statements didn't have enough acumen in the stock price. So that's their substantive argument on this.

Their other argument is that there's some overlap with the case against Boeing in Illinois. That sort of two-month overlap has no bearing on the correct class to certify here. There's no conflict between the two cases; they're concerned with different frauds. They both are frauds concerning safety, but their fraud concern is the period before those two crashes and statements about those crashes.

Our theory concerns the multi-year fraud that followed those crashes, claiming that now Boeing was doing things right. There's no reason to think that there's a problem with there being an overlap there. And the defendants' only citations there about why there would be a problem are not linking that argument to a Rule 23 element; they're citing two out-of-circuit cases, one of which they're citing dicta from the case where the Court noted that one argument that could be relevant to superiority sometimes is whether or not the class overlaps with other cases. But in the very sentence they quote, the Court is saying: Unless their claims are substantively different. So that is not an argument here the defendants have meaningfully made.

9

The other case they cite on that is a case that had nothing to do with overlapping class periods in any sense; it was a case of allegations that a fraud was -- that investors were injured before corrective statements were made.  And it's purely a cherry-picked quote that has no bearing on this issue.  So that's sort of their second argument about the period.

And their third argument is that before being appointed as lead plaintiff, one of the lead plaintiffs made comments about the case being relatively stronger after the DPA was entered into, the deferred prosecution agreement.  And our belief on that is, first of all, that one of the lead plaintiffs believed the case was stronger on the merits after a particular date and time.  It's not an argument that the class shouldn't include that earlier point in time, even if that was their belief today.  But, more importantly, those statements were made before the factual investigation that led to the amended complaint and before discovery.  And the discovery that all the plaintiffs have seen now firmly shows that this fraud -- that this fraud was occurring from the beginning of the class period, and the allegations are strong as to the beginning of the class period.

So I'm happy to talk further about that if you have further questions, but that's our position on the shortening.

10

On the back end, their argument is that after the Alaska Airlines incident, the fraud was fully corrected. And to get to that argument, defendants have to completely misconstrue our allegations in the case, which they do repeatedly with our expert analysis.  Their theory is that plaintiffs believe this was a fraud that purely existed to understate the risk of some particular accident occurring. That's not what our allegations are.

Our allegations are that Boeing misrepresented its safety practices in ways that had vast consequences for the value of its business.  It's not as though the second an accident occurred, the fraud was corrected.  It's that as additional truthful information came out after the Alaska Airlines incident, the market learned -- acquired a greater appreciation of the true safety conditions at Boeing.

Their only real substantive argument about shortening the class period is that in his market efficiency analysis, plaintiffs' expert, Chad Kaufman, put forward an events study that included an analysis for purposes of market efficiency of some of the corrective events, and in that analysis, some of the events mentioned in the complaint were not alleged to be -- or do not appear to be followed by statistically significant stock price declines.

I don't dispute that at all.  On Monday, we will be serving the defendants with our loss causation merits

11

report where they will see that we're not alleging every event after the Alaska Airlines incident had a statistically significant stock price decline or was loss making for the purposes of damages. But what's critical is that the last event, the DOJ's determination that Boeing had violated the DPA and their disclosures related to that, provided new information to the market that were corrective of this fraud, and that event certainly was followed by a statistically significant stock price decline.

So even though some of the interim events may not ultimately be part of the damages model, the class period, as stated in the class certification brief, is the appropriate period.

I'm happy to address anything further.

THE COURT: Let me hear from the defense. Thank you.

MR. BISSELL-LINSK: Thank you.

MR. PEPPERMAN: Good morning, Your Honor. Rick Pepperman from Sullivan & Cromwell on behalf of the defendants.

I take Your Honor's point that these issues have been thoroughly briefed, and I do thank the Court for the opportunity to file a surreply this week.

I'm going to focus my remarks on the two issues that Your Honor raised and that my colleague,

12

Mr. Bissell-Linsk, addressed. But just at the outset, I wanted to say a few brief words about the *Comcast* issue that divides the parties.

I mean, as Your Honor I'm sure could tell from the briefing, the parties' positions are really very different there. The plaintiffs have argued that to satisfy their evidentiary burden under *Comcast*, all they do is -- all they need to do is say that they will apply the general out-of-pocket formula for calculating damages in the securities case. Which is, as we say in our brief, in a securities case saying you're going to calculate damages using the out-of-pocket measure of damages is akin, in a breach of contract action, to say you're going to calculate damages using the benefit of the bargain methodology.

Our position is that you can't simply recite the generally applicable formula; you need to proffer an actual methodology or model that measures per-share artificial inflation on any given day during the class period.

Now, I recognize that the plaintiffs have a lot of district court authority that supports their position, and I know in the *NII* case, that Your Honor wrote an opinion on this, too.

The one thing we did note in our surreply that we filed on Monday, is on February 13th, just a few weeks ago, the Fourth Circuit granted 23(f) interlocutory review in the

13

*Deloitte* case, which was a similar securities fraud case pending in the District of Carolina. You know, what was notable about that from our perspective is *Deloitte's* Rule 23(f) petition raised three questions presented, and the Fourth Circuit, in granting interlocutory review in its order, said that the grant of permission to appeal is limited to the damages issue.

So the Fourth Circuit granted 23(f) review to rule specifically on the question that's presented here, which is whether securities plaintiffs can satisfy their evidentiary burden under *Comcast* simply by saying that they're going to apply the out-of-pocket measure of damages.

You know, I will say, Your Honor, and we noted this in our papers, is, if anything, the facts presented here, or the claims in this case, are far more extreme than those in the *Deloitte* case, because here you're dealing with a securities case that alleges a nearly five-year class period, alleges hundreds, literally hundreds of allegedly false and misleading statements, and alleges that the truth was revealed on 20 separate dates five years after the first of the statements were made. So if the *Comcast* issue warrants review in the *Deloitte* case, I mean, our argument would be that that issue is even more starkly presented in this case.

And I will say, Your Honor, I mean, what's

14

happened here on that issue is that the plaintiffs in presenting it have presented their argument in the highest level of generality that would literally apply in any securities case that's filed.  The out-of-pocket measure of damages is the measure of damages that applies in all or nearly all securities cases, so that's not really doing much.

And in terms of articulating their liability theory, they do so at the highest level of generality.  They say that their theory is that the stock price was inflated and that investors suffered losses when the truth was revealed.  I mean, that's the theory of liability in any securities case.  It ignores the particular allegations in this case.  I mean, not just the length of the class period and the number of statements at issue and the number of corrective events, but particular things such as the plaintiffs' theory on materiality, which they argued to the Court in the beginning of September of last year, is that the safety statements were material because they were repeated multiple times over the course of years.  And their theory on loss causation is that the truth emerged not through corrective disclosures, but because of the materialization of an understated risk.

And again, Your Honor, all of those particular attributes of this case present challenges in proffering a

15

class-wide methodology of calculating damages, which their plaintiffs and their experts don't address.

THE COURT:  All right.

MR. PEPPERMAN:  So on options, Your Honor, the point that Your Honor raised -- I don't think there's any disagreement among the parties that the class alleged in this case in the amended complaint was limited to purchasers of Boeing common stock, and that's in paragraph 1,007 of the complaint.

Here, the plaintiffs' motion seeks to expand the class also to include during the same nearly five-year period all purchasers of Boeing call options and all sellers of Boeing's put options.

And this case, Your Honor, is different from all of the cases that plaintiffs cite in their papers.  Because the change in the class definition, it was not the result of any newly discovered facts that came out in the course of discovery; it was not in reaction to any rulings from this Court that caused the plaintiffs to modify their class definition; and nor was it in response to any arguments by the defendants that the plaintiffs attempted to address by refining their class definition.

And as Your Honor pointed out, the change in the class definition could not have been client-driven in this case because none of the plaintiffs here traded options.

16

So, I mean, what happened is that between the time of the amended complaint in -- that was filed I think about a year ago and the time that the class certification motion was filed in December, the plaintiffs just changed their mind.  And it was an effort not to increase the recovery of the plaintiffs here, but to essentially increase the level of class damages.

THE COURT:  Now, is there anything that prevents option dealers from filing a suit at this point?

MR. PEPPERMAN:  So, I mean, Your Honor knows, I guess --

THE COURT:  That's the pragmatic question, not the --

MR. PEPPERMAN:  Well, look, that is the pragmatic question, Your Honor.  And I think the answer to that is probably no.  I have not looked into that.

I mean, I don't think at this point we have a statute of limitations issues, but there are other pragmatic issues also, Your Honor, beyond that.  And this is where the prejudice to the defendants comes in.

I mean, as Your Honor knows, we're on a fast track.  The plaintiffs' expert reports on the merits are due on Monday; our expert reports are due 30 days after that on April 10th.  As Your Honor could tell from the expert submissions in connection with the class certification

17

motion, the addition of options to the case severely complicates the expert analysis.

We have two mediation sessions scheduled with a private mediator on April 8th and April 29th.  The increase in the alleged damages caused by the addition of options complicates the potential settlement of the case.  And, you know, Your Honor, we're looking now at a discovery cutoff of May 9th and May 15th.

So I take Your Honor's practical point, and it's a fair one.  You know, a practical point on our side is, you know, we're doing everything we can to get the case that was pled in the amended complaint across the finish line on the deadline set by the Court.  Adding options complicates that significantly, in our view.

THE COURT:  And what about the time frame?  That was the other question.

MR. PEPPERMAN:  Okay.  So, Your Honor, on the time frame -- and I'm going to start with the point that, you know, my friend, Mr. Bissell-Linsk, ended on.

You know, in terms of the start date of the class period, Your Honor, as we argued in our papers, our position is that the class period should not begin before January 7th, 2021, which is when the DPA was announced.  And that -- you know, that isn't a position that we sort of pulled out of the air.  I mean, this is the unusual case

18

where one of the two plaintiffs in the case, *IBT Pension Fund,* argued in, I think it was April of last year, that the only proper class period should begin after the DPA was announced.

Now, Mr. Bissell-Linsk said that, you know, the position that *IBT Pension Fund* took is that the case was "relatively stronger" after the DPA was announced. I think that the language that *IBP Pension Fund* used in their paper is that the state of affairs at Boeing was so different in 2019 and 2020 versus the period after 2021, that to include all of them in the same case defies common sense.

And although -- I mean, the plaintiffs have argued that, well, in the time that passed, *IBT Pension Fund* reconsidered its position because of its factual investigation and discovery, I mean, they make that point in a footnote in their reply, and they never say what factual investigation or discovery caused this change of heart.

Now, on the issue -- the price impact issue, I mean, it is completely consistent with the position that *IBT Pension Fund* took last year, that on the 22 dates before January 7th, 2021 when alleged misstatements were made, on not one of those 22 dates was there a statistically significant increase in Boeing's stock price using plaintiffs' expert's own events study.

And if you take a step back, Your Honor, in a

19

situation where the claim is -- the claim is that these statements between 2019 and 2021 convinced the market that Boeing had turned a new page on safety -- and that's the allegation in paragraph 3 of the complaint.  If you were convincing the market that you had turned a new page, you would expect the market, if those statements had any price impact, to drive the stock price up.

Now, the plaintiffs' only response to this -- and it's the argument that Mr. Bissell-Linsk made today -- is they're pursuing a price maintenance theory.  And that's fair, we anticipated that argument in our opposition.  The problem is, Your Honor, is we're no longer at the pleading stage.  You know, we're now at class certification where you need evidence, not just allegations.

And in support of their price maintenance theory, in their reply brief, plaintiffs cite only three paragraphs of their complaint.  Paragraphs 365, paragraphs 569 and paragraphs 1,000.  If you look at those three paragraphs, I submit that one of them is not even on point, and the other two include simply conclusory allegations.  I think it's pled as like and/or materialization of the risk.  And the only evidence that they submitted in support of their motion was Mr. Kaufman's expert report.  And if you look at the expert report that Mr. Kaufman submitted, together with plaintiffs' reply brief, all he says is "I understand that

20

plaintiffs' theory here is a price maintenance theory."

So, again, what we're dealing with here are conclusory allegations, not evidence, that are insufficient for the plaintiffs to satisfy their evidentiary burden under a preponderance of the evidence standard.

Now, in terms of the cutoff here, our position on this is really very simple, is that the claim here is that the statements understated the risk of a safety-driven accident.

Under plaintiffs' theory, the truth was revealed when the Alaska Airlines accident happened on January 5th. And if you're going to give them a little bit of the benefit of the doubt -- because you could say, well, the market might assume that that was just like a one-off occurrence. When the news came out on January 8th that a different airline had found loose bolts on its door plug, the market then understood that this was not just a one-off incident, that it was potentially something broader.  At that point under plaintiffs' theory, the truth had been revealed.

Now, all of the corrective events after that, going all the way to, like, May 14th, 2024, all of those are announcements of further adverse consequences to Boeing that had flowed from the original accident on January 5th, 2024.

And if, Your Honor, there could be any doubt of this, I mean, this lawsuit was filed in the third week of

21

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

January of 2024.  I mean, at that point, I mean, the plaintiffs themselves by their actions acknowledged that the truth had been revealed to the market.  They went out and they filed this lawsuit bringing these claims here.  I mean, we were taken aback when we got the amended complaint that pled alleged corrective events going all the way to May 14th of 2024.  I mean, four -- almost four months after this lawsuit had been filed.

So, Your Honor, in cutting off the class under the class laws needs to cut it off when the relevant truth was revealed.  And as we said in our papers, I mean that date is, at the latest, January 8th, 2024.

Now, just like on the terms of that January 8th, 2024, I mean, why it's significant is that the Alaska Airlines accident happened in the evening of January 5th, 2024.  So after the market closed.  And so by January 8th, the trading that day, you have the stock market's reaction to that accident, as well as the announcement related to United Airlines.

Thank you, Your Honor.

THE COURT:  All right.  Response.  I want you to really respond on the *Comcast* issue.

MR. BISSELL-LINSK:  Thank you.  Thank you, Your Honor.

On *Comcast*, we lay out in our briefing that the

22

requirement under *Comcast* is to show a fit between the damages methodology and the theory of liability.

THE COURT:  I know that.  I want you to specifically address this issue about the *Deloitte* matter.

MR. BISSELL-LINSK:  Happily.

THE COURT:  All right.

MR. BISSELL-LINSK:  So I think the *Deloitte* case, they're arguing that the Fourth Circuit choosing to take review in the *Deloitte* case is a sea change in law that means that now *NII* would be decided differently, and all of the voluminous cases we've cited would be decided differently.  That is clearly not the case in the sense that they've just taken review of the case.  But, more importantly, defendants are drawing the wrong conclusion from the fact that the Fourth Circuit is interested in that case.

If anything, that case is indicative of the fact that contrary to defendants' position that you've heard today that our view of *Comcast* nullifies it in every securities case, the *Deloitte* case is precisely the example of a securities case where there may be an interesting *Comcast* issue.  And to understand that, you need a little background about the case.

So *Deloitte* alleges -- the *Deloitte* case alleges a fraud concerning SCANA's process -- progress toward a

23

nuclear energy project.  There was a separate securities fraud case direct linking SCANA that has already settled. The *Deloitte* case argues that as SCANA's auditor, Deloitte contributed to a common fraud that SCANA and Deloitte were perpetrating.  The unique thing in that case is that the out-of-pocket damages methodology, as normally stated, measures the inflation to the stock price due to the fraud.

Here, if one went forward at the merits stage and perfectly measured the inflation in the stock price due to the fraud, the output of that analysis would not tell you -- may not tell you -- depending on the legal issues involved, may not tell you the damages attributable to Deloitte.  It wouldn't tell you Deliotte's contribution to the fraud.

Now, the plaintiffs in opposing 23(f) petition review argued, yes, but we can disaggregate, we can show you in a loss causation report how SCANA contributed to the fraud and Deloitte contributed to the fraud.

The issue that makes that case unique is not that that proposition is wrong; that proposition is absolutely right.  It's consistent with the voluminous authority we cited, it's consistent with the *Amgen* Supreme Court case and the *Halliburton* Supreme Court cases that say loss causation is a merits stage, and that's where you traditionally think about disaggregation.

The issue is that the disaggregation analysis is

24

typically distinguishing between fraud and non-fraud factors affecting the stock price, how much did the fraud affect the stock price. In that case, the unique issue is that even if they perfectly measure the amount that the fraud affected the stock price, that wouldn't tell you Deloitte's responsibility in the matter. I'm not saying that that's a decisive issue. Like, I'm not saying the Fourth Circuit will reverse, but that's the sort of fact pattern in which a Comcast-type issue arrises.

You'll recall that in *Comcast*, the underlying issue is that plaintiffs put forward a damages methodology that measures the total anticompetitive effects of *Comcast's* behavior; however, they were only allowed to proceed on a theory about one narrow antitrust violation. And the Court said there's a mismatch, you're measuring the whole, but you're only entitled to proceed on the part. That's the argument that would be in the SCANA case, which is they're measuring the whole above the fraud, but they're only allowed to proceed against the narrow case against SCANA.

So my point here is that SCANA does not represent a sea change. The Fourth Circuit is not going to issue a decision contravening *Amgen* or contravening *Halliburton*. What they're going to do is consider whether or not the out-of-pocket damages method is broad enough to make sense in a case where measuring the effects of the fraud is not

25

the same as measuring the effects of the defendants' contribution to that fraud.

So that's what I have to say on that. I'm happy to address any of the other arguments. I can go through them, but if there's one in particular you want to point to. Okay.

THE COURT: No. I think I've heard -- as I said, it's a heavily briefed case, and I've heard good arguments. And we'll try to get an answer to you as quickly as possible because obviously it could have an impact on the mediation. And so you'll have it well before that time frame. All right.

MR. BISSELL-LINSK: Thank you, Your Honor.

THE COURT: All right. Thank you for the argument, Counsel. We'll recess court.

Is there anything further? No. All right. We'll recess court.

(Proceedings adjourned at 10:59 a.m.)

---------------------------------

I certify that the foregoing is a true and accurate transcription of my stenographic notes.

_____

Stephanie M. Austin, RPR, CRR

26